IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VONAGE HOLDINGS CORPORATION,

                Plaintiff,

    - against -

THE NEW YORK STATE PUBLIC SERVICE
COMMISSION and WILLIAM M. FLYNN, THOMAS
J. DUNLEAVY, LEONARD A. WEISS, and NEAL
N. GALVIN, in their official capacities
as the Commissioners of the Public
Service Commission of the State of New
York, and not as individuals,

                Defendants.

04 Civ. No. 4306
(JGK) (DFE)

BRIEF OF DEFENDANTS PUBLIC SERVICE COMMISSION OF THE STATE
OF NEW YORK, et. al. IN OPPOSITION TO
MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION

DAWN JABLONSKI RYMAN
General Counsel
Public Service Commission
 of the State of New York
Three Empire State Plaza
Albany, New York 12223-1350

Of Counsel
Jonathan D. Feinberg (JF 2416)
Senior Litigation Counsel
(518) 474-5597

Dated:     June 25, 2004
           Albany, New York

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Vonage Holdings Corporation,

                 Plaintiff,

     - against -

THE NEW YORK STATE PUBLIC SERVICE
COMMISSION and WILLIAM M. FLYNN, THOMAS
J. DUNLEAVY, LEONARD A. WEISS, and NEAL
N. GALVIN, in their official capacities
as the Commissioners of the Public
Service Commission of the State of New
York, and not as individuals,

              Defendants.

04 Civ. No. 4306
(JGK) (DFE)

---

BRIEF OF DEFENDANTS PUBLIC SERVICE COMMISSION OF THE STATE
OF NEW YORK, et. al. IN OPPOSITION TO
MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION

---

                           DAWN JABLONSKI RYMAN
                           General Counsel
                           Public Service Commission
                            of the State of New York
                           Three Empire State Plaza
                           Albany, New York 12223-1350

Of Counsel
Jonathan D. Feinberg (JF 2416)
Senior Litigation Counsel
(518) 474-5597

Dated:    June 25, 2004
          Albany, New York

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT...........................................1

STATEMENT OF FACTS.............................................4

I.   Vonage's Use of IP Telephony.............................4

II.  The Commission's Decision Asserting Jurisdiction
     Over Vonage and Requiring Filing of a Waivers.............6

SUMMARY OF ARGUMENT...........................................10

     POINT I.................................................14

          VONAGE HAS NOT SHOWN LIKELIHOOD OF SUCCESS IN ITS
          ATTEMPT TO PREEMPT THE PSC's ORDER ..................14

          A.   Federal Law Limiting Liability of Internet
               Providers Does Not Preempt State Regulation
               Of IP Telephony................................14

          B.   In Any Event, State Regulation of Information
               Service Is Not Necessarily Preempted  .........17

          C.   The Alleged Difficulty of Separating Vonage's
               Intrastate and Interstate Services Is
               Irrelevant and Can Be Overcome...............  20

          D.   The PSC Order Comports With The Commerce Clause 24


     POINT II................................................26

          VONAGE WILL NOT SUFFER IRREPARABLE HARM..............26

     POINT III...............................................27

          VONAGE DOES NOT OFFER AN INFORMATION SERVICE,
          BUT A TELECOMMUNICATIONS SERVICE ...................27

          A.   Vonage Is A Provider of Telecommunications
               Service.......................................27

          B.   Vonage Does Not Provide Information Services....33

      1. Vonage Does Not Offer A Capability
        To Manipulate Information....................33

      2. Vonage's "Protocol Conversion" Does Not
        Make It An "Information Service" ...........36

POINT IV...............................................40

   DEFERRAL TO THE FCC'S PENDING RULEMAKING IS NOT A
   BASIS FOR AN INJUNCTION ..............................40

     A.   This Court Should Deny The Request For Injunction
         Prior To Any Deferral.........................40

     B.   In The Event The Court Does Decide to Grant An
         Injunction Pending Deferral To The FCC, It
         Should Allow the Commission To Continue To
         Exercise 911 Jurisdiction.................... 42

CONCLUSION.............................................44

## TABLE OF AUTHORITIES

### FEDERAL CASES

American Online v. GreatDeals.Net, 49 F.Supp.2d 851
(E.D.Va.) (1999)...............................................20

AT&T Corp v. City of Portland, 216 F.3d 871
(9th Cir. 2000) ............................................31

AT&T v. Iowa Utilities Board, 525 U.S. 366 (1999).............15

Batzel v. Smith, 333 F.3d 1018 (9th Cir. 2003) .................15

Beal v. Stearn, 184 F.3d 117 (2nd Cir. 1999) ...................10

Brand X Internet Services v. FCC, 345 F.3d 1120,
(9th Cir. 2003) .........................................5, 35

C&A Carbone, Inc. v. Town of Clarkstown, 511 U.S. 383,
(1994)........................................................25

California v. FCC, 39 F.3d 919, (9th Cir. 1994) ...............19

California v. FCC, 905 F.2d 1217, (9th Cir. 1990) ............ 18

City of Columbus v. Ours Garage & Wrecker Service, Inc.,
536 U.S. 424 (2002)...........................................42

Computer and Communications Industry Association v. FCC,
693 F.2d 198 (D.C. Cir. 1982).................................19

Diamond International Corp. v. FCC, 627 F.2d 489,
(D.C. Cir. 1980)..........................................19-20

Goldberg v. Sweet, 488 U.S. 255 (1989)........................25

Howard v. America Online Inc., 208 F.3d 741,
(9th Cir. 2000) ............................................20

Ivy Broadcasting Co. v. American Telephone and Telegraph
Company, 391 F.2d 486, (2d Cir. 1968)........................21

Louisiana Public Service Comm'n v. Federal Communications
Comm'n, 476 U.S. 355 (1986)...............................passim

Mazurek v. Armstrong, 520 U.S. 968, (1997)................10, 12

Medtronic, Inc. v. Lora Lohr, 518 U.S.470.....................42

National Association of Regulatory Commissioners v. FCC,
746 F.2d 1492 (D.C. Cir. 1984)................................21

National Association of Regulatory Commissioners v. FCC,
880 F.2d 422 (D.C. Cir. 1989)................................18

National Association of Regulatory Utility Commissioners v.
FCC 525 F.2d 630 (D.C. Cir. 1976)............................31

National Cable & Telecommunications Association, Inc. v.
Gulf Power Co., 534 U.S. 327 (2002)..........................32

No Spray Coalition, Inc. v. City of New York,
252 F.3d 148 (2d Cir. 2001)................................. 10

Oregon Waste System v. Department of Environmental Quality,
511 U.S. 93, (1994)..........................................25

Pike v. Bruce Church, Inc., 397 U.S. 137 (1970)..............25

Rice v. Santa Fe Elevator Corp., 331 U.S. 218 (1947)..........42

Reno v. American Civil Liberties Union, 521 U.S.
844 (1997)...................................................14

Smith v. Illinois Bell Telephone Co., 282 U.S. 133
(1930).......................................................27

Southwestern Bell Telephone Company v. Public Utilities
Commission, 208 F.3d 475 (5th Cir. 2000) ..................20

Southwestern Bell Telephone Company v. FCC,
153 F.3d 523 (8th Cir. 1998) ..............................20

Vonage Holdings Corp v. Minnesota Public Utilities
Commission, 290 F.Supp.2d 993 (D.Minn.2003, Appeal
Pending)..................................................14, 40

Zeran v. America Online, 958 F.Supp. 1124
(E.D.Va.), aff'd, 129 F.3d 327(4th Cir. 1997) .............16

**STATE CASES**

Matter of MCI Telecommunications Corp. v. Public Serv.
Comm'n of the State of New York, 108 A.D.2d 289
(3d Dept. 1985)...............................................5

Matter of MCI Telecommunications Corp. v. Public Service
Comm'n of the State of New York, 231 A.D.2d 284
(3d Dept. 1997)...............................................5

Matter of Nationwide Cellular Service, Inc. v. Public Service
Comm'n of the State of New York, 180 N.Y.2d 24
(3d Dept. 1992), appeal denied, 80 N.Y.2d 757(1992)...........23

Matter of New York Telephone Co. v. Public Serv. Comm'n,
95 N.Y. 2d 40(2000) .........................................11

