UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

VONAGE HOLDINGS CORPORATION,                    :

                      Plaintiff,    :

            -against-    :

THE NEW YORK STATE PUBLIC SERVICE               :
COMMISSION, and WILLIAM M. FLYNN,               :
LEONARD A. WEISS, THOMAS J. DUNLEAVY,  :
and NEAL N. GALVIN in their official capacities  :
as the Commissioners of the New York State      :
Public Service Commission and not as individuals,  :

                  Defendants.    :

----------------------------------------------------------------X

04 Civ. No. 4360

**DECLARATION OF
MICHAEL C. SLOAN
(JGK) (DFE) (ECF CASE)**

MICHAEL C. SLOAN, under penalty of perjury, hereby declares:

1.     I am a member of the Bar of the District of Columbia and have been admitted *pro hac vice* by this Court to serve as counsel in this proceeding. I am an associate with the law firm of Swidler Berlin Shereff Friedman, LLP, attorneys for Plaintiff Vonage Holdings Corp. ("Vonage"). I respectfully submit this declaration in support of Plaintiff's Reply Brief in Support of its Motion for Preliminary and Permanent Injunctive Relief.

2.     Attached hereto as Exhibit 1 is a true and correct copy of the Comments of the New York State Department of Public Service, *In re Vonage Holding Corporation Petition for Declaratory Ruling Concerning an Order of the Minnesota Public Utilities Commission*, FCC WC Docket No. 03-211 (filed Oct. 27, 2003).

3.     Attached hereto as Exhibit 2 is the Supplemental Declaration of John Rego, Vonage's Chief Financial Officer.

I declare under penalty of perjury that the foregoing is true and correct.

Executed:  June 28, 2004.
           New York, New York

_____
Michael C. Sloan

# STATE OF NEW YORK DEPARTMENT OF PUBLIC SERVICE

### THREE EMPIRE STATE PLAZA, ALBANY, NY 12223-1350

Internet Address: http://www.dps.state.ny.us

**PUBLIC SERVICE COMMISSION**

**WILLIAM M. FLYNN**
*Chairman*
**THOMAS J. DUNLEAVY**
**JAMES D. BENNETT**
**LEONARD A. WEISS**
**NEAL N. GALVIN**



**DAWN JABLONSKI RYMAN**
*General Counsel*

**JACLYN A. BRILLING**
*Acting Secretary*

October 27, 2003

Hon. Marlene H. Dortch
Secretary
Federal Communications Commission
The Portals II
445 12th Street, SW
Washington, D.C.  20554

       RE:   Comments of the New York State Department of Public
           Service in the Matter of Vonage Holding Corporation
           Petition for Declaratory Ruling Concerning an Order of
           the Minnesota Public Utilities Commission; WC Docket
           No. 03-211.

Dear Secretary Dortch:

    Enclosed please find the comments of the New York State
Department of Public Service in response to the Wireline
Competition Bureau's Public Notice issued on September 26, 2003
in the above-referenced proceeding.

    Should you have any questions concerning this filing,
please call me at (518) 474-7579.

                      Very truly yours,

                      Saul M. Abrams
                      Assistant Counsel

enc.

**BEFORE THE**

**FEDERAL COMMUNICATIONS COMMISSION**
**Washington, D.C.**

In the Matter of

| | |
|---|---|
| Vonage Holdings Corporation | ) |
| Petition for a Declaratory Ruling | ) WC Docket No. 03-211 |
| Concerning an Order of the Minnesota | ) |
| Public Utilities Commission | ) |

The New York State Department of Public Service (NYDPS) submits these comments in response to the Federal Communications Commission's (Commission) Wireline Competition Bureau Public Notice issued September 26, 2003. The Commission seeks comments on Vonage Holdings Corporation's (Vonage) petition for declaratory ruling. Vonage describes the service it offers as Voice Over Internet Protocol (VOIP) service that permits communications between users of broadband Internet connections and users of conventional telephone services. The Minnesota Public Utilities Commission (Minnesota Commission) required Vonage to comply with state laws governing providers of telephone service, even though Vonage averred that it is a provider of information services and not a telecommunications carrier or common carrier subject to Title II of the Communications Act of 1934 (the Act).[1] Vonage now seeks a Commission ruling preempting the Minnesota Commission's Order. Further, Vonage asks that the Commission find that certain specific E-911 requirements imposed by the Minnesota Commission are in conflict with federal policies.[2] Finally, Vonage states that preemption is

---

[1] Vonage Holdings Corp. Petition for Declaratory Ruling Concerning an Order of the Minnesota Public Utilities Commission, WC Docket No. 03-211 (filed September 22, 2003). On October 16, 2003, the Minnesota Commission's decision was permanently enjoined by the United States District Court, District of Minnesota.

