UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
VONAGE HOLDINGS CORPORATION,

                  Plaintiff,

-against-

THE NEW YORK STATE PUBLIC SERVICE
COMMISSION, and WILLIAM M. FLYNN,
LEONARD A. WEISS, THOMAS J. DUNLEAVY,
and NEAL N. GALVIN in their official capacities
as the Commissioners of the New York State
Public Service Commission and not as individuals,

                  Defendants.
------------------------------------------------------------X

04 Civ. No. 4306 (DFE)
(ECF CASE)

**FIRST AMENDED**
**VERIFIED COMPLAINT**



Vonage Holdings Corporation ("Vonage" or "Plaintiff"), by its attorneys, hereby complains against defendants New York State Public Service Commission ("PSC") and the following Commissioners of the PSC (in their official capacities and not as individuals): William M. Flynn, Leonard A. Weiss, Thomas J. Dunleavy and Neal N. Galvin. In support of its Complaint, Plaintiff states the following:

## INTRODUCTION

1.     Vonage seeks declaratory and preliminary and permanent injunctive relief from the PSC's attempt to impose State telephone regulation on Vonage's Internet information service. The order at issue is styled as: Order Establishing Balanced Regulatory Framework for Vonage Holdings Corporation, *Complaint of Frontier Telephone of Rochester, Inc. Against Vonage Holdings Corporation Concerning Provision of Local Exchange and InterExchange Telephone Service in New York State in Violation of the Public Service Law*, Case No. 03-C-1285 (N.Y. PSC May 21, 2004) (referred to hereafter as "PSC Order" or "Order").

1

## THE PARTIES

2. Plaintiff Vonage is a New Jersey corporation with its principal place of business in Edison, New Jersey. Vonage has customers throughout the country, including customers in New York, to whom it provides services over the Internet.

3. Defendant PSC is an agency of the State of New York.

4. Defendant William M. Flynn is the PSC Chairman. Vonage sues Chairman Flynn in his official capacity for declaratory and injunctive relief.

5. Defendant Leonard A. Weiss is a PSC Commissioner. Vonage sues Commissioner Weiss in his official capacity for declaratory and injunctive relief.

6. Defendant Thomas J. Dunleavy is a PSC Commissioner. Vonage sues Commissioner Dunleavy in his official capacity for declaratory and injunctive relief.

7. Defendant Neal N. Galvin is a PSC Commissioner. Vonage sues Commissioner Galvin in his official capacity for declaratory and injunctive relief.

## FEDERAL JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

9. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and (b)(2) because the PSC has an office, and therefore resides, in this district and all branches and offices of the PSC reside in this State. Additionally, the PSC, and the individuals defendants in their official capacities as PSC Commissioners, regularly conduct PSC business and proceedings at the PSC offices in this district. Further, during the course of the PSC proceedings which led to the order challenged here, Vonage executives and legal representatives were asked by PSC staff to meet with them in the PSC's offices in this district and Vonage complied. Approximately 20 persons attended that meeting. Finally, the PSC's Order is premised in part on its erroneous conclusion

that Vonage's computer servers, routers and related equipment located in this district are "telephone lines" under New York's Public Service Law and are used to facilitate the provisioning by Vonage of telephonic communication to customers.

## BACKGROUND

### Vonage's Service

10. Vonage's DigitalVoice™ service is an innovative Internet offering that permits Vonage customers to communicate orally over the Internet. Unlike traditional telephone service, Vonage customers are not connected to the Public Switched Telephone Network ("PSTN") operated by local telephone companies.

11. Vonage customers can access Vonage's service only over high-speed Internet connections (also known as "broadband") provided by third-party cable modem, DSL, satellite, and other Internet Service Providers ("ISPs"). Vonage does not supply high-speed Internet connections.

12. Further, Vonage customers must install special computer software and/or equipment (not made by Vonage) that permits them to place and receive communications over these broadband connections. Customers can obtain the necessary software or computer equipment from third party vendors or, as an inducement to use its service, Vonage will supply compatible equipment to customers free of charge. When Vonage provides the equipment free of charge, it does not retain ownership of the equipment. Rather, the customer assumes responsibility for proper operation and maintenance of the equipment subject to a limited warranty that runs with the equipment.

