UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

VONAGE HOLDINGS CORPORATION,   :
  :    04 Civ. 4306 (DFE) (ECF CASE)
          Plaintiff,   :
  :
      -against-   :
  :
THE NEW YORK STATE PUBLIC SERVICE   :
COMMISSION, and WILLIAM M. FLYNN,   :
LEONARD A. WEISS, THOMAS J. DUNLEAVY, :
and NEAL N. GALVIN in their official capacities   :
as the Commissioners of the New York State   :
Public Service Commission and not as individuals,   :
  :
       Defendants.   :

-----------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF VONAGE HOLDINGS CORPORATION'S MOTION FOR PERMANENT INJUNCTIVE RELIEF

SWIDLER BERLIN SHEREFF FRIEDMAN, LLP
Ky E. Kirby
William B. Wilhelm
Michael C. Sloan
Christopher J. Carney
3000 K Street, N.W.
Washington, D.C. 20007
(202) 424-7500
Counsel for Vonage Holdings Corporation

Dated: December 20, 2004
      Washington, D.C.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

I.   BACKGROUND ...................................................................................................... 1

   A.  Vonage's Service .............................................................................................. 2

   B.  The New York PSC Order ................................................................................ 3

   C.  The Preliminary Injunction ............................................................................. 4

   D.  The FCC's Issuance of a Declaratory Ruling Preempting State Regulation of
       Vonage's DigitalVoice™ ................................................................................. 5

II.  ARGUMENT ............................................................................................................ 6

   A.  Standard for a Permanent Injunction.............................................................. 6

   B.  The FCC Has Determined That State Telephone Regulation of Vonage's  Service
       is Preempted ..................................................................................................... 8

      1.  Vonage's DigitalVoice Service Can Not Be Segregated Into Interstate     and
         Intrastate Service ..................................................................................... 8

      2.  State Regulation Conflicts With Federal Law, Rules, and Policies........................... 10

      3.  State Regulation of DigitalVoice Is An Impermissible Burden On Interstate
         Commerce ................................................................................................ 11

   C.  The New York Public Service Commission Order Contravenes the     FCC Ruling
       And Should Be Enjoined ................................................................................. 13

   D.  Vonage Will Continue To Provide The Same 911 Service And To Work With
       The New York PSC To Perform E911 Trials ................................................. 16

   CONCLUSION ................................................................................................................ 17

# TABLE OF AUTHORITIES

**Cases**

*FCC v. ITT World Communications*, 466 U.S. 463 (1984) ........................................................ 6

*Gucci America Inc. v. Duty Free Apparel, Ltd.*, 286 F.Supp.2d 284 (S.D.N.Y. 2003) ................. 6

*In re FCC*,  217 F.3d 125 (2nd Cir. 2000) ..................................................................................... 7

*Socialist Workers Party v. Illinois State Bd. of Elections*, 566 F.2d 586 (7th Cir. 1977 ................. 2

*United States ex rel. Goldman v. Meredith*, 596 F.2d 1353 (8th Cir. 1979).................................... 2

*United States v. McGee*, 714 F.2d 607 (6th Cir. 1983).................................................................... 2

*Vonage Holdings Corp. v. Minnesota Pub. Utils. Comm'n*, 290 F.Supp.2d 993 (D. Minn. 2003) 2

*Vonage Holdings Corp. v. New York Public Service Commission, 04-Civ-4306 (DFE),
    Preliminary Injunction Order* (July 16, 2004 ................................................................. *passim*

**Statutes**

28 U.S.C. § 2342(1) ...................................................................................................................... 7

**Miscellaneous**

94-C-0095 Order ............................................................................................................................ 15

*In the Matter of Vonage Holdings Corporation Petition for Declaratory Ruling Concerning an
    Order of the Minnesota Public Utilities Commission*, WC Docket No. 03-211, FCC 04-267
    (FCC Nov. 12, 2004) ....................................................................................................... *passim*

Order Establishing Balanced Regulatory Framework for Vonage Holdings Corporation,
    *Complaint of Frontier Telephone of Rochester, Inc. Against Vonage Holdings Corporation
    Concerning Provision of Local Exchange and InterExchange Telephone Service in New York
    State in Violation of the Public Service Law*, Case No. 03-C-1285 (N.Y. PSC May 21, 2004)
    ...................................................................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 60(b)(5)………………………………………………………………………...7
Fed. R. Civ. P. 65(a)(2)................................................................................................................ 2

