IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Vonage Holdings Corporation,

                Plaintiff,

      - against -

THE NEW YORK STATE PUBLIC SERVICE
COMMISSION and WILLIAM M. FLYNN, THOMAS
J. DUNLEAVY, LEONARD A. WEISS, and NEAL
N. GALVIN, in their official capacities
as the Commissioners of the Public
Service Commission of the State of New
York, and not as individuals,

                Defendants.

04 Civ. No. 4306
(DFE) (ECF CASE)

---

## PUBLIC SERVICE COMMISSION'S MEMORANDUM OF LAW SUPPORTING CONTINUANCE OF PRELIMINARY INJUNCTION AND OPPOSING PERMANENT INJUNCTIVE RELIEF

---

DAWN JABLONSKI RYMAN
General Counsel
Public Service Commission
 of the State of New York
Three Empire State Plaza
Albany, New York 12223-1350

Of Counsel
Jonathan D. Feinberg (JF 2416)
Solicitor
Michelle Phillips (MP 1950)
John Graham
Assistant Counsel
(518) 474-5597

Dated:    January 28, 2004
             Albany, New York

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Vonage Holdings Corporation,

                  Plaintiff,

      - against -

THE NEW YORK STATE PUBLIC SERVICE
COMMISSION and WILLIAM M. FLYNN, THOMAS
J. DUNLEAVY, LEONARD A. WEISS, and NEAL
N. GALVIN, in their official capacities
as the Commissioners of the Public
Service Commission of the State of New
York, and not as individuals,

                Defendants.

04 Civ. No. 4306
(DFE) (ECF CASE)

---

PUBLIC SERVICE COMMISSION'S MEMORANDUM OF LAW SUPPORTING
CONTINUANCE OF PRELIMINARY INJUNCTION AND OPPOSING
PERMANENT INJUNCTIVE RELIEF

---

                             DAWN JABLONSKI RYMAN
                             General Counsel
                             Public Service Commission
                              of the State of New York
                             Three Empire State Plaza
                             Albany, New York 12223-1350

Of Counsel
Jonathan D. Feinberg (JF 2416)
Solicitor
Michelle Phillips (MP 1950)
John Graham
Assistant Counsel
(518) 474-5597

Dated:      January 28, 2004
            Albany, New York

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ............................................................. ii

PRELIMINARY STATEMENT .......................................................... 1

STATEMENT OF FACTS .............................................................. 3

THE NYPSC ORDER ................................................................. 4

THIS COURT'S ORDER ............................................................... 5

THE FCC ORDER .................................................................... 6

SUMMARY OF ARGUMENT ............................................................. 7

     I.    THE FCC'S PRECLUSION OF "RATE AND ENTRY"
          REGULATION BY THE MINNESOTA PUC HAS LITTLE
          IMPACT ON THE NYPSC ORDER ................................... 9

      A. The FCC Order Did Not End The Potential
         Litigation Between The NYPSC And Vonage ................... 9

          1. The FCC Did Not Resolve
             Jurisdiction Over 911 Issues ........................ 10

          2. The FCC Has Not Addressed Jurisdiction
             Over Network Reliability Issues ..................... 12

      B. The NYPSC'S "Rate And Entry" Regulation
         Was Purely Pro Forma ..................................... 13

    II.   THE PRELIMINARY INJUNCTION SHOULD CONTINUE .............. 15

      A. The Preliminary Injunction Should Continue
         To Preserve The 911 Clause On Which
         The FCC Relied .......................................... 16

      B. The Preliminary Injunction Should Continue
         To Protect The Public Interest In Other
         Issues Not Yet Resolved By The FCC ...................... 18

CONCLUSION ...................................................................... 21

i

# TABLE OF AUTHORITIES

**PAGE**

## STATE ADMINISTRATIVE DECISION

Case 03-C-1285 – Complaint of Frontier Telephone of
Rochester, Inc. Against Vonage Holdings Corporation
Concerning Provision of Local Exchange and InterExchange
Telephone Service in New York in Violation of the Public
Service Law, Order Establishing Balanced Regulatory
Framework For Vonage Holdings Corporation, (Issued and
Effective May 21, 2004) ........................................... 3