**FEDERAL STATUTES**

47 U.S.C. § 152.............................................8

47 U.S.C. § 152(b)................................... 16, 18, 24

47 U.S.C. § 152(b)(1)...................................... 18

47 U.S.C. § 152(b)(2).......................................16

47 U.S.C. § 153(20).....................................passim

47 U.S.C. § 153(43).....................................passim

47 U.S.C. § 153(46).....................................passim

47 U.S.C. § 230.........................................passim

47 U.S.C. § 230(b)..................................14, 16, 17

47 U.S.C. § 230(d)(3).......................................16

47 U.S.C. § 251(e)(3).......................................42

47 U.S.C. § 332(c)(3).......................................24

## STATE STATUTES & REGULATIONS

Public Service Law § 2(17)......................................4

16 NYCRR § 605.1(a)(5).........................................15

## FEDERAL ADMINISTRATIVE DECISIONS

In the Matter of Communications Protocols under Section 64.702
of the Commission's Rules and Regulations, Memorandum Order,
Opinion and Statement of Principles, 95 F.C.C.2d 584,
(1983).........................................................37

In the Matter of Federal-State Joint Board on Universal
Service, Report to Congress, 13 F.C.C.R. 11501.................31

GTE Telephone Operating Co., 13 F.C.C.R. 22466 (1998).........23

In the Matter of Implementation of the Non-Accounting
Safeguards of Sections 271 and 272 of the Communications
Act of 1934, as amended ("Non-Accounting Safeguards Order")
11 F.C.C.R. 21905 (1997)......................................36

In the Matter of Inquiry Concerning High-Speed Access
to the Internet over Cable and other Facilities, 17 F.C.C.R
4798 (2002)...................................................35

In the Matter of Petitions for Waiver of Section 64.702 of
the Commission's Rules(Computer II), Memorandum Opinion and
Order, 100 F.C.C.2d 1057, (1985)..............................39

In the Matter of Petition for Declaratory Ruling that AT&T's
Phone-to-Phone IP Telephony Services are Exempt from Access
Charges, WC Docket No. 02-361, 19 F.C.C.R. 7457, 2004
FCC LEXIS 2030 (2004)..........................................4

In the Matter of Petition for Declaratory Ruling That
Pulver.com's Free World Dialup is neither Telecommunications
nor a telecommunications Service, 19 F.C.C.R. 3307 (2004)..passim

Independent Data Communications Manufacturers Association,
Inc., Memorandum Opinion and Order, 10 F.C.C.R. 13717
(1995)........................................................40

Promotion of Competitive Networks in Local Telecommunications
Markets, 15 F.C.C.R. 22983 (2000)...............................22

Rules and Policies Regarding Calling Number Identification
Service-Caller ID, 10 F.C.C.R. 11700 (1995)....................22

Vonage Petition for Declaratory Ruling, FCC WC
Docket No. 03-211...............................................35

## STATE ADMINISTRATIVE DECISIONS

Case 03-C-1285 – Complaint of Frontier Telephone of Rochester,
Inc. Against Vonage Holdings Corporation Concerning Provision
of Local Exchange and InterExchange Telephone Service in New
York State in Violation of the Public Service Law, Order
Establishing Balanced Regulatory Framework For Vonage
Holdings Corporation, (Issued and Effective May 21, 2004).......5

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Vonage Holdings Corporation,

              Petitioner,

      - against -

THE NEW YORK STATE PUBLIC SERVICE
COMMISSION and WILLIAM M. FLYNN, THOMAS
J. DUNLEAVY, LEONARD A. WEISS, and NEAL
N. GALVIN, in their official capacities
as the Commissioners of the Public
Service Commission of the State of New
York, and not as individuals,

              Respondents.

04 Civ. No. 4306
(JGK) (DFE)

---

BRIEF OF DEFENDANTS PUBLIC SERVICE COMMISSION OF THE STATE
OF NEW YORK, et. al. IN OPPOSITION TO
MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION

---

## PRELIMINARY STATEMENT

Internet Protocol (IP) is an established technology permitting exchange of information over computers, as digital packets. Advances have permitted use of IP to carry voice messages and "Voice over Internet Protocol" (VoIP) has been used in telephony for the past several years to achieve cost savings in the backbone of telephone networks. Most recently, VoIP is being used to provide service to end-users.

The Defendant Public Service Commission of the State of New York (Commission, PSC) has recently begun evaluating what

limited regulation can best encourage competitive development of IP telephony in New York, while protecting New York's interests in public safety, customer protections and the reliability of the telephone network.  While some providers of IP telephony have acceded to Commission jurisdiction over intrastate service, Plaintiff Vonage Holdings Co. (Vonage), a provider of voice service, has not availed itself of the Commission's invitation to meet with PSC staff to develop alternative means, where appropriate, of achieving necessary public safety and consumer protections.  Rather, Vonage has brought this Federal District Court action claiming it has configured its service in a way that makes it an "information service", preempted from state regulation under federal law allegedly precluding regulation of the Internet.  For the reasons stated in this brief, Vonage's requests for Preliminary and Permanent Injunctions against the PSC requirements that it file a tariff and requests for waivers should be denied.

Vonage will not prevail on the merits because the Commission is not preempted.  The Commission does not seek to regulate the "Internet," but rather the intrastate provision of voice telephony in New York.  Vonage is no way using the Internet in the usual fashion, to obtain information, but as a transmission path for telephone calls.

Even if Vonage was providing information service, intrastate regulation would only be preempted if the Federal Communications Commission (FCC) found such intrastate regulation made interstate regulation impossible.  The FCC has not attempted to preempt, nor could it meet the burden of doing so, because Vonage's intrastate and interstate service can be separately regulated.

Moreover, Vonage has not shown irreparable harm.  The minimum requirements of New York law, with respect to intrastate service -- the filing of a request for a Certificate of Public Convenience and Necessity ("CPCN") and a tariff -- will not create any burden on Vonage's provision of interstate service or interfere with interstate commerce.  Filings with the Commission seeking waivers from regulations and discussing how best to comply with E911 requirements and to avoid regulatory arbitrage will also not create irreparable harm to Vonage.

In any event, Vonage merely transmits the user's speech to the point of the user's choosing and therefore is providing telecommunications under federal law; it is being marketed as a telephone service and should be regulated as such. 47 U.S.C. § 153 (43) ["'. . . telecommunications' means the transmission, between or among points specified by the user, of information of the user's choosing, without change in the form or content of the information as sent and received."]  47 U.S.C.

- 3 -

§ 153(46)["The term 'telecommunications service' means the offering of telecommunications for a fee directly to public, or to such classes of users as to be effectively available directly to the public, regardless of the facilities used."]  Vonage is not offering an "information service", because it does not offer the "capability for making available information via telecommunications."  47 U.S.C. § 153 (20).

## STATEMENT OF FACTS

### I.  Vonage's Use of IP Telephony

Telephone networks use a variety of formats or protocols to carry calls; conversion among formats is routine (Declaration of Carl A. Johnson, "Johnson Declaration" ¶ 6). VoIP is one such protocol.  That is, IP is the use of digital packets for transmission of information and VoIP is the use of IP technology to carry voice.  Transmission of voice in this manner can be a cost saving device and permits more flexible network design.  The FCC has decided that a telecommunications carrier (AT&T) using IP telephony to provide inter-exchange carriage of calls over the "backbone" of its own private network is a telecommunications service.[1]

Recently, new providers, including cable companies, have begun to use VoIP to offer a landline voice service to

---

[1] In re: Petition for Declaratory Ruling that AT&T's Phone-to-Phone IP Telephony Services are Exempt from Access Charges, WC Docket No. 02-361, FCC 04-97 (April 21, 2004) ("AT&T Order").

end-users.  These services use high-speed data or "broadband",
connections from customer premises to provide service.[2]  The
connection carries the customer's voice converted to IP format.
To date, two VoIP providers, Time-Warner and RNK, have filed
tariffs with the Commission. Johnson Declaration ¶ 14.