[2] Id., pp. 24-27.

necessary because of the impossibility of separating the Internet, or any service offered over it, into intrastate and interstate components.[3]

In support of its request, Vonage contends that all of its customers must provide their own computer equipment and dedicated broadband connection to the Internet, and that Vonage performs a net protocol conversion that "bridges" the incompatible formats of the Internet and the public switch telephone network (PSTN).  Vonage concludes, under the Commission's Computer II decision and the two decades of precedent interpreting that decision, that it offers an information service and is not subject to common carrier regulation under Title II of the Act. Vonage contends that the Minnesota Commission seeks to impose common carrier regulation on the intrastate use of its service.  The company further avers that Internet communications applications in general were never designed to comply with the legal and technical requirements applicable to fixed switched telecommunications networks, including obligations, such as state 911 requirements, tariff rules, rate regulation, and other forms of regulation typically imposed on common carriers.

The Commission should not entertain Vonage's request for a declaratory ruling that its IP telephony services are "information services," not "telecommunications."  The larger issue of whether disparate regulatory treatment of different technologies is appropriate or sustainable in an increasingly competitive market should be addressed in a generic rulemaking.  Rather than dealing with questions of jurisdiction on an individual company and service basis, the Commission should initiate a generic proceeding to make a finding on the proper regulatory classification of calls made by means of VOIP technologies.  Should the Commission decide to

---

[3] Id., pp. 27-31.

address the merits of Vonage's petition, NYDPS asserts that the current record is insufficient to reach a determination as to whether Vonage is providing an information service.

The Commission has not definitively determined if any form of IP telephony is either telecommunications service or information service.[4]  In its 1998 <u>Universal Service Report</u> to Congress, the Commission observed that information service providers (ISPs) do not appear to be providing telecommunications when users of the ISP's services conduct "computer-to-computer" VOIP calls.[5]  In the same Report, however, the Commission opined that "phone-to-phone" VOIP telephony services appear to lack "the characteristics that would render them 'information services' within the meaning of the statute, and instead  are 'telecommunications services.'"[6]  The Commission deferred definitive resolution of these issues pending development of a fuller record.  The allegations contained in Vonage's petition for declaratory ruling are insufficient for determining whether its service meets the Act's definition of information service, particularly considering the specific exemption in the criteria for the use of the capabilities for the operation of a telecommunications service.

---

[4] The Commission has asserted jurisdiction over "enhanced" or "information services" and exempted such services from state regulation.  The Telecommunications Act of 1996 defines "information service" as:

> the offering of a capability for generating, acquiring, storing, transforming, processing, retrieving, utilizing, or making available information via telecommunications, and includes electronic publishing, but does not include any use of any such capability for the management, control, or operation of a telecommunications system or the management of a telecommunications service.
> (47 USC §153(20))

[5] <u>In the Matter of Federal-State Joint Board on Universal Service</u>, CC Docket No. 96-45 (Report to Congress), 13 FCC Rcd 11501, released April 10, 1998, ¶ 87 (<u>Universal Service Report</u>).

[6] <u>Id.</u> at ¶ 89.  Telecommunications services are subject to both state and federal regulation.

Since the release of the Universal Service Report, the Commission has received three petitions for declaratory rulings on the nature of particular services that make use of the Internet, or Internet technologies, including the instant petition.[7]  In addition to these Commission proceedings, the New York Public Service Commission has acted on a complaint concerning appropriate charges for "phone-to-phone" IP telephony calls[8] and is in receipt of a complaint against Vonage Holdings Corp. by Frontier Telephone of Rochester, Inc.[9]  The New York Public Service Commission issued a Notice Requesting Comments on October  9, 2003, in order to evaluate claims in the Frontier complaint that Vonage is providing telephone service in New York State without complying with the New York Public Service Law and Commission regulations.  The appropriate classification of VOIP service transcends the specific circumstances of Vonage's request.