13. Vonage customers use their computer hardware and software to convert their voice communications into Internet Protocol format and to send the resulting data packets over

their high-speed Internet connections. The data packets are routed over the public Internet to one of Vonage's Internet servers. These Internet data packets are indistinguishable from other Internet traffic, such as those carrying e-mail, chat, instant-messaging, or communications to-and-from servers on the World Wide Web.

14.    Vonage customers can communicate directly with other Vonage customers and with users of some other VoIP services on the Internet (in which case the communications never leave the Internet), or with plain old telephone service ("POTS") users on the PSTN. In the latter case, Vonage provides a translation service between the Internet and the PSTN, which transmit data in different and incompatible formats. Vonage converts data between the Internet Protocol format used by Vonage's customers to transmit communications over the Internet and the TDM format required for communications on the PSTN.

15.    Vonage contracts with third party telecommunications carriers to originate and terminate its customers' converted communications over the PSTN. By means of these carriers' services, users on the PSTN can dial ordinary 10-digit telephone numbers and "call" Vonage customers on the Internet. These ten-digit telephone numbers are assigned to Vonage as a customer of third party telecommunications carriers. Vonage associates these telephone numbers with the Internet IP address of the individual computer equipment of its various customers, rather than with a geographical address as is done by telephone companies. Vonage customers who reside in California, Florida or anywhere in the nation can have their computers associated with ten digit telephone numbers that begin with New York "area codes," just as New York residents can obtain telephone numbers that begin with "area codes" assigned to regions in Florida, Texas or elsewhere.

16. Because the equipment used to access Vonage's service is as portable as a lap-top computer, Vonage customers can use its service to communicate over the Internet from any location in the world where a broadband Internet connection is available to them. Because each Vonage customer's ten-digit telephone number is associated with his or her computer device and not to a physical address, Vonage cannot determine the geographic location of its customers when they access its Internet services. Thus, a Vonage customer whose computer has a telephone number that begins with "212" can communicate over a high-speed internet connection located in Detroit with a POTS user geographically located in Manhattan. Conversely, a Vonage customer whose computer is assigned a telephone number beginning with a Detroit "area code" can use a high-speed internet connection in Queens to communicate with a POTS user geographically located in Queens. Vonage's servers can only "see" its customers' IP addresses, and not the geographic addresses from which they are using the high-speed Internet connection.

17. Vonage's service is offered both on an unlimited use basis and in packages that describe a customer's usage of its service as "local," "regional" and "long distance" calls. These descriptions, however, do not carry the traditional meanings attached to them by telecommunications carriers and regulators. In traditional telephone service, calls are classified as "local," "regional," or "long distance" based on the geographic locations between which the call travels. Vonage's service, by contract, determines whether a communication is "local," "regional" or "long distance" solely based on the telephone numbers assigned to the called and calling parties, not their locations.

18. For instance, a Vonage customer who has requested a "212" or "646" Manhattan telephone number for her computer device may access the service over a high-speed Internet connection in Los Angeles. If this user then calls from Los Angeles to another "212" or "646"

telephone number belonging to a POTS user in Manhattan, the communication is considered a "local call" for billing purposes under certain Vonage service plans even though it would be a long distance, interstate communication under a traditional geographic end-to-end analysis.

## The PSC Proceedings

19.     The PSC proceeding described below arose from a Complaint that Frontier Telephone of Rochester, Inc. ("Frontier") filed against Vonage before the PSC on September 10, 2003.

20.     The complaint alleged that Vonage was providing intrastate "telephone" services in New York without the PSC's authorization, *i.e.*, in violation of the Public Service Law ("PSL"). Under New York's Administrative Procedure Act, because Frontier's complaint initiated an adjudicatory proceeding, Vonage was entitled to a hearing and to present evidence.

21.     On October 9, 2003 the PSC issued a *Notice Requesting Comments* (the "Notice"). Pursuant to the Notice, Vonage filed a Response and Motion to Dismiss the Frontier complaint on the basis that, *inter alia*, Vonage provides interstate information service over the Internet with respect to which state regulation is preempted and over which state regulation, if imposed, would impermissibly burden interstate commerce.