**Regulations**

16 NYCCR, Part 603 ................................................................................................ 15

16 NYCCR, Part 609 ................................................................................................ 15

Plaintiff Vonage Holdings Corporation ("Vonage") respectfully submits this memorandum of law in support of its motion for permanent injunctive relief against enforcement of an order of the New York Public Service Commission ("PSC") that seeks to impose state telephone regulatory requirements on Vonage.[1]  As no facts are, or ever have been, in dispute, the Court may decide this motion as a matter of law.  The FCC recently has declared that state telephone regulation of Vonage's unique Internet-based service is preempted by federal law given (1) the service's inseverable interstate and intrastate components; (2) the conflict between state regulation of this variety and important federal policies, rules and objectives; and (3) the impermissible burden such regulation imposes on interstate commerce in violation of the Commerce Clause.  On the basis of the FCC's declaratory ruling, in addition to those grounds previously briefed in connection with Vonage's motion for a preliminary injunction, Vonage respectfully submits that the PSC's Order now should be permanently enjoined.

## I.     BACKGROUND

As the Court is already familiar with the background in this case from previous briefing, Vonage only provides a brief summary below, and an update concerning recent developments. The support for the background facts discussed here is found in Vonage's memoranda and supporting declarations filed in conjunction with Vonage's initial motion for injunctive relief

---

[1] Order Establishing Balanced Regulatory Framework for Vonage Holdings Corporation, *Complaint of Frontier Telephone of Rochester, Inc. Against Vonage Holdings Corporation Concerning Provision of Local Exchange and InterExchange Telephone Service in New York State in Violation of the Public Service Law*, Case No. 03-C-1285 (N.Y. PSC May 21, 2004) at 2-3 ("PSC Order" or "Order")(attached as Exhibit 1 to the Declaration of Christopher J. Carney)("Carney Decl.").  For the Court's ease of reference, a copy of the New York PSC's Order is attached as Exhibit 1 to the accompanying Declaration of Christopher J. Carney, and the FCC Declaratory Ruling is attached as Exhibit 2.

upon which this Court issued a preliminary injunction.  *See Vonage Holdings Corp. v. New York Public Service Commission, 04-Civ-4306 (DFE), Preliminary Injunction Order* at 1-2 (July 16, 2004 ("*Preliminary Injunction Order*"); *see also* Fed. R. Civ. P. 65(a)(2)("any evidence received upon an  application for a preliminary injunction which would be admissible upon the trial on the merits becomes part of the record on the trial and need not be repeated upon the trial.").  Here, given that the parties' dispute is legal, as opposed to factual, in nature, the prior record evidence can be used to decide this motion as a matter of law.[2]

### A.    Vonage's Service

Vonage provides a service that enables its customers to use their high-speed Internet connections to conduct oral communications that in some respects resemble ordinary telephone "calls."  However, unlike traditional telephone service users, Vonage customers do not use telephones connected to the Public Switched Telephone Network ("PSTN") operated by local telephone companies, such as Verizon, the incumbent local exchange carrier ("LEC") in most of New York.  Rather, Vonage customers access the service via high speed connections to the Internet supplied by third-party broadband Internet Service Providers ("ISPs"), such as the service provided by cable modem and DSL providers. Thus, Vonage, itself, does not provide Internet access service, but its customers rely on the Internet access provided by other

---

[2]    A trial on the merits is not necessary before granting a permanent injunction when the decision can be resolved as a matter of law.  *See Socialist Workers Party v. Illinois State Bd. of Elections*, 566 F.2d 586, 587 (7th Cir. 1977), *aff'd on other grounds*, 440 U.S. 173 (U.S. 1979) (no purpose served in holding an evidentiary hearing where no factual dispute as to the ground on which the injunction ordered); *accord United States v. McGee*, 714 F.2d 607, 613 (6th Cir. 1983); *United States ex rel. Goldman v. Meredith*, 596 F.2d 1353, 1358 (8th Cir. 1979) ("disposition on the merits may be appropriate whenever the evidence presented at the preliminary hearing indicates that there is no conflict of material fact that would justify holding the full trial on the merits"); *see also Vonage Holdings Corp. v. Minnesota Pub. Utils. Comm'n*, 290 F.Supp.2d 993, 996 (D. Minn. 2003) (treating Vonage's preliminary injunction motion as one for a permanent injunction where the parties only disagreed as to matters of law).