## FEDERAL ADMINISTRATIVE DECISIONS

In the Matter of Vonage Holdings Corporation Petition
For a Declaratory Ruling Concerning an Order of the
Minnesota Public Utilities Commission, Memorandum Opinion
and Order, 19 F.C.C.R. 22404 (November 12, 2004) .................... 6

In the Matter of I.P. Enabled Services, Notice of
Proposed Rulemaking, 19 F.C.C.R. 4863 (March 10, 2004) ............ 11

## FEDERAL STATUTES

47 U.S.C. § 253(b) ................................................ 13

47 U.S.C. § 615 ................................................... 17

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Vonage Holdings Corporation,

                Plaintiff,

   - against -

THE NEW YORK STATE PUBLIC SERVICE       04 Civ. No. 4306
COMMISSION and WILLIAM M. FLYNN, THOMAS   (DFE)(ECF CASE)
J. DUNLEAVY, LEONARD A. WEISS, and NEAL
N. GALVIN, in their official capacities
as the Commissioners of the Public
Service Commission of the State of New
York, and not as individuals,

                Defendants.

PUBLIC SERVICE COMMISSION'S MEMORANDUM OF LAW SUPPORTING
CONTINUANCE OF PRELIMINARY INJUNCTION AND OPPOSING
PERMANENT INJUNCTIVE RELIEF

## PRELIMINARY STATEMENT

In a preliminary injunction order of July 16,
2004, this Court precluded the defendant Public Service
Commission of the State of New York (NYPSC) from exercising
jurisdiction over plaintiff Vonage Holdings Corporation
(Vonage) pending a rulemaking by the Federal Communications
Commission (FCC).  The Court's order contained a variety of
provisions designed to protect the *status quo* during the
pendency of the preliminary injunction, including a

requirement that Vonage participate in efforts to improve its ability to carry emergency calls to 911.

The FCC has now issued an order which explicitly did not resolve the concerns that gave rise to the NYPSC's attempt to regulate Vonage in the first place. Strikingly, the FCC addressed Vonage's difficulties in providing 911 by relying on this Court's preliminary injunction, but did not indicate how it would take jurisdiction over 911. The FCC has also postponed resolution of how to ensure the reliability of the telephone networks that Vonage uses to complete calls to non-Vonage subscribers. The FCC's order, if applied to New York, would do no more than preclude Vonage from complying with *pro forma* tariffing and certification requirements.

Despite these unsettled issues, Vonage has moved for a permanent injunction preempting PSC regulation on the basis of the FCC order. Vonage's request for a permanent injunction should be denied. The preliminary injunction should continue in effect until at least such time as the FCC fully completes its rulemaking.

## STATEMENT OF FACTS

The facts of this matter are stated in the NYPSC Vonage Order,[1] and in its Brief In Opposition To Motion For Preliminary and Permanent Injunction and the Declaration of Carl A. Johnson ("Johnson Declaration") accompanying that brief. Vonage uses Internet Protocol (IP) telephony over its customers' "broadband" (high-speed digital) connections to offer voice service as an alternative to land-line telephone companies ("the Local Exchange Companies (LECs)", and the "Competitive Local Exchange Companies (CLECs)"). If the called party is not a Vonage subscriber, then Vonage routes the calls to a Competitive Local Exchange Company, which then, in turn, delivers the calls to the landline facilities of a Local Exchange Company for transmittal to that non-Vonage subscriber.[2] NYPSC Vonage Order at 4.

Vonage cannot automatically route calls to an emergency service dispatcher for the caller's location or

---

[1] Case 03-C-1285 - Order Establishing Balanced Regulatory Framework for Vonage Holdings Corporation, issued May 21, 2004 (Exhibit 1 to the Declaration of Christopher Carney) ("Carney Declaration").

[2] Vonage contends (in its Memorandum of Law in Support of its Motion for Permanent Injunction, hereafter "Vonage" at 2) that its customers do not use telephones connected to the Public Switched Telephone Network (PSTN) operated by the landline companies. However, its customers are calling end-users connected to the PSTN as defined by Vonage. Johnson Declaration ¶ 7.