     Vonage is also a new entrant to the local telephone
market and provides voice service to end-users using IP
telephony.  In its Order Establishing Balanced Regulatory
Framework for Vonage Holdings Corporation (Issued May 21, 2004
in Case 03-C-1285) ("Order" at 4), the Commission observed that
a Vonage customer typically uses a normal telephone and dials a
standard telephone number.  The number and voice are digitized
into IP packets by an Analog Telephone Adapter (ATA) to which
the phone is connected.  The adapter is connected to the
customer's broadband service and the digitized number and voice
are then transmitted on the broadband connection to a Vonage
"gateway" server.  Routing from the server differs depending on
whether the call is to a Vonage or non-Vonage customer.  Calls
to Vonage customers are transmitted as IP packets and converted
to voice by each customer's adapter.  Calls to non-Vonage
customers are converted to digital (Time Division Multiplexed
"TDM") signals that are then handed off to the networks of

---

[2] Broadband connections can be supplied either by cable companies
or by "DSL" equipment mounted on local loops. Brand X Internet
Services v. FCC, 345 F.3d 1120, 1124-25 (9th Cir. 2003).

either local exchange or inter-exchange companies for transmittal to non-Vonage end users.

When a non-Vonage customer calls a Vonage subscriber, the call follows the usual path on the voice network. The call is carried on the originating customer's network to Vonage, which repackages the signal into IP and transmits it to the called Vonage customer. The signal is then reconverted to an analog signal by the ATA and to voice by the subscriber's telephone. Vonage currently has a fairly small number of customers in New York, so 97% of calls to or from Vonage's customers are carried (transmitted) on other carrier's networks. Johnson Declaration ¶ 7.

## II. The Commission's Decision Asserting Jurisdiction Over Vonage And Requiring Filing of Waivers

In September of 2003, Frontier Telephone of Rochester, Inc. (Frontier) filed a complaint, alleging that Vonage was unlawfully providing intrastate telephone service in New York. Frontier asked the Commission to Order Vonage to 1) cease providing local exchange and intrastate long distance services until it obtains a CPCN, 2) comply with appropriate statutes, rules and regulations and 3) route all 911 calls over the dedicated 911 network.[3]

---

[3] Landline telephone companies provide E911 emergency calling. This service allows the customer to dial E911 to obtain emergency personnel, and allows the emergency personnel to

The PSC noticed the Frontier complaint for comment. Vonage replied that it did not provide a telecommunications service under Federal Law, but rather that it offered an information service, in the form of a conversion from digital packets to telephone service.  Other parties argued that Vonage was providing the functional equivalent of normal telephone service and was subject to Commission regulation.

In its Order the Commission rejected Vonage's claim that it was not providing telephone service under the New York State Law.  Order at 9-10.  It noted that Vonage allows its subscribers to make voice calls and receive voice calls from customers of other telephone companies.  The PSC concluded that the servers Vonage used to connect its customers to other telephone corporations constituted a telephone line used for the provision of telephonic communication for hire, and that Vonage was therefore a telephone corporation under Public Service Law (PSL) § 2(17).  It also found that Vonage was reselling intrastate services provided by other telephone corporations.

The Commission further decided that State regulation of Vonage's service was not preempted under Federal law.  It

---

identify the caller's location.  Vonage attempts to provide this service, but does not do so in the traditional way.  Calls from Vonage's customers may possibly not be answered by emergency personnel because Vonage does not use the customary routing to 911.  Vonage also cannot identify the physical location of the customer and advises the customer to register its address for identification when 911 is dialed. Johnson Declaration ¶ 19

reasoned that Vonage was providing telecommunication service since customers were sending and receiving voice signals to and from other persons that were also initially using voice.  The PSC noted that nothing was changed, added or subtracted to the conversation, but that Vonage merely converted the voice to IP and that signal was then reconverted for no net change.  Order at 11-12.

The PSC also concluded that the Vonage service was not an "information service" under Federal Law because it does not offer its customers a capability for manipulating or inter-acting with stored data.  The Commission relied on FCC rulings providing that where there are conversions at both ends of the call ("no net protocol conversion"), this system was a telecommunication service.  Order at 12-13.

The Commission further observed that there had been no preemption of state law, citing 47 U.S.C. § 152, which precludes supercession of State intrastate regulation unless expressly so provided.  It rejected contentions that § 230(b) of the 1996 Act preempts state regulation of IP telephony, observing that section only precludes states from addressing the content of speech transmitted over the Internet.  Order at 13.  The PSC also dismissed Vonage's claims that the FCC had preempted state regulation of Vonage, noting that the FCC had initiated a global proceeding to examine regulation of IP enabled services,

including services like Vonage, but had yet to issue a decision. Order at 13.  It concluded that, even if Vonage was an information service, the Commission still had jurisdiction over the intrastate provision of such services.  Order at 14.

The PSC also rejected Vonage's claims that the FCC's "impossibility doctrine" and "mixed use" rule precludes state regulation.  These rules preempt intrastate regulation where it would be impossible to separate intrastate and interstate service.  The Commission found this claim of impossibility incorrect because Vonage had been able to distinguish local and long distance calls.  Order at 14-15.

While the Commission adopted Frontier's view that Vonage was a telephone corporation under New York law, it declined to subject Vonage to the full range of regulation in New York.  The PSC noted that as a matter of statute that Vonage needed to file a CPCN and a tariff.  It observed that there were vital public interests to be served by regulation of telephone corporations, including the provision of access to 911, and the avoidance of regulatory arbitrage relating to different requirements imposed on similarly situated voice providers.  The Commission recognized, moreover, that there was a strong state interest in encouraging new technology such as that provided by Vonage.  Order at 15-17.

The Commission accordingly stayed application of the statutory requirements for forty-five days from the date of issuance of its Order.  Vonage was directed to obtain a CPCN and file a tariff within the forty-five days of this Order.  Vonage was also directed to file for any waivers of Commission regulations it deemed necessary within forty-five days, but it was encouraged to work with the staff to develop alternative means of achieving necessary public safety and consumer protections.  The Commission stated it would not enforce its rules and regulations during the pendency of the stay requests.

## SUMMARY OF ARGUMENT

A preliminary injunction is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972, (1997)(emphasis in original).  Where as here, the movant seeks a preliminary injunction "that will affect 'government action taken pursuant to a statutory or regulatory scheme, the injunction should be granted only if the moving party meets the more rigorous likelihood-of-success standard.'" No Spray Coalition, Inc. v. City of New York, 252 F.3d 148, 150 (2d Cir. 2001) quoting Beal v. Stern, 184 F.3d 117, 122(2d Cir. 1999).  Vonage is not likely to prevail on the merits under the "likelihood of success standard."  The thrust of Vonage's brief is that state power

over telecommunications is preempted by federal law. [4]  However,

Vonage's various theories for preemption all fail, as shown in

POINT I below.

    Contrary to Vonage's claims, federal law (47 U.S.C. §

230) only precludes regulation of information content offered

over the Internet.  POINT I. A.  Even if Vonage provided an

information service, the Commission's Order would not be

preempted.  POINT I. B. States can regulate the intrastate

provision of an information service unless the FCC finds such

intrastate regulation makes federal regulation "impossible."

Louisiana Public Service Comm'n v. Federal Communications

Comm'n, 476 U.S. 355 (1986).  As discussed in POINT I C., State

regulation will not interfere with federal regulation, and it is

---

[4] The Commission's construction that Vonage is a "telephone
corporation" under state law is entitled to deference. Matter of
New York Telephone Co. v. Public Serv. Comm'n, 95 N.Y. 2d 40,48
(2000).  That decision is, moreover, correct.  Vonage is a
provider of voice offering telephonic communications for hire
under PSL § 2(17). Its server is equipment used in the provision
of such communications, as required by PSL § 2(18) because it
connects Vonage to the switched network.
    In addition to providing telecommunications as a part of an
end to end communication by the user of its services, Vonage
also resells telecommunication service in order to connect calls
to non-Vonage subscribers.  Johnson Declaration ¶ 8.  Vonage
disputes the conclusion that it is a reseller as defined in
Commission regulations, claiming (at 30, n. 17) that it does not
"[re-offer] telecommunications service to the public for a
profit."  Plaintiff satisfies this definition, because it
obtains certain services from providers of telecommunications in
order to connect calls on the "switched network" and then
resells those services to its users as part of its service of
completing calls to any telephone number.

possible to separate the interstate and intrastate components of Vonage's business.