## **CONCLUSION**

For the above reasons, NYDPS urges the Commission to reject Vonage's request for a declaratory ruling.  The larger issue of whether disparate regulatory treatment of different technologies is appropriate or sustainable in an increasing competitive market should be addressed in a broader proceeding.  The NYDPS recommends that, rather than dealing with

---

[7] In the Matter of Petition for Declaratory Ruling that AT&T's Phone-to-Phone IP Telephony Services are Exempt from Access Charges, WC Docket No. 02-361 (filed October 18, 2002) and Petition for Declaratory Ruling that pulver.com's Free World Dialup is neither Telecommunications nor a Telecommunications Service, WC Docket No. 03-45 (filed February 5, 2003).  NYDPS filed its comments in WC Docket No. 02-361 on December 18, 2002.

[8] Case 01-C-1119, Complaint of Frontier Telephone of Rochester Against US DataNet Corporation Concerning Alleged Refusal to Pay Intrastate Carrier Access Charges, Order Requiring Payment of Intrastate Carrier Access Charges (issued May 31, 2002).

questions of jurisdiction on an individual company and service basis, the Commission initiate a generic proceeding on the proper regulatory classification of VOIP.  In the alternative, the Commission should find that it has insufficient information to determine if Vonage's service meets the definition of "information service."

Respectfully submitted,


Dawn Jablonski Ryman
General Counsel
Public Service Commission
 of the State of New York
Three Empire State Plaza
Albany, New York   12223-1350
(518) 474-2510

Dated:  October 27, 2003

---

[9] Case 03-C-1285 - <u>Complaint of Frontier Telephone of Rochester, Inc. Against Vonage Holding Corp. Concerning Provision of Local Exchange and Inter-Exchange Telephone Service in New York State in Violation of the Public Service Law</u>, filed September 10, 2003.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------X

|  |  |  |
|---|---|---|
| VONAGE HOLDINGS CORPORATION, | : | 04 Civ. No. 4360 |
| Plaintiff, | : | |
| -against- | : | |
| THE NEW YORK STATE PUBLIC SERVICE COMMISSION, and WILLIAM M. FLYNN, LEONARD A. WEISS, THOMAS J. DUNLEAVY, and NEAL N. GALVIN in their official capacities as the Commissioners of the New York State Public Service Commission and not as individuals, | : | **SUPPLEMENTAL DECLARATION OF JOHN REGO** (JGK) (DFE) (ECF CASE) |
| Defendants. | : | |

----------------------------------------------------------X

1.   My name is John Rego.  I am over the age of 18 and competent to provide the testimony herein.  I am the same John Rego who executed a Declaration in support of Vonage's Motion for Preliminary and Permanent Injunctive Relief on June 7, 2004.  I submit this Supplemental Declaration to address: (1) Vonage's provision of emergency "911" calling services, and (2) expand on why it will be difficult and, in most cases, impossible, for Vonage to comply with the PSC's Order.

## 911 Calling

2.   To understand the 911 calling issues confronting Vonage and other VoIP providers, it is helpful to consider how traditional, land-line telephone 911 calling works.  At its most basic, 911 service involves routing calls to state or local governmental entities responsible for coordinating emergency response, known as Public Safety Answering Points ("PSAPs"), which dispatch emergency assistance to 911 callers.  A 911 call is automatically routed by telephone company switching equipment over dedicated phone lines (known as "trunks") to the

appropriate PSAP. Since PSTN telephone numbers are associated with fixed geographic addresses, each PSAP typically handles 911 calls from four or five telephone exchanges (sometimes more, sometimes less, depending on the boundaries of local municipalities and the areas covered by telephone exchanges) and the handling PSAP identifies the appropriate emergency responder (e.g., police department, fire department, ambulance service) that serves the calling party's location. The PSAPs pay monthly fees to the incumbent local exchange carriers for the operation of the dedicated trunks and the network equipment that routes 911 calls onto these trunks.