22.     On October 15, 2003, the PSC published a notice of proposed rulemaking in the NYS Register in which it described Frontier's complaint proceeding as "Definition of Telephone Service by Frontier Telephone of Rochester, Inc." The notice stated: "Because this complaint raises generic concerns that could affect a number of entities, a notice requesting comments on the complaint has been issued. The commission will evaluate the comments received and may make determinations concerning the applicability of the Public Service Law to various forms of service, including voice over internet protocol (VOIP)." Thereafter, commission staff invited

Vonage representatives to meet with them and advised Vonage that there need be no concerns about *ex parte* contacts because the complaint proceeding had been converted to a rulemaking proceeding. No hearing was ever scheduled.

23.  After receiving comments and reply comments, the PSC issued its Order on May 21, 2004, effective that same date. In the Order, the PSC did not adopt any generic rules or make generic determinations regarding various forms of service, but rather made Vonage the sole focus of its Order and made certain legal conclusions with respect to Vonage and its service, despite the facts that no hearing had been held and no evidence taken. The PSC concluded that by offering and providing its DigitalVoice™ service in New York, Vonage was a "telephone corporation" as defined in the PSL and therefore subject to state regulation. The PSC ordered Vonage to (a) obtain a Certificate of Public Convenience and Necessity ("CPCN"), and (b) file a tariff, both within 45 days of the Order (*i.e.*, by July 5, 2004). Within the Order, the PSC also permitted Vonage to seek waiver of specific rules and regulations.

**Regulatory Background**

24.  Heretofore, Internet services have been exempt from both state and federal common carrier regulation. Most observers, including the Federal Communications Commission ("FCC"), agree that this hands-off-the-Internet policy has been instrumental in the Internet's extraordinary growth. In the Telecommunications Act of 1996 ("1996 Act"), which amended the Communications Act of 1934 ("Communications Act"), 47 U.S.C. § 151 *et seq.*, Congress recognized that "[t]he rapidly developing array of Internet and other interactive computer services available to individual Americans represents an extraordinary advance in the availability of educational and informational resources available to our citizens." 47 U.S.C. § 230(a)(1). To "promote the continued development of the Internet," and "preserve the vibrant and competitive

free market that currently exists for the Internet," Congress announced the national "policy of the United States" that the Internet should remain "unfettered by Federal or State regulation." *Id.* at § 230(b)(1)-(2).

25. The FCC has classified Internet access and related services as "information services" under the 1996 Act. *See* 47 U.S.C. § 153(20). Even before Congress codified the national policy of exempting the Internet from state and federal regulation, the FCC deliberately chose to impose as few regulatory obligations on information services as possible. *See Second Computer Inquiry*, Final Decision ("*Computer II*"), 77 FCC 2d 384 (1980), ¶ 432 ("to subject enhanced services[1] to a common carrier scheme of regulation ... would negate the dynamics of ... this area"). For over 20 years, the FCC also has preempted State attempts to impose regulation that conflicts with the federal deregulatory scheme.

26. The 1996 Act, and the FCC's subsequent orders interpreting and applying the 1996 Act, confirmed the agency's long-standing policies, and the FCC has made it clear that conflicting state regulation is displaced by these federal policies.

27. Under controlling precedent, Vonage is an Internet Information Service Provider with respect to which State telephone regulation has been federally preempted. Late last year, on this basis, and on the same facts present before the New York PSC, the United States District Court for the District of Minnesota permanently enjoined the Minnesota Public Utility Commission from enforcing an order asserting jurisdiction over Vonage and requiring it to comply with state telephone regulations. *Vonage Holdings Corp. v. Minnesota Public Utilities Comm'n*, 290 F. Supp.2d 993 (D. Minn 2003), *appeal pending*, Docket No. 04-1434 (8th Cir.).

---

[1] Prior to the passage of the 1996 Act, "telecommunications services" and "information services" were called "basic" and "enhanced" services respectively. These terms are used interchangeably in this complaint.

28. The New York PSC's Order runs contrary to Congressional and FCC directives. The Order is preempted by the Communications Act and FCC rules, regulations and decisions and is invalid under the Supremacy Clause of the United States Constitution as well as under the Commerce Clause because it imposes an impermissible burden on interstate commerce.