companies, thereby enabling Vonage to provide this Internet Protocol ("IP") enabled service. Because Vonage customers access the service over the Internet and may do so from any location where a broadband connection is available, Vonage cannot determine its customers' actual physical locations when they use its service. *See also* Memorandum Opinion and Order, *In the Matter of Vonage Holdings Corporation Petition for Declaratory Ruling Concerning an Order of the Minnesota Public Utilities Commission*, WC Docket No. 03-211, FCC 04-267, ¶¶ 4-9 (FCC Nov. 12, 2004) ("*FCC Declaratory Ruling*") (providing a detailed description of Vonage's DigitalVoice Service)(attached as Exhibit 2 to the Carney Decl.).

> **B.     The New York PSC Order**

In its Order, the New York PSC concluded that Vonage is a "telephone corporation" as defined in the Public Service Law and therefore subject to state regulation. *PSC Order* at 10. The New York PSC also concluded that the FCC had not preempted state regulation of services like Vonage's, and that the interstate and intrastate aspects of Vonage's service were not so inseparable as to preclude State regulation of the intrastate aspects of Vonage's service. *PSC Order* at 14. Consequently, the *PSC Order* required Vonage to "file an application for a Certificate of Public Convenience and Necessity and file a tariff," and to "comply with the Public Service Law obligations of telephone corporations" unless Vonage requested and was granted waivers of specific rules and regulations. *PSC Order* at 18.

In the application that the PSC ordered Vonage to file, Vonage would be required to obligate itself to emergency service standards, quality of service standards, rules concerning the provision, termination and suspension of service, annual report filings, and other regulatory requirements with which compliance would be impossible given the inability of Vonage to distinguish between intrastate and interstate phone calls. *See* Application Form A for

3

Certification as a Common Carrier (attached as Exhibit 3 to the Carney Decl.). The application also would require that Vonage submit a plan describing how it will provide access to public safety/emergency telephone services, *i.e.* 911 services. *See id.* at ¶ 9. Given Vonage's inability to determine the physical location from which a call is placed, Vonage is unable to offer access to emergency services in a manner like local exchange carriers, and instead relies on its customers registering their location on the company's website before they can use "911 dialing," and routes those calls to the public service answering point ("PSAP") serving the customer's specified physical location.

## C.    The Preliminary Injunction

On July 16, 2004 this Court entered a Preliminary Injunction Order ("*Preliminary Injunction Order*") enjoining enforcement of the PSC's Order. In issuing its order the Court found that Vonage had shown that it was likely to succeed on the merits—specifically that it was likely to show that the PSC Order is preempted by federal law. *Preliminary Injunction Order* at 2. Particularly, the Court based its finding on a ruling by the District Court in Minnesota in a nearly-identical matter involving Vonage, a subsequent FCC order discussing IP telephony and an FCC rulemaking notice relating to IP services in general. *Id.* (*citing Vonage Holdings Corp. v. Minnesota Public Utils. Com'n*, 290 F.Supp.2d 993 (D. Minn. Oct. 16, 2003)), *post-judgment motions denied*, 2004 WL 114983 (D. Minn. Jan. 14, 2004), *appeal pending*, Docket No. 04-1434 (8th Cir.); *In the Matter of Petition for Declaratory Ruling that Pulver.com's Free World Dialup is Neither Telecommunications Nor a Telecommunications Service*. 19 F.C.C.R. 3307 (Feb. 19, 2004); *In the Matter of IP-Enabled Services*, WC Docket No. 04-36, 2004 WL 439260 (rel. March 10, 2004)). The Court also found: that the PSC Order will interfere with interstate commerce; that Vonage had demonstrated it will suffer irreparable harm in the absence of

injunctive relief; and that the PSC had not demonstrated state public interests sufficient to overcome Vonage's showing of likely success on the merits and irreparable harm.  *Id*.