- 3 -

provide automatic identification of a subscriber's
location.  Vonage instead allows its subscriber to specify
an address for purposes of 911 emergency calling.  Johnson
Declaration ¶ 19.

### THE NYPSC ORDER

The NYPSC Vonage Order asserted jurisdiction over
Vonage in response to a Petition by Frontier Telephone of
Rochester that Vonage should have to abide by the same
state laws that apply to landline carriers.  The NYPSC
observed it had an interest in ensuring that regulation did
not "needlessly interfere with the rapid, widespread
deployment of new technologies."  It also found that there
were certain interests requiring assertion of jurisdiction
over Vonage, including needs to protect network reliability
and public safety.  NYPSC Vonage Order at 16.

The NYPSC accordingly decided that Vonage could
seek permanent or temporary waivers of any Commission
requirements it deemed to be inappropriate.[3]  The NYPSC
required Vonage to make filings for a Certificate of Public
Convenience and Necessity and tariffs within 45 days of its
order, accompanied by the request for waivers.

---

[3] Given the availability of these waivers, which Vonage
acknowledges (at 3), Vonage is incorrect when it claims (at
3), that it "would be required to obligate itself" to meet
"requirements with which compliance would be impossible."

## THIS COURT'S ORDER

Instead of making the filings and request for waivers, Vonage pursued this action. In its July 16, 2004 Preliminary Injunction Order, the Court enjoined NYPSC regulation of Vonage pending FCC decisions in pending proceedings concerning: 1) whether the Minnesota Public Utilities Commission's (MPUC) regulation of Vonage was preempted by federal law; and 2) the appropriate regulatory framework for IP enabled services. Id. at 3. The Court did, however, protect state interests in 911, network reliability and the handling of consumer complaints.

Thus, it provided for Vonage's cooperation with NYPSC efforts to address 911 issues. These efforts include workshops to address issues relating to automatic provision of customer information to dispatchers and long term principles for provision of 911 by the IP industry. Id. at 4. It also included clauses with respect to Vonage's contacts with NYPSC staff for information sharing in the event of a material network outage and for handling of consumer complaints. Id. at 4-5.

## THE FCC ORDER

In its FCC Vonage Order, released November 12, 2004,[4] the FCC granted, in part, a request by Vonage for preemption of the MPUC Order imposing regulations applicable to providers of telephone service on Vonage. The FCC did not adopt Vonage's theory that it was providing an "information service." It did, however, decide that Vonage's service could not be practically separated into interstate and intrastate communications. FCC Vonage Order ¶ 11. It accordingly preempted MPUC rate, entry and certification requirements which, in its view, could not be applied to a distinct Vonage intrastate service. The FCC declared its intention to preclude such regulation by any state. FCC Vonage Order ¶ 14.

The FCC did not, however, preempt state regulation of consumer protection. It opined that states could enforce fair business practices in advertising and billing and generally respond to customer inquiries and complaints. FCC Vonage Order ¶ 1. The FCC left open, moreover, remaining issues with respect to other IP enabled services. It stated it intended to address separately

---

[4] In the Matter of Vonage Holdings Corporation Petition For Declaratory Ruling Concerning an Order of the Minnesota Public Utilities Commission, Memorandum Opinion and Order, 19 F.C.C.R. 22404 (2004) Carney Declaration, Exhibit 2.

"other critical issues such as universal service, inter-
carrier compensation, section 251 rights and obligations,
numbering, disability access and consumer protection." FCC
Vonage Order ¶44.

Moreover, while the FCC determined that Minnesota
could not require Vonage to supply 911 service as a
condition for entry, it did not decide what 911
requirements should apply to Vonage and other IP enabled
services. FCC Vonage Order ¶ 43. The FCC relied on trials
that Vonage is conducting in Rhode Island, and a statement
of principles developed by the National Emergency Number
Association, to conclude that Vonage would still work
toward automatic 911 routing. Id. It also relied on this
Court's preliminary injunction as a basis for stating that
"we need not be concerned that as a result of our action
today, Vonage will cease its efforts to continue developing
and offering a public safety capability in Minnesota." FCC
Vonage Order ¶ 45.