The Commission's regulation of Vonage's intrastate service does not violate the Commerce Clause, because such regulation is specifically permitted by Federal Law. 47 U.S.C. § 152(b)(2). There is also no burden on interstate commerce arising from Vonage's filing of a tariff and a CPCN. The State has a legitimate interest in ensuring that E911 is available to all consumers in New York, and if technologically possible, that a reasonable alternative is provided. If there were a burden, it would be fully justified. The Commerce Clause does not preclude the Commission from protecting state interests including maintaining access to emergency calling, providing for fair competition among providers of voice service and ensuring that basic consumer protections are in place.

Further as shown in POINT II, Vonage has not shown that it will suffer irreparable harm with respect to its provision of interstate service. Vonage attempts to create a "straw man" argument by claiming intrastate regulation requires knowledge of physical call end points, but that claim is baseless. An injunction is unwarranted because Vonage can comply with the Commission's Order requiring filing of a tariff by describing its existing offering of calling plans in its tariff and requesting waiver of rules it deems inappropriate.

Though the Court need not reach the question to deny
the request for an injunction, the service Vonage provides is
not an information service as defined in 47 U.S.C. § 153(20).
Rather, as shown in POINT III A., Vonage is a provider of
telecommunications as defined in 47 U.S.C. § 153 (43).  That is,
Vonage is engaged in "the transmission, between or among points
specified by the user, of information of the user's choosing,
without change in the form or content of the information that as
sent and received."  Vonage is offering its customers a service
by which they send voice signals to predetermined points
(telephone numbers) on the public switched network.  The calls
are sent and arrive as voice calls, so there is "no net change
in form or content."  Vonage's claim that it does not transport
calls fails, if only because it is reselling service on a
telephone system by offering the capability to carry calls.
Moreover, an information service requires "the offering of a
capability for . . . making available information via
telecommunications."  As shown in POINT III B., Vonage does not
provide the user such a capability to access information, but
merely allows a user to make telephone calls.  It is excluded
from the reach of information service by the proviso of
§ 153(20) that an information service "does not include any use
of any such capability for the management, control, or operation

of a telecommunications system or the management of a telecommunication service."

Finally, as shown in POINT IV, the possibility of deferral of the issues discussed in POINT III does not provide a basis for an injunction.  If there is an injunction it should not extend to state regulation of 911 service, which implicates the public health and safety.

**I.  VONAGE HAS NOT SHOWN LIKELIHOOD OF SUCCESS IN ITS ATTEMPT TO PREEMPT THE PSC's ORDER**

A.  Federal Law Limiting Liability of Internet Providers Does Not Preempt State Regulation Of IP Telephony

Vonage claims an alleged Federal policy of preemption of state regulation of the Internet.[5]  It cites (at 20) <u>Vonage Holdings Corp v. Minnesota Public Utilities Commission</u>, 290 F.Supp.2d. 993 (D.Minn.2003, Appeal Pending).  The Minnesota District Court wrongly concluded Congress has spoken with "unmistakable clarity" to preclude state regulation of the Internet, 290 F. Supp.2d 997, citing 47 U.S.C. § 230(b).  The Commission only seeks to assert jurisdiction over the provision of intrastate voice service.  It correctly decided that § 230

---

[5] "The Internet is an international network of interconnected computers."  <u>Reno v. American Civil Liberties Union</u>, 521 U.S. 844, 849(1997).  It offers "a wide variety of communication and information retrieval methods," including electronic mail, chat rooms, all of which transmit text and some sound, pictures and videos.

does not preclude such regulation and only affects content supplied over the Internet.

Vonage relies (at 20) upon an alleged policy objective of § 230(b) "to preserve the vibrant and competitive market that presently exists for the Internet and other interactive computer services, unfettered by federal and state regulations" as a basis for preemption of state regulation.  However, the Supreme Court has stated that Congress' intent to preempt intrastate communications must be explicit.  AT&T v. Iowa Utilities Board, 525 U.S. 366, 378, n.7 (1999).  Section 230's policy statement expressing a preference for free markets for Internet services does not constitute the necessary explicit statement of intent to preempt.  Indeed, Vonage has not even properly identified the "regulation" Congress meant to preclude.  The primary goal of § 230 "was to control the exposure of minors to indecent material." Batzel v. Smith, 333 F.3d 1018, 1026 (9th Cir. 2003). Congress' concern was that lawsuits could threaten the freedom of speech.  It therefore overrode traditional treatment of publishers, distributors and speakers under statutory and common law and protected providers from defamation suits.  It did not thereby preclude all state regulation that in any way might affect the Internet.  See Zeran v. America Online, 958 F. Supp. 1124, 1134-35 (E.D.Va.), aff'd, 129 F.3d 327(4th Cir. 1997)[analyzing legislative history of § 230(b) and determining

it was meant to address laws concerning the content of speech
transmitted over the Internet].

Moreover, Vonage incorrectly relies upon the alleged
policy behind § 230(b), as opposed to Congress' actual
enactment.  "The critical question in any pre-emption analysis
is whether Congress intended that federal regulation supersede
state law." Louisiana PSC v. FCC, 476 U.S. at 369.  47 U.S.C. §
230 displays no intent to preempt.  The only clarity with which
Congress spoke in that section was to limit liability of
information providers for libel on the Internet.  It provided in
§ 230(c) that "no provider or user of an interactive computer
service shall be treated as the publisher or speaker of any
information provided by another information content provider."
There is nothing in § 230 which would preclude state regulation
for transmission of information by a Vonage type service.  47
U.S.C. § 230(d)(3) provides that "nothing in this section shall
be construed to prevent any State from enforcing any State law
that is consistent with this section."  47 U.S.C. § 152(b)
"fences off from FCC reach or regulation intrastate matters" in
"sweeping" language.  Louisiana PSC v. FCC, 476 U.S. at 370.

Vonage argues (at 20) that the FCC has gone on record
as agreeing with the Minnesota District Court that Congress's
statement means exactly what it says in ¶ 39 of its IP
Rulemaking Notice.  The cited statement is, however, merely a

- 16 -

recitation of the FCC's "Pulver Order"[6] which involved an interactive voice service.  The FCC recently held that § 230 is inapplicable to an IP-enabled voice service that provided no enhanced functionality to the end-user.  AT&T Order at 7468, ¶ 17.  That conclusion refutes the broad preemption that Vonage seeks to derive from § 230.

    B.    In Any Event, State Regulation Of Information
          Service Is Not Necessarily Preempted

        As shown in Point III below, Vonage is not offering an information service as defined under federal law.  Even if it was, state regulation of that service would not be preempted as a matter of law; therefore Vonage cannot obtain an injunction.  Vonage states (at 21) that "[t]he PSC Order does not dispute the legal principle that State regulation of information service is preempted."  This claim is incorrect.  The Commission's Order stated (at 14) that 47 U.S.C. § 152(b) "expressly preserves states jurisdiction over intrastate Information Services."

        Vonage incorrectly argues that states are per se preempted from regulating information services.  47 U.S.C. § 152(b) broadly precludes federal jurisdiction over "charges, classifications, practices, services, facilities or regulations for or in connection with intrastate communications services."

---

[6] Matter of Petition For Declaratory Ruling That Pulver.com's Free World Dialup is Neither Telecommunications Nor a Telecommunications Service, 19 F.C.C.R. 3307 (Rel. Feb. 19, 2004).

This preservation of state authority over intrastate communications applies equally to both telecommunications and information services.  California v. FCC, 905 F.2d 1217, 1240 (9th Cir. 1990) ["As long as enhanced services are provided by communications carriers of the intrastate telephone network, then the broad "in connection with" language of 47 U.S.C. § 152(b)(1) places them squarely within the regulatory domain of the states."]  Vonage cites (at 34) the exception created by Louisiana PSC v. FCC, 47 U.S. at 375, n. 4, which recognized that federal agencies may preempt states where "federal regulation would otherwise be impossible."  However, this "impossibility" exception only precludes state authority that would "negate" the exercise of FCC authority over interstate service. National Ass'n of Regulatory Utility Commissioners v. FCC, 880 F.2d 422, 429 (D.C. Cir. 1989).  Moreover, this "impossibility" exception is narrow and the FCC has the burden of justifying it. California v. FCC, 905 F.2d at 1243-44.