3.     Most PSAPs are now provided "enhanced" 911 ("E911") service for calls placed from traditional landline phones. E911 provides additional information to the PSAP operator: (a) Automatic Number Identification ("ANI"), which is similar to "Caller-ID" functionality, and (b) Automatic Location Identification ("ALI") to pinpoint a caller's geographic location. For landline calls, ALI information is typically determined by looking up the caller's phone number in an address/telephone number database. When a 911 call is made, this information is routed via dedicated trunks directly to the appropriate PSAP by dedicated switching equipment (called a 911 Tandem or Selective Router ("SR")).

4.     This system has been developed over several decades and works well for land-line phones, which are tethered to the end of fixed "local loops," which are themselves connected to centralized switching equipment operated by local telephone companies. Developing 911 and E911 calling for networks other than the traditional land-line network has proved difficult and time consuming because new technologies allow telephone numbers to be mobile, while the traditional 911 system assumes fixed geographic location.

5.    For example, the FCC's effort to phase in 911 calling capability for wireless calls did not begin until June 1994, and is still underway. The FCC has granted numerous extensions of time since the wireless E911 initiative began, and it is my understanding that most wireless networks will be E911 compatible by the end of 2005, but many will not.

6.    Prior to Vonage's entry onto the scene, there was no attention given to VoIP 911 calling at all, because VoIP was not a significant presence on the market. Vonage voluntarily initiated a 911 calling service a year and a half ago, and was the first VoIP provider of its kind to do so. Vonage is one of several leading VoIP providers that is a signatory to an agreement with the National Emergency Number Association ("NENA") on VoIP 911 implementation, and is actively involved in industry efforts to overcome the technological hurdles that currently prevent seamless compatibility between current 911 systems and internet services like Vonage's. Vonage is a signatory to NENA's Statement of Principles with respect to the development of VoIP 911. Vonage will stipulate to continue providing its 911 service as a condition of the injunctive relief it seeks.

7.    Vonage cannot provide E911 calling for many of the same reasons that wireless providers could not until just recently. First, because Vonage customers are connected to the Internet, not to the PSTN, the automatic, dedicated call routing functionality that routes PSTN 911 calls on dedicated trunks directly to the PSAP is not available to Vonage. Also, because of the mobile nature of its service, Vonage cannot determine the geographic location of its 911 callers unless those callers voluntarily provide that information. Further, as a consequence of its customers' use of virtual numbers, Vonage cannot merely arrange for a telecommunications company to send its customers' 911 calls to the Selective Router that services traditional 911 landline service because the Selective Router will assume that the customers' phone number is

associated with the customers' physical locations which may not be true. As a consequence, if sent to the Selective Router as it currently is configured, there is significant risk that a Vonage customer's call will go to the wrong PSAP.

8.    Vonage, nonetheless, has developed alternative means to offer its customers 911 calling capabilities. For this purpose, Vonage has engaged Intrado, a company with 25 years of experience providing 911 database services that map PSTN and wireless calls to the appropriate PSAP. With Vonage's service, however, 911 calls are not routed over dedicated circuits to the PSAP, but are instead routed over the PSTN by a Competitive Local Exchange Carrier to the appropriate PSAP's 10-digit phone number. Also, because calls made using Vonage's service are not routed over E911 dedicated trunks, and because Selective Routers, in any event, cannot yet identify the geographic locations of customers on the Internet, Vonage can not currently provide ALI or ANI to the PSAP operator. Vonage fully discloses these limitations to its customers, who may opt in to use of the 911 service and must supply a new address for each location to which they move if they wish to use the service. Until technology evolves to the point where precise locations can be determined from either an IP address or by using other technological means, the success of VoIP 911 service must depend on the willingness of customers to provide accurate and updated location information.

9.    Vonage repeatedly has been hailed as the industry leader in developing VoIP 911 solutions and is committed to the development of a VoIP E911 that is every bit as robust and feature-laden as that offered on the PSTN. Vonage is constantly working to improve the service, and is currently involved in trials in Minnesota, Florida, Rhode Island, Texas and Washington to create 911 solutions for VoIP service. In addition to its agreement with NENA on 911 implementation, Vonage is working directly with that organization and others to set standards for

a next generation IP enabled 911 system. Vonage's CEO has also testified before Congress and participated in two FCC "Solution Summits" regarding national solutions for VoIP 911.