## FIRST CLAIM FOR RELIEF
### [Violation of U.S. Constitution Article VI (Supremacy Clause)]

29. Vonage incorporates by reference the preceding paragraphs as though fully set forth herein.

30. The PSC's decision is contrary to federal communications law. The Communications Act, as interpreted and applied by the FCC, provides that Internet services such as Vonage's are interstate information services, and are exempt from state common carrier regulation of the type the PSC seeks to impose. Because the FCC has explicitly preempted State regulation of information services, and because the PSC's Order conflicts with the federal deregulatory scheme, it must give way to the supremacy of federal law.

31. Even if Vonage's service could be characterized as a telecommunications service, it is clearly an interstate service, over which the PSC has no regulatory jurisdiction. Federal law preempts State regulation of interstate services, whether they are classified as telecommunications services or information services. Due to the nature of Internet access, it is impossible to regulate separately any "intrastate component" of Vonage's service.

## SECOND CLAIM FOR RELIEF
### [Violation of U.S. Constitution Article I, § 8, cl. 3 (Commerce Clause)]

32. Vonage incorporates by reference the preceding paragraphs as though fully set forth herein.

33. The PSC's Order exceeds the authority of the State of New York to burden interstate commerce. Although the PSC's Order purports to regulate commerce in the State of New York only, the Order in fact has an "extraterritorial reach" that has the practical effect of controlling Vonage's conduct beyond the boundaries of New York.

34. Moreover, the burden the Order imposes upon interstate commerce clearly exceeds any putative local benefits. While Vonage can solicit customers and provide its services in the 49 other states – indeed, to any one in the world with access to a high-speed Internet connection – the Order effectively precludes it from serving customers in New York because it cannot comply with state telephone regulations which focus on services that are geographically based and geographically segregable on an intrastate basis.

35. Vonage's service is not susceptible to geographic categorizations given its inherent use of the Internet, which knows no geographic boundaries. As a consequence, Vonage is not able to discern the physical locations of its customers when its service is accessed, since the "telephone numbers" associated with customers' computers bear no relation to their physical location. Therefore, any state regulation of "intrastate" Vonage service would necessarily affect interstate commerce, due to the impossibility of isolating the intrastate calls. In exchange for this burden on interstate commerce, the Order offers no tangible benefits to New York consumers, who are denied access to Vonage's high-quality, low-cost, innovative services.

### REQUEST FOR RELIEF

36. Vonage incorporates by reference the preceding paragraphs as though fully set forth herein.

37. For the reasons discussed above, the PSC's Order is contrary to federal communications law and impermissibly burdens interstate commerce.

WHEREFORE, Plaintiff Vonage prays that the Court enter an order:

1. Declaring that the PSC's Order is unlawful because preempted by federal law and because it imposes an unreasonable burden on interstate commerce;

2. Permanently enjoining all the Defendants, and all the parties acting in concert therewith, from seeking to enforce that unlawful decision against Vonage; and

3. Granting Vonage such further relief as the Court may deem just and reasonable.

Respectfully submitted,

SWIDLER BERLIN SHEREFF FRIEDMAN, L.L.P.

By: _____
Kyle E. Kirby (admitted *pro hac vice*)
William B. Wilhelm
Michael C. Sloan (admitted *pro hac vice*)
Yun G. Lee (YL 5067)
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 973-0111

*Counsel for Vonage Holdings Corporation*

Dated: July 6, 2004
New York, New York

11

## VERIFICATION

I, John Rego, am an adult over the age of eighteen years and state as follows:

1. I am the Chief Financial Officer of Vonage Holdings Corporation, Plaintiff in this action.
2. I have read the Verified Complaint and state that all facts contained therein are true of my own personal knowledge, except as to those facts that are alleged on information and belief, and as to those facts, I believe them to be true to the best of my knowledge, information and belief.
3. I do solemnly affirm under the penalty of perjury and upon personal knowledge that the contents of the foregoing are true and correct and that I am competent to testify thereto. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
John Rego

Dated: New York, New York
       July 6, 2004