    **D.    The FCC's Issuance of a Declaratory Ruling Preempting State Regulation of Vonage's DigitalVoice™**

On November 12, 2004 the FCC released its unanimous ruling preempting an order of the Minnesota Public Utilities Commission that had applied "its traditional 'telephone company' regulations to Vonage's DigitalVoice Service."  *FCC Declaratory Ruling* at ¶ 11.  The FCC concluded "that DigitalVoice cannot be separated into interstate and intrastate communications for compliance with Minnesota's requirements without negating valid federal policies and rules." *Id*.  It therefore preempted the Minnesota Order in its entirety—including the 911 requirements imposed as a condition to entry.  *Id* at ¶ 14.  The FCC reached this conclusion because the characteristics of Vonage's service preclude any practical identification of, and separation into, distinct intrastate and interstate components to enable dual federal/state regulation.  *Id*.  It determined, therefore, that to allow state regulation would frustrate federal law and policy.  *Id*. The FCC found that this result was necessary regardless  of how Vonage's DigitalVoice service is classified under the Communications Act—be it a telecommunications or information service. *Id*.   The FCC noted that in issuing its declaration, it meant to:

> add to the regulatory certainty we began building with other orders this year regarding VoIP…by making clear that this Commission, not the state commissions, has the responsibility and obligation to decide whether certain regulations apply to DigitalVoice and other IP-enabled services having the same capabilities.  **For such services, comparable regulations of other states must likewise yield to important federal objectives**.

*Id*. (emphasis added)

The Minnesota PUC's Order, much like the New York PSC's Order, spoke in broad general terms, and required "that Vonage comply with Minnesota Statutes and Rules, including

certification requirements and the provisioning of 911 service." *Id*. at ¶ 11 n.30 (quoting the Minnesota PUC order and noting that aside from a few specific regulations the order did not enumerate the statutes and regulations to which Vonage would be bound). The FCC specifically ruled that, those regulations applicable to certificated entities would not apply to Vonage for its DigitalVoice service. *Id*. Under the rationale advanced by the FCC in its Declaratory Ruling, a permanent injunction of the PSC Order is warranted here.

## II.    ARGUMENT

### A.    Standard for a Permanent Injunction

To be entitled to a permanent injunction, a party must demonstrate (1) actual success on the merits and (2) irreparable harm. *Gucci America Inc. v. Duty Free Apparel, Ltd.*, 286 F.Supp.2d 284, 290 (S.D.N.Y. 2003). This Court in granting a preliminary injunction already made a determination that Vonage will face irreparable harm in the absence of injunctive relief against enforcement of the PSC Order, *Preliminary Injunction Order* at 2, and the same circumstances that would cause irreparable harm then continue to exist today. Additionally, the Court found that Vonage was likely to succeed on the merits respecting its claim that the PSC Order was preempted by federal law, particularly as recent FCC orders dealing with similar issues intimated that the FCC would find preemption with respect to Vonage's petition. *Id*. In light of the *FCC Declaratory Ruling*, a finding of actual success on the merits is warranted at this time.

While there is no dispute that the *FCC Declaratory Ruling* may not be challenged in this proceeding,[3] there is also no doubt that this Court has the power to interpret that Ruling. Given

---

[3] As the United States Supreme Court held in *FCC v. ITT World Communications*, 466 U.S. 463 (1984), collateral attacks against FCC orders are not permitted. Rather, the exclusive method for obtaining judicial review of an FCC order is by a direct petition for review pursuant (continued)

the *FCC Declaratory Ruling*'s finding that state regulation of Vonage's DigitalVoice as a telecommunications service is indeed preempted by federal law, that interpretation, Vonage respectfully submits, can lead to but one conclusion: regulation of the type set forth in the PSC Order is preempted under federal law.  As there are no material disputed facts altering such a conclusion, Vonage submts that success on the merits has been established as a matter of law, and a permanent injunction may properly be entered.

Notwithstanding the FCC's mandate, the PSC has suggested that this Court adopt a wait-and-see approach and simply maintain the preliminary injunction pending any possible appeal of the FCC's decision or subsequent adoption by the FCC of new rules in the *IP Enabled Services* Rulemaking Proceeding.  This is not merited.  The FCC ruling has the force of law today. Suggesting that it not be followed as the controlling legally authority is much like suggesting that a court order should not be obeyed unless and until it has been affirmed or suggesting that current rules or regulations should be ignored because an agency is considering amending them. In this case, should the law as it exists today change at some point in the future, the New York PSC would be free to seek relief from the permanent injunction pursuant to Rule 60(b)(5).  Until then Vonage should be afforded the protection from unlawful state regulation that a permanent injunction will provide.