### SUMMARY OF ARGUMENT

Vonage contends that the FCC's order resolves the
issues in this proceeding and necessitates issuance of a
permanent injunction against NYPSC regulation of Vonage.
It accuses (at 7) the NYPSC of proposing that the Court
ignore controlling authority (the FCC's decision) on the

- 7 -

ground that the FCC may amend its decision.   In so arguing,
Vonage misstates the NYPSC theory, which is that the FCC
has not yet fully ruled on the matters of concern to the
NYPSC, and therefore not displaced the Preliminary
Injunction.   Vonage ignores that the FCC did not resolve
any of the issues that led the NYPSC to assert jurisdiction
over Vonage, and that the FCC has yet to decide the states'
role on those issues.   That is, the FCC has not determined
to what extent the states may control Vonage's 911 service.
Further, the FCC has not addressed how network reliability
would be preserved.   Vonage thus asks the Court to end the
public interest protections in the preliminary injunction,
when the FCC has not yet replaced those protections.   The
Court should not attempt to translate as yet unknown FCC
requirements into a permanent injunction.

Moreover, Vonage overstates the scope of the
FCC's order, which only precluded rate and entry
regulation.   The NYPSC did not impose a 911 plan as a
condition of Vonage entry, and it offered Vonage the
opportunity to seek waivers of any non-statutory
requirements.   Any NYPSC statutory rate and entry
regulation was merely pro forma.   Precluding such
regulation does not address the remaining grounds and
concerns behind NYPSC regulation of Vonage.

Further, a permanent injunction should not be
issued because the FCC's decision with respect to 911
issues relied upon the Court's preliminary injunction that
Vonage continue to address those issues.  That provision of
the preliminary injunction must continue because it
provided support for a central ingredient for the FCC's
decision.  Similarly, other aspects of the preliminary
injunction protecting state interests in network
reliability should continue as well.

> I.   THE FCC's PRECLUSION OF "RATE AND ENTRY"
>      REGULATION BY THE MINNESOTA PUC HAS LITTLE
>      IMPACT ON THE NYPSC ORDER
>
> A.   The FCC Order Did Not End the Potential
>      Litigation Between the NYPSC and Vonage

Vonage argues that a permanent injunction is
appropriate because the FCC properly precluded state
regulation of its service.  Vonage 8-12.  The propriety of
the FCC's decision is not a matter for this Court to
decide, and is irrelevant at this juncture.[5]  The Court can,
however, as Vonage acknowledges (at 6), interpret the FCC's
decision.  As such, the Court should recognize that the

---

[5] Rather, as the Eighth Circuit has decided in its
December 22, 2004 decision, attached to Vonage's Notice of
Recent Relevant Authority, the FCC's order must be
challenged in a separate review proceeding.  The NYPSC has
filed such a review petition and does not brief its
disagreements with the FCC's order in this case.

FCC's order did not resolve any of the issues affecting

Vonage's provision of service in New York.  Thus, the FCC

left open issues of regulation of service adequacy,

particularly 911, and protection of network reliability

that are of concern to the NYPSC.  The FCC prevented

economic regulation, but the NYPSC did not intend to set

Vonage's rates or preclude Vonage's entry into the New York

market.

### 1.    The FCC Did Not Resolve
### Jurisdiction Over 911 Issues

The FCC precluded the MPUC from requiring Vonage

to provide 911 as a requirement for entry into Minnesota

based solely on its finding that "Minnesota had imposed 911

requirements on Vonage as a condition of entry."  FCC

Vonage Order ¶42.  The FCC expressly states, FCC Vonage

Order at 8, note 46, that it is ruling only on the "...

narrow jurisdictional question...."  It then addresses the

public safety issue "in a limited manner" and does so

"...only because of the manner in which Minnesota ties its

911 requirements to entry authority."  FCC Vonage Order at

9, note 49.