Vonage's reliance (at 11) on case law[7] in which the FCC has preempted regulation of "enhanced services" and been upheld

_____

[7] Computer and Communications Industry Association v. FCC, 693 F.2d 198, 206 (D.C. Cir. 1982)[FCC preemption of state regulation of customer premises equipment where it conflicts with state regulation, 693 F.2d at 214]; California v. FCC, 39 F.3d 919, 932-33 (9th Cir. 1994)[upholding FCC preemption of state requirements for separation of intrastate and interstate service and other state requirements inconsistent with federal requirements for CPE.]

by the Courts is thus inapposite.  The FCC satisfied the burden
of meeting the "impossibility" standard in those cases, and they
thus stand only for the proposition that the FCC can preempt
State regulation in certain narrow instances. See California v.
FCC, 39 F.3d at 932-33 ["question . . . is whether FCC has
indeed justified the extent of its preemption as sufficiently
narrowly tailored under the impossibility exception."]  Id at
933 ["The FCC has met its burden of showing that its regulatory
goals . . . would be negated by the state regulation it
preempted."]  Those cases do not mean that all State regulation
of information service is preempted.

        Vonage further argues (at 20-21) that state common
carrier regulation of services offered over the Internet has the
potential to prevent efficient utilization and full exploitation
of the interstate communication network.  Alleged burdens on
interstate providers arising from different state regulation of
intrastate service are permissible.  Diamond International Corp.
v. FCC, 627 F.2d 489, 493 n.7, (D.C. Cir. 1980).  In addition,
case law cited by Vonage[8], concluding that information service

_____

[8]  Vonage cites America Online Incorporated v. GreatDeals.net, 49
F.2d 851, 856 (Eastern District of Virginia 1999), and Howard v.
America Online Inc., 208 F.3d 741, 753 (9th Cir. 2000).  It is
noteworthy that such ISP's do "not act as a mere conduit for
information."  Howard v. America Online Inc., 208 F.3d at 753.
Vonage is, however, providing a conduit service, as discussed
more fully below.

providers should not be subject to federal common carrier
regulation  does not support the claim that there can be no
state regulation of intrastate services using the Internet to
provide a telecommunication service.[9]   States still have
jurisdiction over intrastate provision of IP-enabled services.
See Southwestern Bell Tel. Co. v. Public Utility Comm'n, 208
F.3d 475, 480 (5th Cir. 2000) (the fact that some Internet
traffic is interstate does not deprive state utility commission
of jurisdiction over intrastate Internet traffic.)

     C.    The Alleged Difficulty of Separating Vonage's
           Intrastate And Interstate Services Is
           Irrelevant And Can Be Overcome

      The Commission concluded that it was technically
possible to separate Vonage's intrastate and interstate service
pointing to Vonage's own ability to distinguish local calls from
long distance ones.  Vonage's argument that its service is
purely interstate and the FCC can preempt fails because the FCC
has not yet even attempted to preempt.  Moreover, Vonage's
service can be separated into interstate and intrastate
components; hence there would be no basis for FCC preemption in
any event.

---

[9] Southwestern Bell Telephone Company v. FCC, 153 F.3d 523, 544
(8th Cir. 1998), which held that ISP's should not be subject to
access charges, is even less on point on the question of whether
there is preemption of state regulation.

Vonage first cites (at 34) case law with respect to FCC power over interstate commerce.  National Association of Regulatory Commissioners v. FCC, 746 F.2d 1492, 1498 (D.C. Cir. 1984) [upholding an FCC decision to assert jurisdiction over intrastate facilities being denied to interstate calls.] [10]  That case only reflects the FCC's power over interstate communications and facilities used for such regulation.  It does not give the FCC power to preempt intrastate regulation. Indeed, the Court observed that the FCC was not regulating intrastate communications.  746 F.2d at 1501.  In contrast, this case concerns preemption of state regulation of intrastate calls.

Vonage's argument for such preemption is that it cannot separate interstate vs. intrastate calls.  However, that argument rests on a straw man – that it must know the physical location of all its calls.  There is, however, no regulatory need to identify where all of its calls originate or terminate. Johnson Declaration ¶ 13-16.  So long as Vonage can bill for the calls, it can file an intrastate tariff reflecting charges for calls that will be completed in New York State.

---

[10] Ivy Broadcasting Co. v. American Telephone and Telegraph Company, 391 F.2d 486, 491 (2d Cir. 1968) is also not on point because the question was whether state law should apply to admittedly interstate calls.

Vonage further claims (at 35) that the FCC's "mixed-use" doctrine preempts the states.  Vonage's invocation of "mixed-use" rests on a mistaken claim that it cannot separate its service into intrastate and interstate components.  The "mixed-use" rule was established solely to assign jurisdiction over traffic carried on shared communication facility, where it was necessary to separate the traffic into interstate and intrastate components for the purpose of ratemaking.  It is merely a rule of administrative convenience, intended to obviate measurement of interstate versus interstate traffic on certain non-switched access facilities.  It does not apply to the regulation the Commission is interested in applying to Vonage, which will be service-based, not call-based.  Johnson Declaration ¶ 13. [11]

---

[11] Further, Vonage appears to confuse the "mixed use" rule applying to traffic, with the "impossibility" exception discussed POINT I.B. supra, which pertains to regulation that is service based.  Notably, two of the three FCC orders cited by Vonage (at 35) pertain to the impossibility exception rather than the mixed-use rule.  See Promotion of Competitive Networks in Local Telecommunications Markets, 15 F.C.C.R. 22983, ¶ 101 (2000); see also Rules and Policies Regarding Calling Number Identification Service—Caller ID, 10 F.C.C.R. 11700, ¶¶ 85-86) (citing the impossibility exception as grounds for state law preemption). The remaining order cited by Vonage can be distinguished from the instant case because that order concerned the payment of access charges to local exchange carriers, which required a determination of whether each individual communication was local or non-local.  See GTE Telephone Operating Company, 13 F.C.C.R. 22466, 22480 ¶¶ 4-7, 28 (1998) (noting the distinction between the impossibility doctrine and

Vonage relies (at 35-36) on the <u>Pulver Order</u> to support its claim that the "mixed-use" doctrine applies to Internet-based telephony. [12]  In that Order, however, the FCC clearly stated that the "mixed-use" rule would only apply if it were necessary to conduct an "end-to-end" analysis of traffic. <u>See</u> <u>Pulver Order</u> ¶22.  In other words, the "mixed-use" rule would apply only where call endpoint identification is necessary for the purpose of the particular regulation at issue.  For the most part, Commission regulation would not depend upon endpoint identification.  Johnson Declaration ¶ 13. The Pulver service is, moreover, different than Vonage's because Vonage uses standard telephone numbers, issued under the North American Numbering Plan.  Vonage has been able to develop billing that reflects the difference between local and regional calls based on the area code of the call.

Vonage assails (at 37) its own practice of identifying a local call based on the area code as "merely a contractual fiction used by Vonage."  There is no reason why Vonage should not adhere to that "fiction" in adopting a tariff.  Vonage argues that it has only classified a call as local or long

the "mixed-use" rule).  Moreover, that order concerned a special access service rather than a network service. Id. ¶¶ 24-25.

[12] Vonage also cites (at 36) an FCC statement that IP packets defy jurisdictional boundary, but that statement was issued in the context of a Notice of Proposed Rulemaking and does not yet represent a binding finding by the FCC.

distance based on area codes for billing purposes.  However, it is only for billing purposes that calls need to be classified. There is no need to identify the location of all calls for any other regulatory purpose.  Johnson Declaration ¶ 13.

Vonage's alleged complaints about its difficulty in billing further ring hollow because it is likely that the Commission will have little interest in Vonage's billings.  The Commission has granted great pricing flexibility to non-dominant carriers in New York.  Johnson Declaration ¶ 20.  Vonage would be free to charge its own prices, subject only to market constraints.[13]

D.    The PSC Order Comports With The Commerce Clause

Vonage further claims that the Commission's Order is invalid under the Commerce Clause.  This claim fails because Congress specifically exercised its power under the Commerce Clause to permit State regulation of intrastate telephone service.  47 U.S.C. § 152(b).  Moreover, there is no discrimination against interstate commerce, as in two cases cited by Vonage (at 39), Oregon Waste System v. Department of

---

[13] A comparison of Vonage's service to cellular service is instructive.  Federal Law precludes state regulation of billing for cellular service.  47 U.S.C. § 332(c)(3).  That section does not, however, preclude non-price regulation of mobile services. Similarly, the New York Commission may regulate Vonage by providing it pricing flexibility while subjecting it to regulation designed to further important non-price intrastate goals.