10.     Notably, while criticizing Vonage for litigating its rights, the PSC failed to tell the Court that Vonage met with the PSC to describe its 911 service and that Vonage has advised the PSC that it always is willing to discuss possible improvements. Nor has the PSC inquired about conducting a trial in New York similar to those underway in other states.

**Other Obstacles Posed by the PSC's Order**

11.     New York law and the PSC's regulations impose numerous requirements with which Vonage cannot comply. This section of my declaration lists some of those requirements:

12.     <u>Presubscription.</u> The PSC's CPCN application requires the applicant to include an intraLATA presubscription plan that will allow its customers to choose different intraLATA long distance and interLATA long distance service providers. (Presubscription is the process whereby PSTN end-users select a default long-distance carrier that is accessible via 1+ dialing.) It is technically impossible for Vonage's service to allow customers to choose separate carriers for intraLATA toll (regional long distance) and interexchange (out-of-region long distance) calls through presubscription. Vonage's service is configured so that all 1+ dialed calls are routed through Vonage's Internet servers, and delivered to destinations on the PSTN by the telecommunications carriers to whose services Vonage subscribes. Customers that wish to subscribe to services offered by a separate interexchange carrier must do so either by accessing such carriers through dial-around or toll free calls, or by maintaining a separate wireline service. Vonage cannot stipulate that it provides intraLATA presubscription service as required by the CPCN application, because its service is not capable of such functionality.

13.  <u>Quality of Service Standards and Reporting Requirements</u>.  PSC regulations impose a host of service quality requirements on telephone companies that are inappropriate for Internet application firms.  Vonage's service is completely dependent upon the availability of third-party provided broadband Internet access.  As such, Vonage has no ability to control maintenance service, installations, or network performance associated with the PSC's quality of service standards.  *See* N.Y. COMP. CODES R. & REGS. tit. 16, § 603.3(a).

14.  Also, Vonage does not install local service lines, and cannot make any stipulations as to how many initial basic local exchange service lines are completed within five working days, as PSC regulations require.  *See id.* § 603.3(e).

15.  As Vonage has no telephone network, it cannot implement procedures regarding the construction, operation, and maintenance of its network, which are intended to minimize service failures such as cable cuts, sudden increases in traffic, and other incidents applicable to facilities-based operators.  *See id.* § 603.5(a).

16.  Should the PSC Order become effective, Vonage will be required to stipulate that it will comply with the portions of N.Y. COMP. CODES R. & REGS. tit. 16, Part 609 concerning the intrastate provision of service to residential customers.  This Part contains provisions concerning suspension of service (§ 609.4 and § 609.5), reconnection of service (§ 609.7), customer notification requirements (§ 609.13), complaint-handling procedures (§ 609.16), and other related provisions.  As already noted, Vonage's service cannot be separated into interstate and intrastate components.  Therefore, in order to comply with the PSC's Order and ensure that all New York residents receive service pursuant to Part 609, Vonage will be forced to implement New York's service standards nationwide.  This would impermissibly subject Vonage's

nationwide service standards to the jurisdiction of the PSC, and potentially subject Vonage to the conflicting service standards of multiple jurisdictions.

17.    Pursuant to N.Y. COMP. CODES R. & REGS. tit. 16, Part 641, telephone corporations in New York are required to file annual reports in form prescribed by the PSC. This annual reporting requirement covers information regarding the operation of the telephone corporation including accounting information, quality of service, and intrastate call summaries. Vonage's service, however, cannot be separated into interstate and intrastate components and there is no reasonable proxy by which Vonage can estimate interstate and intrastate components. Consequently, many PSC annual reporting requirements will be impossible for Vonage to complete. Specifically, the PSC requires telephone corporations to show the particulars of intrastate calls, information Vonage cannot provide given the mobile nature of its service.

Further declarant sayeth not.

I hereby affirm under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

John Rego

Dated: June 28, 2004
      New York, New York