---

to the Hobbs Act, 28 U.S.C. § 2342(1).  *See also In re FCC*,  217 F.3d 125, 139 (2nd Cir. 2000) (noting that the exclusivity of federal court of appeals jurisdiction over FCC regulatory action extends to collateral attacks as well because  "a defensive attack on [an FCC decision] is as much an evasion of the exclusive jurisdiction of the Court of Appeals as is a preemptive strike by seeking an injunction" ) (*quoting United States v. Any & all Radio Station Transmission Equip.*, 207 F.3d 458, 463 (8th Cir.2000)).

**B.**    **The FCC Has Determined That State Telephone Regulation of Vonage's Service is Preempted**

    **1.**    **Vonage's DigitalVoice Service Can Not Be Segregated Into Interstate and Intrastate Service**

The *FCC Declaratory Ruling* offers a thorough, well reasoned analysis as to why state regulation of Vonage's DigitalVoice service is preempted by federal law.  In the ruling, the FCC begins by explaining the plenary nature of its jurisdiction over all interstate and foreign communications, as conferred by Congress pursuant to the Communications Act.  *FCC Declaratory Ruling* at ¶ 16.  Services that feature both intrastate and interstate components— referred to as "mixed use" or "jurisdictionally mixed" services—are generally subject to dual federal/state regulation for the respective components.  *Id*. at ¶ 17.  But, a body of law has developed with respect to those jurisdictionally mixed services where it is either impossible or impractical to separate the intrastate and interstate components.  *Id*.  In such circumstances, as the Supreme Court has recognized, the FCC has the right  to exercise its preemptive powers to preclude inconsistent state regulation that interferes with valid federal rules or policies.  *Id*. (*citing Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 368 (1986)).  In those case, the FCC will treat the jurisdictionally mixed services as interstate and thereby unreachable by state regulation.  *Id.*

The FCC applied this doctrine to Vonage and found that regardless of whether DigitalVoice service is definitionally classified as a telecommunications service or an information service, state entry and certification requirements, which impose onerous application, reporting, and tariff requirements, are entirely inconsistent with FCC policy respecting the interstate provision of non-dominant services such as Vonage's.  *Id*. at ¶¶ 20-22. Consequently, unless it were possible to separate out the interstate and intrastate components of

Vonage's service, this state regulation impermissibly encroaches on the FCC's exclusive jurisdiction. *Id*. at ¶ 22.

For that reason, the FCC examined the feasibility of distinguishing between such components in Vonage's service. It found none. *Id*. at ¶ 23. It observed that Vonage has no readily available means for tracking the geographic location of its customers and that, even if it could, this would not indicate jurisdiction given the complexity of the service. *Id.* Moreover, were Vonage required to develop such a system, the operational advantages it enjoys by using the Internet to provide its unique service would be substantially decreased, and it would potentially be inhibited from providing DigitalVoice to consumers. *Id.* This is especially so where there would be absolutely no legitimate service-driven reason to employ such a mechanism, which would be purely a creation of a regulatory obligation. *Id.* at ¶ 25. And the fact that the communications involved are rooted in the Internet makes analyzing it under a traditional end-to-end analysis nearly impossible. Id at ¶ 24. Indeed, as the FCC observed, it is the "total lack of dependence on *any* geographically defined location that most distinguishes DigitalVoice from other services whose federal or state jurisdiction is determined based on the geographic end points of the communications." *Id*. at ¶ 25.

Nor did the FCC find adequate proxies, in the absence of direct means to identify calls that originate and terminate solely within a state's borders, for determining a DigitalVoice call's jurisdiction. *See id.* at ¶¶ 26-29. Because of the portability of Vonage's service, and the ability of subscribers to obtain telephone numbers that have no association with their actual geographic location, any system that uses the area code and exchange (the "NPA/NXX") or the customer's billing address as a proxy for determining jurisdiction, would undoubtedly subject interstate calls to intrastate regulation, thereby contravening federal law. *Id*.

Finally, with respect to this issue, the FCC noted that even if Vonage wanted to avoid providing intrastate service in a given state, because of the limitations described above in pinpointing the location of its customers, and the portability of its service, it could not do so. *Id.* at ¶ 30. There is no way that Vonage could prevent a customer from placing a call to or receiving a call from another individual in New York. *Id.* In fact, the FCC concluded: "due to the inherent ubiquity of the Internet, *nothing short of Vonage ceasing to offer its service entirely* could guarantee that any subscriber would not engage in some communications where a state may deem that communication to be 'intrastate' thereby subjecting Vonage to its economic regulations absent preemption." *Id.* (emphasis in original).