The FCC's order clearly has no meaning for the

NYPSC's treatment of 911 issues, because the NYPSC did not

impose a 911 plan as a condition of Vonage's entry.  Vonage

is simply incorrect when it claims (at 16) that the NYPSC made 911 an "entry" requirement.[6]

Moreover, the FCC did not resolve 911 issues. The FCC Vonage Order emphasized (at ¶ 44) that "we have yet to determine final rules for the variety of issues discussed in the *IP-Enabled Services Proceeding*." To the contrary, the FCC repeatedly states that it envisions the continuation of today's work and efforts to resolve important public safety issues such as 911 (see, e.g., ¶¶ 13, 14, 42, 43, and notes 46 (at 8) and 49 (at 9)). The FCC specifically states, FCC Vonage Order ¶ 43, its belief that "important social policy issues surrounding services like DigitalVoice should be considered and resolved." It points to its "pending" *IP-Enabled Services Proceeding* (19 F.C.C.R. 4863), noting such issues, including 911, eventually will be resolved in that proceeding (see, e.g., FCC Vonage Order at 8, note 46, and at 9, note 49).

---

[6] Vonage's claim (at 4) that the NYPSC application for a certificate required a filing on 911 ignores the opportunity for a waiver of that requirement. The NYPSC stated that its "public safety (e.g., 911 emergency services)" concerns "must be addressed." NYPSC Vonage Order at 16. Unlike a tariff or a Certificate of Public Convenience and Necessity, provision of automatic access to 911 is not a New York statutory requirement and the NYPSC did not make it a condition of entry. Rather, the NYPSC expected that Vonage would address automatic routing of calls to 911, as subsequently required by the Court's Preliminary Injunction and anticipated by the FCC.

### 2.   The FCC Has Not Addressed Jurisdiction Over Network Reliability Issues

The FCC also did not address important questions of concern to the NYPSC pertaining to network reliability and thus has not supplanted the protections in this Court's order.  Indeed, the FCC has not decided what the states' role should be on reliability issues.  The FCC has stated that its proceeding will resolve "important regulatory matters with respect to IP-enabled services generally . . . concerning issues such as the Universal Service Fund, intercarrier compensation, 911/E911, consumer protection, disability access requirements, and the extent to which states have a role in such matters (Emphasis added)."  FCC Vonage Order at 8, note 46.

The bulk of the calls from Vonage subscribers are completed to customers on traditional telephone networks.  Johnson Declaration ¶ 7.  One aspect of reliability is financial, and a question exists as to how Vonage should compensate network providers for the continued availability of their facilities.  NYPSC Vonage Order at 16.  Johnson Declaration ¶ 21.  It is not clear how such reimbursement will be accomplished after the FCC's decision; the FCC has left "inter-carrier compensation" and "universal service" to another day.  FCC Vonage Order at 8, note 46; ¶ 44.

- 12 -

Further, state commissions must be able to
monitor the reliability of telecommunications within their
state.  Johnson Declaration ¶ 22.  While states cannot
impose barriers to entry, they can still "ensure the
continued quality of telecommunications."  47 U.S.C. §
253(b).[7]   The FCC did not address this issue of how
service quality is to be monitored, but it is apparently a
matter for the FCC's generic IP rulemaking.  <u>See</u>, FCC
Vonage Order at 8, note 46; ¶ 44.  Whether Vonage is
treated as a provider of telecommunications or a customer
using the switched network, these issues still need to be
resolved.

B.   **The NYPSC's "Rate and Entry" Regulation
     Was Purely *Pro Forma***

Vonage argues (at 14-17) that the proposed (and
now-stayed) NYPSC regulation was identical to the Minnesota
regulation preempted by the FCC.  In so arguing, Vonage
ignores elements of the proposed NYPSC regulation.  Thus,
it points (at 14-15) to PSC requirements applicable to
communications carriers which it argues should not be

---

[7] Section 253(b) provides, in pertinent part, that
"[n]othing in this section shall affect the ability of a
State to impose, on a competitively neutral basis and
consistent with section 254 of this section, requirements
necessary to preserve and advance universal service,
protect the public safety and welfare, ensure the continued
quality of telecommunications services, and safeguard the
rights of consumers."

applied to it.  The NYPSC permitted Vonage to "seek
permanent or temporary waivers of any of those requirements
it deems to be inappropriate in its circumstance or with
which it is not readily able to comply."  NYPSC Vonage
Order at 17.  Any requirements with which Vonage could not
comply would thus not have created a burden.