Environmental Quality, 511 U.S. 93, 98 (1994) and C&A Carbone, Inc. v. Town of Clarkstown, 511 U.S. 383, 393(1994).  Contrary to Vonage's claims, Commission regulation has no extra-territorial reach which must be justified by local benefits.  There is no extra territorial reach; the Commission will regulate only service provided to customers in New York.

          In any event, a possible extra-territorial effect does not create a violation of the Commerce Clause.  Goldberg v. Sweet, 488 U.S. 255 (1989) [upholding taxes on interstate services].  Not only does the Commission's Order not burden interstate commerce, but it is supported by local benefits and thus would pass the balancing test of Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970), if there were a burden.  Vonage fails to cite a possible key local benefit, the maintenance of public safety through the continuance of 911 services.  The Commission must consider whether Vonage has proposed an acceptable means of allowing its customers to reach emergency services.  Johnson Declaration ¶ 19.

          Moreover, the benefits Vonage does mention (at 39-41) fully support a burden on interstate commerce if one were created by the Commission's Order.  The Commission must consider how best to regulate Vonage in a way that will not create the possibility of competitive inequity that could disadvantage

competition.[14]  Vonage argues (at 41) that the PSC has not
identified any "unfair regulatory advantage," but the Commission
has not had the opportunity to do so because it has not
considered Vonage's waiver requests.  If Vonage is not regulated
by the PSC it has the possibility of avoiding intercarrier
compensation systems, 911 access, consumer protection
requirements and network reliability standards.  Other carriers
providing voice service, and perhaps IP telephony, will be
subject to such regulation.[15]  The Commission must consider how
to develop a fair playing field for the regulation of all non-
dominant providers in New York.  It has asked Vonage to file for
waivers to begin the process of determining how best to regulate
the provision of telecommunication service in New York in light
of the entry of VOIP providers into the market.  Johnson
Declaration ¶ 18.

## II.  Vonage Will Not Suffer Irreparable Harm

Vonage also should not receive a preliminary
injunction because it is fully possible for Vonage's service to

---

[14] For instance, the state's interest in a robust, capable and
efficient telecommunications network requires that all carriers
using this network support it by paying intercarrier
compensation for traffic they terminate.  The Commission must
determine when and how Vonage, as a telephone corporation is
required to pay access charges. Johnson Declaration ¶ 19.

[15] Thus, Time Warner, which offers a VoIP service over its own
transmission facilities has filed a tariff with the PSC. Johnson
Declaration ¶ 14.

comply with intrastate common carrier regulations.[16]  Contrary to

its claims, Vonage need not identify which specific

communications are intrastate in order to ascribe its revenues,

expenses and billing to intrastate services.  Instead, Vonage

can develop reasonable estimates for such identification, if

necessary.  Johnson Declaration ¶¶ 12, 17.  See, Smith v.

Illinois Bell Telephone Co., 282 U.S. 133, 149 (1930)[requiring

estimates of interstate revenues and expenses].  It need not

know its customers' locations when they use its service to

comply with PSC regulation with respect to tariff filings.

Johnson Declaration ¶ 15.  The PSC, moreover, has no interest in

compelling Vonage to locate the end points of all its calls.

Johnson Declaration ¶ 16.  As such, Vonage cannot be subject to

the penalties it hypothesizes (at 43).

**III  Vonage Does Not Offer An Information Service,
But A Telecommunications Service**

A.    Vonage Is A Provider Of Telecommunications Service

The Commission concluded that Vonage's voice service

is to be considered a telecommunication service under federal

law.  Despite Vonage's claims (at 29-33), the Commission's

conclusion comports with the statutory definitions of a

---

[16] Vonage claims (at 42) that case law provides that any
violation of the Commerce Clause gives rise to irreparable
injury.  The cited case law found a burden on interstate
commerce, but none exists in this case.

telecommunication service and telecommunications under 47 U.S.C. § 153(43) and (46).

Telecommunications is the "transmission between or among points specified by the user, of information of the user's choosing, without change in the form or content of the information sent and received."  47 U.S.C. § 153(43). Telecommunications service is "the offering of telecommunications for a fee directly to the public, or to such classes of users as to be effectively available directly to the public, regardless of the facilities used."  47 U.S.C. § 153(46).

Vonage disputes that it provides telecommunications, claiming that there is "change in the form of the content of information that is sent and received."  It asserts (at 31) that information is delivered to its server in an IP form and it then converts the information for use on the "switched network."  The Commission properly considered the entire call, starting with the customer's use of the adapter, in deciding that Vonage is a telecommunications provider because there is no net change over the course of the call from the customer's standpoint.  Johnson Declaration ¶ 10.

First, Vonage provides telecommunications because its users speak into a handset and the resulting information is converted to electronic pulses which travel over broadband

connection to Vonage's server and are then routed to the facilities of a local exchange company for delivery to the number dialed by the user.  Inasmuch as Vonage is providing this service for a fee, it is providing a telecommunication service. 47 U.S.C. § 153(46).  Thus, the Commission properly found that Vonage was a telecommunications provider under Federal Law.

Next, "telecommunications" is defined in terms of the perspective of the ultimate user.  Telecommunications is the "transmission between or among points specified by the user of information."  47 U.S.C. § 153(43).  That information is "without change in the form or content of the information as sent and received (emphasis added)" - - that is whether there is a change

is considered from the user's perspective.  Moreover, tele-communications service is "the offering of telecommunications for a fee directly to the public."  47 U.S.C. § 153(46).  The FCC has recognized that the question of whether there is a net conversion is one to be considered from the standpoint of the end-user.[17]  Vonage has clearly marketed its service as a telephone service in its advertising to users.  Order at 5.

---

[17] Non-Accounting Safeguards Order ¶ 106 ["we have treated three categories of protocol processing services as basic services because they result in no net protocol conversion **to the end-user**." (emphasis added)]

Vonage asserts (at 33) the Commission misunderstood that Vonage performs a "net" protocol conversion.[18]  In particular, it disputes the Commission's conclusion that the adapter is providing part of its service when it converts its customer's speech into IP.  Vonage argues that the adapter at the customer's premises is not owned by Vonage, and Vonage is not making a conversion at its customer's location.  Whether the adapter is owned by Vonage or by the customer is of no moment.  Telecommunications service "means the offering of telecommunications for a fee directly to the public, <u>regardless of the facilities used</u>."  47 U.S.C. § 153(46).  What is critical is the function performed by the adapter.  The adapter ensures that calls will be routed along a broadband connection to Vonage's server, where Vonage can then route the call to the intended receiver.

Moreover, Vonage's argument fails to the extent it rests on the design of a particular carrier's network, rather than the service offered.  Vonage essentially argues that different types of carriers are subject to different types of regulations depending on their particular facilities and/or network design.  The 1996 Act is structured in terms of services

---

[18] "Protocol conversion" is "the specific form of protocol conversion that is necessary to permit communications between disparate terminals or networks."  <u>Non-Accounting Safeguards Order</u> n. 229.

provided to end users, rather than with respect to facilities that supply the service. AT&T Corp v. City of Portland, 216 F.3d 871, 877 (9th Cir. 2000)[ISPs are providers of "information services" in relation to their subscribers."] See also, National Association of Regulatory Utility Commissioners v. F.C.C. 525 F.2d 630, 644 (D.C. Cir. 1976) ["A particular system is a common carrier by virtue of its functions"].[19]  Likewise, the FCC has determined that the statutory classification of a provider should depend upon the functionality of the service rather than the facilities used to provide that service. In the Matter of Federal-State Joint Board on Universal Service, Report to Congress, 13 F.C.C.R. 11501, ¶ 59 (1998) ("Stevens Report").