Because of these findings regarding the infeasibility of distinguishing between intrastate and interstate components of Vonage's DigitalVoice service, and the conflict between the state's order and federal rules and policies governing the interstate aspect of the service, the FCC preempted state regulation of DigitalVoice. *Id.* at ¶ 31.

### 2. State Regulation Conflicts With Federal Law, Rules, and Policies

As the FCC found, state regulation of Vonage's DigitalVoice service is antithetical to Congress's goals relating to both Internet services generally, and VoIP services particularly. *Id.* at ¶¶ 33-37. With respect to the Internet, the FCC noted the clear intention by Congress to allow the Internet and related computer services—which undoubtedly encompass services such as Vonage's—to thrive in a competitive free market, unhindered by state and federal regulation. *Id.* at ¶ 34 (*citing* 47 U.S.C. § 230(b)(2)). This, the FCC had determined in prior proceedings, was best accomplished by a single national policy, as opposed to state-by-state regulation. *Id.* at ¶ 35.

Similarly, the FCC found that state regulation of the type involved would thwart Congress's mandate that the FCC encourage the deployment of advanced telecommunications

services like Vonage's by promoting competition and removing barriers to entry. *Id.* at ¶ 36 (*citing* 47 U.S.C. § 157 nt.). Because services such as Vonage's are only accessed through broadband Internet connections, by supporting the development of these types of services, consumer demand is increased, thereby encouraging investment and deployment in the broadband arena consistent with Congress's goals. *Id.* Contrarily, imposing multiple disparate state regulations on these types of services would only have a stifling effect on such development and would work directly against Congress's mandates. *Id.* at ¶ 37.

### 3. State Regulation of DigitalVoice Is An Impermissible Burden On Interstate Commerce

The FCC agreed with this Court's preliminary conclusion—relying on it as persuasive authority--that state regulation will interfere with interstate commerce. *Id.* at ¶ 40 & n. 140 (citing *Preliminary Injunction Order* at 2). The FCC noted three different ways in which state regulation of Vonage's service would violate the "dormant" Commerce Clause, which prohibits States from burdening interstate commerce. *Id.* at ¶ 38 (*citing Oregon Waste Sys. v. Department of Envtl. Quality*, 511 U.S. 93, 98 (1994)). First, a state regulation that has the practical effect of controlling conduct beyond the state's borders violates the Commerce Clause. *Id.* (*citing Healy v. Beer Inst., Inc.*, 491 U.S. 324, 332 (1989)). Given the impracticality of determining where Vonage's users are located, the company would be forced to comply with each individual state's regulations, even for calls having no connection with the state, in order to ensure compliance. This would mean that the state regulations would have the practical effect of regulating commerce "wholly outside the state's borders." *Id* at ¶ 39 (*quoting Healy*, 491 U.S. at 332)). In essence, the state with the strictest regulations would dictate policy affecting all the other states. Such a situation would be a blatant violation of the Commerce Clause. *Id.*

Second, a state regulation violates the Commerce clause if it imposes burdens on interstate commerce that are "clearly excessive in relation to the putative local benefits." *Id*. at ¶ 38 (*citing Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)).  Here the FCC found that any putative local benefit created by a state regulatory scheme akin to Minnesota's would be substantially outweighed by the burden imposed on interstate commerce. *Id*.  at ¶ 40.  While the burdens on interstate commerce are significant, the sheer effort involved in determining whether a purely intrastate component even existed for a given jurisdiction would not be worth any slight benefit from such an impractical undertaking.  In fact, the FCC concluded, imposing the burden of state economic regulation on Vonage would serve "no useful purpose."  *Id.*

Third, the FCC recognized that courts have held that "state regulation of those aspects of commerce that by their unique nature demand cohesive national treatment is offensive to the Commerce Clause."  *Id*. at ¶ 38 (*quoting American Libraries Ass'n v. Pataki*, 969 F.Supp. 160, 169 (S.D.N.Y. 1997)(*citing Wabash, St. Louis & Pac. Ry. Co. v. Illinois*, 118 U.S. 557 (1886)).  The FCC found DigitalVoice to likely be the type of commerce that is so unique in nature it requires a cohesive national treatment.  *Id*. at ¶ 41.  Therefore, it concluded, inconsistent regulation by more than 50 jurisdictions, each with their own regulatory schemes, would likely violate the Commerce Clause.