      Moreover, the NYPSC regulatory regime would have
created no barrier to Vonage entry into New York.  The FCC
precluded the Minnesota PUC from applying "economic"
regulation in the form of rate and entry and certification
requirements.  FCC Vonage Order ¶¶ 20-21.  The NYPSC's rate
and entry requirements are purely *pro forma*, at least as
applied to competitive providers such as Vonage.  Those
now-stayed requirements provide no basis for imposing a
permanent injunction at this time.  The NYPSC has "provided
extensive pricing flexibility for competitive services
. . . ."  NYPSC Vonage Order at 17.  Vonage could have
easily complied with NYPSC tariff requirements by simply
filing whatever rates it proposed to charge its customers.
Johnson Declaration ¶ 14.  Likewise, the NYPSC routinely
grants Certificates of Public Convenience and Necessity to
competitive providers, and explicitly stated its interest
in allowing Vonage to participate in the New York
telecommunications market.  NYPSC Vonage Order at 16.

- 14 -

Vonage further claims (at 16) that the NYPSC
Order must be permanently enjoined because it would have
applied to Vonage the same requirements that would pertain
to certified local exchange carriers (Vonage at 15-16,
citing FCC Vonage Order at 6, note 30).  This argument
misreads both the NYPSC and FCC orders.  The NYPSC did not
apply all regulations for certified local exchange carriers
to Vonage, but rather invited it to identify those
regulations with which it could comply.  NYSPC Vonage Order
at 17-18.  The FCC appears concerned only with
certification requirements that are a bar to entry.  FCC
Vonage Order at 6, note 30 (citing Minn. Stat. § 237.16(a),
which bears on certification to provide service).

## II.   THE PRELIMINARY INJUNCTION SHOULD CONTINUE

Inasmuch as the FCC has not decided the critical
issues affecting the public interest in Vonage's service,
this Court should simply continue the existing preliminary
injunction and its provisions protecting the public
interest.  The preliminary injunction provides a clause
with respect to 911 efforts on which the FCC itself relied.
Continuation of that clause is an appropriate way of
maintaining the status quo on 911 until the FCC does act.
Further, the Court's decision addresses consumer protection
and network reliability issues that are not resolved by the

FCC.   As such, it represents a workable regime for going forward until such time as the FCC acts on these issues. The Court should not be forced to guess at as yet unknown FCC requirements in attempting to develop a permanent injunction.

### A.   The Preliminary Injunction Should Continue To Preserve the 911 Clause On Which The FCC Relied

Vonage's proposed permanent injunction does not provide the same protections as the preliminary injunction with respect to Vonage's efforts to improve its ability to automatically route calls to 911 dispatchers and provide caller information.   Instead of the detailed provisions of the Preliminary Injunction on 911 cooperation (at 4), Vonage proposes only to continue its current non-automatic calling and engage in "discussions" on 911.   Thus, Vonage's proposed permanent injunction should be rejected and the Preliminary Injunction should remain in place.

The FCC approved of, and indeed relied upon, this Court's order as ensuring that Vonage will not cease its efforts to continue developing and offering public safety capabilities for DigitalVoice "wherever it is used."   FCC Vonage Order ¶ 45.[8]   Thus, the FCC's Order assumed that this

---

[8] The FCC expressly concluded that this Court's order ensures that "we need not be concerned that as a result of

Court's Order would remain in effect, preserving continued
efforts to address 911 issues pending a final determination
by the FCC in its *IP-Enabled Services Proceeding.*

Congress has, moreover, expressly required that
the FCC "encourage and support efforts by States to deploy
comprehensive end-to-end emergency communications
infrastructure and programs...including seamless,
ubiquitous, reliable wireless telecommunications networks
and enhanced wireless 9-1-1 service."  47 U.S.C. § 615.
The Preliminary Injunction allows for continued,
cooperative efforts that are critical to achieving these
important statutorily mandated objectives.  Accordingly, it
should be continued, as is, with respect to 911
requirements.