Vonage further argues (at 31) that it is not transmitting information between or among points specified by the user, because it routes communications to IP addresses, not to telephone numbers. Vonage's argument fails completely, however, to the extent that calls are transmitted over its network to phone numbers located on the "switched network". The statutory telecommunications definition does not expressly require that "points specified by the user" be known, fixed points. For example, cellular telephone calls, involving endpoints which may be mobile and not precisely known, are

_____

[19] Vonage derides (at 18) this as "quacks-like-a-duck" reasoning, but the 1996 Act was drafted in terms of what services are provided to end-users.

considered telecommunication services under the Act.  National
Cable & Telecommunications Association, Inc. v. Gulf Power Co.,
534 U.S. 327, 340 (2002).

Vonage also relies (at 29-30) on the Minnesota
District Court's quotation of the Universal Service Report to
the effect that carrier regulation should be limited to
companies that provide the underlying transport.  It then argues
that since it is not providing transport service it should not
be subject to regulation of telecommunications providers.  This
argument fails because the fact that Vonage may not own the
facilities used to reach it does not mean it is not a
telecommunications service.  Local exchange companies have been
carrying calls to inter-exchange carriers for years without any
challenge to inter-exchange carriers' status as
telecommunication companies.  Moreover, Vonage is reselling
service on the switched network to the extent that it arranges
for the delivery of its customers calls on the network.

Finally, Vonage claims that the PSC has "apparently
concluded" that Vonage provides phone-to-phone IP telephony
(n.13) and argues (at 32) that its service does not meet the
FCC's four-part test for determining whether IP Telephony
service may be classified as telecommunications stated in the
FCC's Universal Service Report.  In so arguing Vonage misreads
both the Commission's decision and the Universal Service Report.

The Commission observed that the Universal Service Report
tentatively concluded that "phone-to-phone" telephony was
"telecommunications service."  Order at 13.  The PSC correctly
observed, however, that the FCC had made no statements on other
forms of IP telephony, like that offered by Vonage.  Order at
13.  Vonages's claim that the Universal Service Report sets the
standard for all IP telephony is simply incorrect.  That report
set forth standards for phone-to-phone IP telephony and
concluded that phone-to-phone IP telephony appeared to be a
telecommunication service.  It did <u>not</u> conclude that other
aspects of IP telephony were <u>not</u> telecommunication service.
Vonage thus incorrectly relies on the Minnesota District Court
opinion which concluded that Vonage met only two of the four
parts of the Universal Service Report.  However, for reasons
discussed above, the Minnesota Court was wrong in its conclusion
that Vonage did not transmit customer information without net
change in form or content.

     B.    Vonage Does Not Provide Information Services

     1.    Vonage Does Not Offer A Capability To
           Manipulate Information

     Vonage argues that it offers an "information service"
as it provides (1) a protocol conversion service and (2) access
to stored information (Vonage MOL 21-22).  The Commission

correctly decided Vonage is not an information provider under the definition of such services in 47 U.S.C. § 153(20).

47 U.S.C.§ 153(20) defines an information service as "the offering of a capability for generating, acquiring, storing, transforming, processing, retrieving, utilizing, or making available information via telecommunications . . . ." Vonage does not meet the test of that section because it does not offer users a capability for storing, retrieving or manipulating information.  Thus, Vonage does not offer information like Lexis or Westlaw.  With those services, customers are able to reach a database to obtain stored information.  Johnson Declaration ¶ 9.

What Vonage offers its customers instead is the ability to complete a telephone call.  47 U.S.C. § 153(20) specifically excludes from the definition of an information service "any use of any such capability for the management, control or operation of the telecommunication system or the management of a telecommunication service."  Such use of information capability is precisely what Vonage provides.

Vonage relies (at 22-28) on FCC decisions in arguing that it is an information service.  None of the cited FCC decisions ruled that Vonage provides an information service. Indeed, the FCC has yet to rule on Vonage's petition that it be treated as an information service.  Vonage Petition for

Declaratory Ruling, FCC WC Docket No. 03-211.  While Vonage

relies heavily on the Pulver Order, that service was

substantially different than Vonage's.  Pulver's free service

allows communication only between its own subscribers and does

not offer any connection to other carriers, customers, as Vonage

does.  Further, Pulver offered some additional Internet related

services that Vonage does not provide.[20]  Indeed, in this

context, a more relevant FCC decision is the recent decision

finding AT&T's VoIP service to be a telecommunication service

rather than an information service.[21]

   Vonage further relies on the FCC's "Cable Modem

Order."[22]  The footnote cited in that order does not support

Vonage's.  The IP address-to-domain name conversion mentioned

there is not analogous to Vonage's service.  Vonage's use of IP

---

[20] The Pulver service 1) assigned unique five or six digit
numbers, not ordinary ten digit numbers under the "North
American Numbering Plan" for telephone numbers, 2) provided
subscribers with information, such as whether another subscriber
is present online and the addresses of members of the Pulver
service and 3) offered in some cases, the capability of emailing
responses.  Pulver Order ¶¶ 5, 9.

[21] Like Vonage, AT&T advertises its service generally to the
public for a fee, interconnected its voice service with the
switched network, utilizes numbers from the North American
Numbering Plant, utilizes protocol conversions to permit real
time point to point transmission and transmitted customer
conversation without a net change in the form or content of the
information itself.  See AT&T Order ¶¶ 11-13.

[22] In the Matter of Inquiry Concerning High-Speed Access to the
Internet over Cable and Other Facilities, 17 F.C.C.R. 4798,
(2002), vacated Brand X Internet v. FCC, 345 F.3rd 1120 (9th Cir.
2003); reh'g denied 2004 U.S. App. LEXIS 8023 (9th Cir. 2004).

addresses merely serves to initiate, terminate and route calls. Such activity is exempt from the definition of information service. Non-Accounting Safeguards Order at ¶ 106.

    2.    Vonage's "Protocol Conversion" Does Not Make It An "Information Service"

The Commission rejected Vonage's contention that it was an information service merely because it provides a "net protocol conversion." Vonage relies on FCC orders that predate the 1996 Act. Basically, Vonage claims that these orders establish that it provides an information service because it provides a net protocol conversion between its customers and PSTN users. While some of the pre-1996 Act orders were incorporated into the 1996 Act's definition of information services, the facts do not support Vonage's argument that it provides a net protocol conversion pursuant to those orders.

Vonage argues (at 23) that the FCC has concluded that net protocol conversions constitute "information services" under the 1996 Act, citing ¶ 104 of the "Non-Accounting Safeguards Order,"[23] and that its service performs a net protocol conversion. Vonage fails to mention that two paragraphs later in that same order, the FCC specifically identified three particular categories of protocol conversions that constitute no

---

[23] In the Matter of Implementation of the Non-Accounting Safeguards of Section 271 and 272 of the Communications Act of 1934, as amended ("Non-Accounting Safeguards Order") 11 F.C.C.R. 21905 (1997).

net protocol conversion to the end user, and are therefore exempt from the statutory definition of "information services." These "no net" protocol conversions constitute "the management, control or operation of telecommunications system or the management of a telecommunications service," which 47 U.S.C. § 153(20) expressly excludes from the category of "information services." Non-Accounting Safeguards Order, ¶ 106. As explained below, Vonage's protocol conversion is one of the three exempted "no net" protocol conversions. Thus, Vonage's argument fails because it does not perform a net protocol conversion for the purposes of FCC precedent.

Originally, the three exempted protocol conversion categories were carved out from the FCC's definition of enhanced services. Twenty-one years ago, the FCC stated that "while the term 'protocol processing' may have a rather broad reach if applied literally . . . our use of the term in the definition of enhanced services is more narrow." In the Matter Communications Protocols under Section 64.702 of the Commission's Rules and Regulations, Memorandum Order, Opinion and Statement of Principles, 95 F.C.C.2d 584, 586-87, ¶5 (1983) ("Protocols Order"). The FCC then set forth three protocol conversion

exemptions in order to narrow its definition of enhanced services.[24]

Vonage's services fall into the second of the three exemptions identified in the Non-Accounting Safeguards Order, which in turn originated from the Protocols Order. This exemption is "protocol processing . . . 2) in connection with the introduction of a new basic network technology (which requires protocol conversion to maintain compatibility with existing CPE)." The FCC explained this exception as follows:

> A second area warranting discussion concerns the introduction of new technology in basic service . . . there is currently a trend toward the use of digital loops which will interface with customer premises using a digital protocol interface. A potential problem might arise if a call were placed between a user of equipment which employs such a digital interface and a user using the more traditional analog interface (with appropriate conversion equipment employed within the network): there would be a net protocol conversion within the network for such a call to proceed, i.e. from a digital to an analog protocol between that end of the call . . . Accordingly, in circumstances involving no change in an existing service, but merely a change in electrical interface characteristics to facilitate introduction of new technology, we are prepared to act favorably and expeditiously on petitions for waiver of the *Computer II* rules to ensure that new technology to implement an existing service can and will be deployed.