C.    **The New York Public Service Commission Order Contravenes the FCC Ruling And Should Be Enjoined**

While the *FCC Declaratory Ruling* dealt specifically with the Minnesota PUC's Order, the FCC left no doubt that regulation by other states and jurisdictions is preempted as well. This was made apparent in the first paragraph of the FCC's order which held that the FCC and "not the state commissions" has the responsibility for determining the regulations that apply to DigitalVoice, and that "comparable regulations of other states must likewise yield to important federal objectives". *Id.* at ¶ 1. In ordering preemption over Vonage's service, the FCC also admonished that it would not "permit more than 50 different jurisdictions to impose traditional common carrier economic regulations such as Minnesota's." *Id.* at ¶ 35. And it found, that "allowing Minnesota's order to stand would invite similar imposition of 50 or more additional sets of different economic regulations on DigitalVoice, which could severely inhibit the development of this and similar VoIP services." *Id.* at ¶ 37. Subjecting Vonage's service to state regulation would require the company to satisfy the different requirements of more than 50 different jurisdictions simultaneously, making it unique among Internet services which are normally free from state regulation. *Id.* at ¶ 41. Thus, the FCC left no question that it meant for its ruling to preempt *all* state telephone regulation of DigitalVoice—not just Minnesota's.

The FCC observed generally that "state entry and certification requirements, such as the Minnesota Commission's, require the filing of an application which must contain detailed information regarding all aspects of the qualifications of the would-be service provider, including public disclosure of detailed financial information, operational and business plans, and proposed service offerings." It also found that state tariff requirements imposed heavy burdens as well. *Id.* at ¶ 20. It is for this reason the FCC has eliminated such requirements for non-dominant telecommunications carriers and information service providers at the interstate level.

13

Therefore, regardless of whether Vonage is classified as a telecommunications carrier or an information service provider, the FCC found it should not be subject to such regulations. *Id*. at ¶ 22. Yet, these are exactly the types of regulations imposed by both the Minnesota Order and the New York PSC Order before the Court.

The New York and Minnesota Orders are basically the same. The PSC Order found that Vonage was a "telephone corporation" subject to the PSC's jurisdiction (*PSC Order* at 10) and requires Vonage to "file an application for a Certificate of Public Convenience and Necessity and file a tariff," and to "comply with the Public Service Law obligations of telephone corporations" (*PSC Order* at 18). "The Minnesota Commission issued an order asserting regulatory jurisdiction over Vonage and ordering the company to comply with all state statutes and regulations relating to the offering of telephone service in Minnesota." *FCC Declaratory Ruling* at ¶ 11. The FCC did not focus on the specifics of Minnesota's regulatory scheme in particular, but rather held that subjecting DigitalVoice to state telephone regulations was antithetical to the goal of a uniform national policy. *Id*. a ¶ 20.

Were Vonage subject to the PSC's regulation, not only would it be required to file an application, it would have to commit itself to regulatory requirements with which it cannot comply. For example, Application Form A specifically requires applicants "to comply with the requirements enumerated on pages 30-31 of the PSC's Order in Case 94-C-0095, issued May 22, 1996" and to describe how the applicant plans to comply with these requirements. (Carney Decl., Ex. 3) This broad Order requires:

> a) A local exchange carrier must file tariffs to provide local exchange service (a subscriber's initial access to the "public switched network") within a geographic area or areas defined by the carrier and filed with the Commission.

> b) As a provider of local exchange service, a local exchange carrier must:

i)  provide, without undue discrimination or preference, service to any willing customer within the carrier's defined service territory;
ii)  contribute to the Targeted Accessibility Fund (TAF) which funds programs such as Lifeline, safety/emergency services (911, E911, 0-), and Telecommunications Relay Service (TRS) for the hearing impaired;
iii)  comply with the Telephone Fair Practices rules (16 NYCRR Part 609, et. seq.);
iv)  comply with the Common Carrier rules (16 NYCRR Part 605);
v)  comply with our Statement of Policy on Privacy in Telecommunications (Case 90-C-0075, issued March 22, 1991);
vi)  comply with our Open Network Architecture (ONA) principles (Case 88-C-004, Opinion No. 89-28, issued September 11, 1989);
vii)  provide reasonable interconnections for the joint provision of service to any certified carrier requesting such interconnection;
viii)  comply with our service quality standards and infrastructure monitoring requirements (16 NYCRR, Parts 603 and 644.3).