Vonage proposes (at 16) to "stipulate" that a
permanent injunction should contain a condition for Vonage
cooperation on 911.  That proposed stipulation is not,
however, reflected in its proposed permanent injunction.
Moreover, Vonage's "stipulation" begs the question of

our action today, Vonage will cease its efforts to continue
developing and offering a public safety capability in
Minnesota.  The District Court order ensures that these
efforts must continue while we work cooperatively with our
state colleagues and industry to determine how best to
address 911/E911-type capabilities for IP-enabled services
in a comprehensive manner in the context of our *IP-Enabled
Services Proceeding.*[fn omitted]."  FCC Vonage Order ¶45.

- 17 -

whether there should be a permanent injunction at this time.  Vonage assumes that this Court can divine FCC requirements when the FCC has not yet ruled, but has relied on the Court for progress on 911.  The better course is to continue the Preliminary Injunction, rather than adopt language from the Preliminary Injunction into the permanent injunction.[9]

> **B.    The Preliminary Injunction Should Continue To Protect The Public Interest In Other Issues Not Yet Resolved By The FCC**

Further, the FCC's order cannot become the subject of a permanent injunction to the extent it has not ruled on other issues.  Vonage does not mention that the FCC left open a category of "consumer protection" the states can perform, FCC Vonage Order ¶ 1, and its proposed order does not protect that role.  The basis for, and limits of, this realm of permitted protection was not explicitly defined in the FCC's order.[10]  The FCC has stated its intent to further explore "critical issues such as

---

[9] If the Court does decide on a permanent injunction, it should adopt Vonage's proposed stipulation.

[10] Most of the customer complaints the NYPSC handles involve rates, and the FCC clearly meant to preempt any state handling of such complaints.  It nonetheless expects that "states will continue to play their vital role in protecting consumers from fraud, enforcing fair business practices, for example, in advertising and billing, and generally responding to consumer inquiries and complaints."

. . . "consumer protection", FCC Vonage Order ¶ 44, and to further decide the "extent to which states have a role on such matters." Id. at 8, note 46.[11]

Finally, the FCC's decision is also not one that can be translated to a permanent injunction to the extent that it has not yet ruled on the states' role with respect to network reliability issues. Thus, the FCC has not outlined its proposed regime for dealing with the financial and monitoring issues involving use by Vonage and its carriers of the "PSTN" for call delivery. Again, those compensation issues -- of the "Universal Service Fund, intercarrier compensation . . . and the extent to which states have a role in such matters" -- remain to be considered. FCC Vonage Order at 8, note 46. This Court should not consider whether to develop a permanent

---

FCC Vonage Order ¶ 1. It is not apparent how the states will handle such "consumer inquiries" if they are pre-empted. It is also not clear if the FCC expects the NYPSC to refer all Vonage-related queries to the New York Attorney General, or to handle non-rate complaints (e.g. with respect to service quality).

[11] A further source of ambiguity is that state power over "fair business practices," FCC Vonage Order ¶ 1, could arguably allow states to require Vonage to offer more explicit messages about Vonage's lack of automatic routing to 911 service. It is conceivable that Vonage's website advising customers that it cannot offer automatic 911 routing may not satisfy state laws with respect to waiver of customer rights.

injunction constraining NYPSC regulation until the FCC acts
on these matters.

      While Vonage is willing to "stipulate" to
continuation of the 911 clauses, it apparently is not
willing to continue the clauses with respect to other
issues.  The Court should continue these clauses.  There is
no reason to distinguish between 911 and other issues left
unresolved by the FCC.  All the protections of the
preliminary injunction should be continued by maintaining
that injunction.  In the event it is not maintained, and
the Court grants a permanent injunction, all these
protections should be incorporated into the permanent
injunction.

## CONCLUSION

For the foregoing reasons, Vonage's Motion for Permanent Injunction should be denied and the Preliminary Injunction should remain in effect.

Respectfully submitted,

Dawn Jablonski Ryman
General Counsel
Public Service Commission
 of the State of New York
Three Empire State Plaza
Albany, New York 12223-1350

Jonathan D. Feinberg
Solicitor (JF 2416)
Michelle Phillips (MP 1950)
John Graham
Assistant Counsel
(518) 474-5597

Dated:        January 28, 2005
              Albany, New York

- 21 -