Protocols Order at ¶¶ 16-17. Stated simply, if taken literally, the enhanced services definition would inadvertently transform a

---

[24] These exceptions are communications between an end user and the network itself, introduction of new basic network technology, and internetworking. Non-Accounting Safeguards Order, ¶ 106; Protocols Order, ¶¶ 14-18.

basic telephone service into an enhanced service merely because the party at one end of the call uses a digital loop and digital customer premises equipment, and the party at the other end of the call uses a traditional analog telephone loop and a standard telephone.  To solve this problem, the FCC specifically exempted that situation from its definition of enhanced service.

Vonage's protocol conversion falls within this exemption because it facilitates provision of a basic service (that is, telephone service) between a user of a digital interface and digital equipment and a user of a traditional analog interface.[25]  Therefore, Vonage service constitutes a "no net" protocol conversion pursuant to FCC precedent, and consequently is not an "information service" pursuant to the 1996 Act's statutory definition.[26]

---

[25] Vonage's conversion also apparently falls within the third category stated by the FCC "3) internet working conversions taking place solely within the carrier's network to facilitate provision of a basic network service that result in no net conversion to the end-user."  Non-Accounting Safeguards Order at ¶ 106.

[26] Vonage asserts (at 22) that the FCC found that an asynchronous-to-X.25 protocol conversion constituted a net protocol conversion and this conversion constituted an enhanced service. The FCC did not classify that conversion as an enhanced service, but, waived application of its structural separations rules for enhanced services on the grounds that, inter alia, it "involve[s] neither processing that creates, deletes or changes information itself, nor subscriber interaction with stored information."  In the Matter of Petitions for Waiver of Section 64.702 of the Commission's Rules (Computer II), Memorandum Opinion and Order, 100 F.C.C.2d 1057, 1098, ¶ 101(1985).

**IV. DEFERRAL TO THE FCC's PENDING RULEMAKING IS NOT A BASIS FOR AN INJUNCTION**

    A. **This Court Should Deny The Request For Injunction Prior To Any Deferral**

In a conference with the parties on June 24, 2004, the Court raised the question of whether this matter should be referred to the FCC for the exercise of its primary jurisdiction.[27] Deferral to the FCC may be appropriate with respect to the definitional issues discussed in POINT III. However, the Court should not enjoin the PSC pending such deferral because the case law makes it unlikely that the FCC will be able to preempt state action, and important state interests will languish while the FCC considers the issues before it.

The critical issue before the FCC (See Point III, supra,) is whether Vonage provides an information service or a

---

Vonage also asserts (at 23) that the FCC found AT&T's Interspan frame relay service to be an enhanced service under its rules in existence at the time. Plaintiff's Brief at 22-23. The portions of the FCC order cited in support of this assertion, however, indicate exactly the opposite – AT&T had argued for enhanced service classification, but the FCC instead found Interspan to be a basic service. See Independent Data Communications Manufacturers Association, Inc., Memorandum Opinion and Order, 10 F.C.C.R. 13717, 13722, ¶¶ 36, 40 (1995). Moreover, that Order, ¶ 16, noted that protocol conversion performed in conjunction with a telephone service was a telecommunication service.

[27] The Court observed that the FCC had made such a Motion to the Eight Cir. in the appeal from the Minnesota District Court decision in Vonage Holding Co. v. Minnesota Public Serv. Comm'n.

telecommunications service.  That debate over Vonage's status
under federal law has no implications for the grant of an
injunction, because even if the FCC determines that Vonage
provides an information service, New York would not be
preempted, as discussed above.  The question of whether an
injunction should be granted raises issues of likelihood of
success and irreparable harm that are within the purview of the
courts.

        An injunction pending FCC action would also mean that
important state interests will not be protected while the FCC
considers the complex issues before it, and its rules are then
subject to appellate review.  A final resolution could take
years and, as discussed above, New York State has important
interests in avoiding regulatory arbitrage, ensuring consumer
protection, and protecting public safety.  All these interests
could go unmet while the FCC considers the question of Vonage's
status under federal communications law.  The FCC's decision
might arguably be informative on the issue of access charges,
which goes to the possibility of arbitrage.  There are, however,
other issues that might be left unaddressed, particularly
consumer protection and the provisioning of emergency calling.
The FCC has not taken the lead in regulation of quality of
service and in consumer protections.  Finally, the FCC is not
responsible for implementation of emergency calling.

B.  In The Event The Court Does Decide to Grant an
Injunction Pending Deferral To The FCC, It Should
Allow the Commission To Continue To Exercise 911
Jurisdiction

If the Court does decide to enjoin the PSC and defer
this matter to the FCC, then it should leave intact the
Commission's power to require compliance with 911 requirements.
There is no basis for FCC preemption of such a requirement, and
allowing the PSC to continue evaluating how VoIP providers may
comply with 911 requirements is necessary to protect public
safety.

"States traditionally have had great latitude under
their police powers to legislate the protection of lives, limbs,
health, comfort and quiet of all persons." Medtronic, Inc. v.
Lora Lohr, 518 U.S. 470, 475 (1996).  Preemption analysis
"[s]tarts with the assumption of the historic police powers of
the state were not to be superseded by [federal law] unless that
was the clear and manifest purpose of Congress." Rice v. Santa
Fe Elevator Corp., 331 U.S. 218, 230 (1947), quoted in City of
Columbus v. Ours Garage and Wreckers Service, Inc., 536 U.S.
424, 432-33 (2002).

There is no clear and manifest purpose under the
Communications Act to preempt historic state power with respect
to public safety, particularly with respect to 911 requirements.
The Telecommunications Act requires 911 to be the universal

emergency telephone number, 47 U.S.C. § 251(e)(3), but that statute in no way evidences any congressional attempt to preempt the field of 911 regulation.  47 U.S.C.§ 615 encourages the FCC to support state efforts to establish 911 networks.  Had Congress intended to leave 911 authority to the FCC, it would have stated so explicitly.

Preemption of PSC regulation of 911 could have an adverse impact on the public health and safety because of the inability of VoIP providers to interact with a 911 system so that calls are properly delivered to emergency response personnel and the location of callers in emergency situations can be identified.  The PSC needs to decide how Vonage could provide 911 service in view of the claimed technical difficulties, and whether it should highlight its lack of comparable 911 service to any subscribers.  Morever, the ultimate long run solution is to have VoIP providers identify the location of their subscribers calling 911.  Allowing the PSC to retain jurisdiction gives it the power to encourage Vonage to strive for that goal.[28]  Not reaching a satisfactory solution would have deleterious effects on public safety, since VoIP subscribers may not be protected in the event of an emergency.

---

[28] Just allowing the PSC to obtain information from Vonage on these topics would be insufficient because the PSC cannot compel Vonage to act.  The Order encouraged Vonage to discuss its concerns with staff, but it instead chose litigation.

Allowing the PSC to retain jurisdiction, will in the long run, work to the advantage of the consuming public.

## CONCLUSION

For the reasons given in this Memorandum, the Motion for Preliminary and Permanent Injunction of Vonage Holding Corporation should be denied.  The Commission believes that deferral to the FCC would also be inappropriate at this juncture.

Respectfully submitted,

Dawn Jablonski Ryman
General Counsel
Public Service Commission
 of the State of New York
Three Empire State Plaza
Albany, New York 12223-1350

_____
Jonathan D. Feinberg
Senior Litigation Counsel
(JF 2416)
John C. Graham
Assistant Counsel
(518) 474-5597

Dated:     June 25, 2004
           Albany, New York

- 44 -