94-C-0095 Order at 30-31 (relevant pages attached as Exhibit 4 to Carney Decl.).

Not only do these requirements violate federal law and policy respecting services like DigitalVoice, given the nature of Vonage's service, compliance with many of them would be impossible.  For instance, because Vonage does not install local service lines, and instead is completely dependent upon third-party broadband services, Vonage has no ability to assure compliance with the service quality standards governing maintenance service, installations, or network performance.  *See e.g.* 16 NYCCR, Part 603. Also, due to the inability to distinguish between intrastate and interstate calls, Vonage would be required to adopt New York service standards--for instance those governing provision of service to residential customers--on a nationwide basis.  *See e.g.*, 16 NYCCR, Part 609.  This is precisely what the *FCC Declaratory Ruling* expressly forbids.

The FCC order not only preempts the entry and certification requirements mandated by the New York PSC against Vonage, but also *all* New York regulations that would apply to carriers by virtue of their status as a certificated entities.  *FCC Declaratory Ruling* at ¶ 11 n. 30.

As such, the PSC Order must be enjoined in its entirety, as it not only imposes initial application and certification requirements, but attempts to impose on Vonage a continuing duty to comply with regulations applicable to certified local exchange carriers. *PSC Order* at 18. The FCC's order does not permit a state to circumvent preemption by claiming that a regulation is not "entry" or "economic" regulation when, in fact, the only reason that the regulation would apply to any company is because of that company's status as a local exchange carrier certificated by the state. Thus, the entire PSC Order is preempted.

### D. Vonage Will Continue To Provide The Same 911 Service And To Work With The New York PSC To Perform E911 Trials

The FCC preempted the Minnesota requirement that Vonage, as a condition of entry, submit a 911 plan for approval. *FCC Declaratory Ruling* at ¶ 42. As New York imposes a similar requirement in conjunction with applications for certification (Carney Decl., Ex. 3), it too has been preempted in this regard. *Id*. Nonetheless, as recognized by this Court in its *Preliminary Injunction Order* and by the FCC in its decision, Vonage has made a firm commitment to provide the most effective emergency service possible given the constraints inherent in its unique service. *See Preliminary Injunction Order* at 2; *FCC Declaratory Ruling* at ¶ 43. Vonage will continue to provide the same level of 911 service to its customers in New York that it has provided throughout this proceeding, and will continue its voluntary efforts to enhance those services, including its work with the New York PSC to conduct E911 trials in a manner compatible with Vonage's service.[4] Subject to a recognition that its stipulation is made

---

[4] In fact, the FCC relied on Vonage's earlier stipulation, as incorporated in this Court's preliminary injunction, that Vonage continue to provide the same emergency 911 services now available to Vonage customers within New York, and that the company make a good-faith effort to voluntarily participate in workshops regarding the provision of such services, as assurance that all customer's nationwide will reap the benefits of Vonage's continued efforts in such regard. *FCC Declaratory Ruling* at ¶ 45.

voluntarily and that future legal or technical developments may require or enable other or improved forms of 911 service, Vonage is willing to have these stipulations recognized in, and made a part of, a permanent injunction order.

## CONCLUSION

Because the New York State PSC's May 21, 2004 Order imposing New York telephone regulations on Vonage has been preempted by federal law, including by the FCC's recent declaratory ruling, Vonage has demonstrated actual success on the sole contested issue in this case.  It has therefore met its burden in establishing  entitlement to permanent injunctive relief. Accordingly, Vonage respectfully requests that the Court enter a permanent injunction against enforcement of the PSC's Order.   A proposed form of Order is submitted herewith.

Respectfully submitted,

SWIDLER BERLIN SHEREFF FRIEDMAN, LLP

By: /s Christopher J. Carney__
    Ky E. Kirby
    William B. Wilhelm
    Michael C. Sloan
    Christopher J. Carney (CC 0388)

3000 K Street
Suite 300
Washington D.C. 20007
(202) 424-7500

***Attorneys for Vonage Holdings Corporation***

Dated: December 20, 2004
    Washington, D.C.