UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X
VONAGE HOLDINGS CORPORATION,                :
                                             :   04 Civ. 4306 (DFE) (ECF CASE)
                              Plaintiff,     :
                                             :
              -against-                      :
                                             :
THE NEW YORK STATE PUBLIC SERVICE           :
COMMISSION, and WILLIAM M. FLYNN,           :
LEONARD A. WEISS, THOMAS J. DUNLEAVY, :
and NEAL N. GALVIN in their official capacities :
as the Commissioners of the New York State   :
Public Service Commission and not as individuals, :
                                             :
                              Defendants.    :
-----------------------------------------------------------------X

# RESPONSE OF VONAGE HOLDINGS CORPORATION IN SUPPORT OF ITS MOTION FOR PERMANENT INJUNCTIVE RELIEF

SWIDLER BERLIN LLP
Ky E. Kirby
William B. Wilhelm
Michael C. Sloan
Christopher J. Carney
3000 K Street, N.W.
Washington, D.C. 20007
(202) 424-7500
Counsel for Vonage Holdings Corporation

Dated: February 25, 2004
       Washington, D.C.

Plaintiff Vonage Holdings Corp. ("Vonage") respectfully submits this memorandum of law responding to: (1) the New York Public Service Commission ("PSC") Memorandum of Law Supporting Continuance of Preliminary Injunction and Opposing Permanent Injunctive Relief ("PSC Opposition Brief"); and (2) the Brief of *Amici Curiae* the United States of America and its agency, the Federal Communications Commission ("FCC") ("Government Brief").

## I.
## INTRODUCTION & SUMMARY OF THE ARGUMENT

Vonage has moved the Court to convert its preliminary injunction order in this case to a permanent injunction. As Vonage explained in its Memorandum of Law in Support of its Motion for Permanent Injunction ("Motion Brief"), the FCC's *Vonage Declaratory Ruling* is dispositive of the PSC's attempt to impose New York state telephone regulation on Vonage's inherently inter-state service.[1] Recognizing that the *Vonage Declaratory Ruling* expressly cited the emergency calling ("911") provisions of this court's preliminary injunction order, Vonage has proposed that its voluntary commitment to continue providing its 911 services be included in the terms of the permanent injunction.

Notwithstanding the FCC's ruling and Vonage's 911 commitment, the PSC opposes Vonage's motion and seeks to keep the preliminary injunction in place. The PSC asserts that "Vonage misstates the NYPSC theory, which is that the FCC has not yet fully ruled on the matters of concern to the NYPSC," and claims that the FCC's *Vonage Declaratory Ruling* did

---

[1] *See* Memorandum Opinion and Order, *In the Matter of Vonage Holdings Corporation Petition for Declaratory Ruling Concerning an Order of the Minnesota Public Utilities Commission*, WC Docket No. 03-211, FCC 04-267 (FCC Nov. 12, 2004) ("*Declaratory Ruling*").

-1-

not completely preempt its order.[2]  PSC Opp. Br. at 8.  For their part, the U.S. *amici* does not oppose the entry of a permanent injunction, but asks the Court "to defer consideration of legal issues that the FCC has not yet addressed in its administrative proceedings."  Gov. Br. at 6.

Addressing the United States' concern first: the permanent injunction Vonage seeks would have no impact on any of the issues currently pending at the FCC, as the United States Court of Appeals for Eighth Circuit recently recognized.  *See Vonage Holdings Corp. v. Minn. Public Utils. Comm'n*, 394 F.3rd 568 (8th Cir. 2004).  In affirming the district court's permanent injunction of the Minnesota PUC's order,[3] the Eighth Circuit relied only on matters definitively resolved by the FCC in its *Declaratory Ruling*, and recognized that any subsequent change in law could be dealt with as necessary.  *Id.* at 569.

The same is equally true of the permanent injunction that Vonage seeks here.  The Court should convert its preliminary injunction into a permanent injunction based on the FCC's *Vonage Declaratory Ruling*, which preempted individual state regulation of Vonage's inherently interstate service, because state regulation would conflict with the development of a unified national approach.

For this reason the Court should reject the PSC's bid to indefinitely extend the preliminary injunction.  It is simply irrelevant whether the FCC did or did not "resolve … the issues that led the NYPSC to assert jurisdiction over Vonage," PSC Opp. Br. at 8, because the

---

[2] Order Establishing Balanced Regulatory Framework for Vonage Holdings Corporation, *Complaint of Frontier Telephone of Rochester, Inc. Against Vonage Holdings Corporation Concerning Provision of Local Exchange and InterExchange Telephone Service in New York State in Violation of the Public Service Law*, Case No. 03-C-1285 (N.Y. PSC May 21, 2004) ("PSC Order" or "Order").

[3] Order Finding Jurisdiction and Requiring Compliance, *Complaint of the Minnesota Dept. of Commerce against Vonage Holding Corp. Regarding Lack of Authority to Operate in Minnesota*, Docket No. P-6214/C-03-108 (Minn. Pub. Utils. Comm'n Sep. 11, 2003) (attached hereto as Exh. 5 to Supplemental Declaration of Christopher J. Carney).

FCC's *Vonage Declaratory Ruling* establishes clearly that the PSC has no such jurisdiction. As its organic statute makes clear, the PSC's jurisdiction is limited to *state* telephone companies. *See* New York Public Service Law § 5(d). But the whole point of the *Vonage Declaratory Ruling* is that Vonage – whether its service is classified for regulatory purposes as a telecommunications or an information service – is not a state telephone company. To the contrary, the FCC's *Declaratory Ruling* establishes that Vonage's inherently *interstate* service is subject to exclusive FCC jurisdiction, which definitively "preclude[s] state regulation." *Vonage Declaratory Ruling* ¶ 32.

In its attempt to avoid this inevitable result, the PSC misrepresents both its own and the FCC's orders and resurrects arguments that the Court has already rejected. First, the PSC erroneously claims that that the 911 and "network reliability" obligations it seeks to impose on Vonage are not conditions of entry. Building on this error, the PSC then claims that because the *Vonage Declaratory Ruling* only preempts "rate and entry" regulation, its order, unlike the Minnesota order, is not preempted. *See* PSC Opp. Br. at 10-13.

As a starting point, the now-preempted Minnesota PUC Order is identical in all material respects to the *PSC Order* at issue here. The Minnesota PUC sought to impose state certification, tariff, and 911 requirements on Vonage, just like the *PSC Order*, and the FCC rejected Minnesota's regulatory encroachment as being inconsistent with the FCC's attempt to fashion a uniform, national frame-work for Internet-based services such as Vonage's. *See Vonage Declaratory Ruling* ¶¶ 30-32. The New York *PSC Order* is no different and must be permanently enjoined for the same reason.

Moreover, the New York PSC's contention that its order does not constitute entry regulation is unsupportable. To provide service in New York, telecommunications carriers must

-3-

demonstrate compliance with a host of state requirements, including 911 and service quality standards, as *a condition of entry*. *See* Vonage Mot. at 14-15 (citing, *inter alia*, New York PSC Application Form A For Certification as a Common Carrier (Declaration of Christopher Carney in Support of Preliminary Injunction Motion, Ex. 3)). The PSC's Opposition Brief does not even suggest that its jurisdiction over these matters derives from any source *other* than its gate-keeping authority over who can operate in the state and on what terms.

Second, the PSC resurrects the argument rejected previously that its rate and entry regulation are "purely *pro forma*," are subject to waiver by the PSC, and are, therefore, not barriers to Vonage's entry into New York. PSC Opp. Br. at 13-14. But as the Court has already recognized, the PSC's willingness to entertain waiver requests is irrelevant. *See* June 30, 2004 Hearing Transcript at 31:19–32:3 (recognizing that *Public Utilities Comm'n of Ohio v. United Fuel Gas Co.*, 317 U.S. 456 (1943) stands for the proposition that the erroneous assertion of jurisdiction by a state agency into a field preempted by federal law works irreparable harm, *per se*) (Ex. 7 to Carney Supp. Decl.).

For all these reasons – because the FCC's *Declaratory Ruling* dispositively preempts the *PSC Order* and because the injunction will in no way interfere with the FCC's prospective rule-making authority – the Court should enter a final order permanently enjoining the PSC from enforcing its order regulating Vonage as if it were a state telephone company.

## II.
## ARGUMENT

**A.    The FCC's *Declaratory Ruling* Preempts the PSC's 911 and "Network Reliability" Regulations**

The *PSC Order* constitutes prohibited entry regulation and the PSC's "arguments" to the contrary are unsupported and unsupportable. Indeed, the PSC concedes, as it must, that the basis for the 911 requirements that it seeks to impose on Vonage, derives solely from the application for a Certificate of Public Convenience and Necessity ("CPCN") that telecommunications carriers are required to file and have approved by the PSC as a prerequisite to providing service in the state. PSC Opp. Br. at 11 n.6. Among the numerous requirements identified in the CPCN application is the obligation that the applicant "describe how [it] will provide access to public safety/emergency telephone services." *See* Carney Decl. Ex. 3 at 2, ¶ 9. Notably, the CPCN application does not ask *whether* the applicant will provide 911, but *how* it will do so. Thus, for telephone companies under the PSC's jurisdiction, providing 911 service is an obligation not an option – *i.e.*, it is a condition of entry.[4]

Moreover, the New York 911 requirement is indistinguishable from the Minnesota PUC's 911 requirement invalidated by the FCC. Just like the New York PSC, the Minnesota PUC found that Vonage's service is "is functionally no different than any other telephone service," and is, therefore, "clearly subject to regulation by the Commission." Minn. PUC Order at 8 (Carney Supp. Decl. Ex. 5).. The PUC, therefore, ordered Vonage to "comply with Minnesota

---

[4] Moreover, telecommunications providers operating under the Commission's jurisdiction must agree to comply with a host of other requirements, including contributing to the state's 911 support fund, and complying with the state's network architecture, network interconnection, and common carrier rules. *Id.* ¶ 9 (incorporating by reference PSC Case 94-C-0095 (Carney Decl. Ex. 4)). These requirements are no more optional, and no less conditions of entry, than the 911 requirements the PSC seeks to impose.

statutes and rules, including certification requirements and the provisioning of 911 service." *Id.* This requirement is indistinguishable from that imposed by the New York PSC and preempted by the FCC's *Vonage Declaratory Ruling* (at ¶¶ 42-46). Thus, the PSC's 911 obligations are squarely precluded by the FCC, as the Eighth Circuit recently found in affirming the district court's injunction of the Minnesota PUC's order.

In the Eighth Circuit proceeding, the Minnesota PUC argued that the FCC's decision to defer the promulgation of final rules on public safety issues preserved room for state action in the interim. The PUC, therefore, asked the Eighth Circuit to vacate the district court's permanent injunction order and replace it with a preliminary injunction. Specifically, the PUC asserted that:

> A limited preliminary injunction would be appropriate …. First, the FCC Order indicates that after it concludes its *IP-Enabled Services* docket, the FCC may determine that state utility commissions will play a role in regulating various aspects of Vonage's services…. To the extent that the FCC concludes that states play any role in regulating Vonage's service, the existing permanent injunction is overbroad.

Dec. 1, 2004 Letter from Michael Hatch, Attorney General for the State of Minnesota to Michael E. Gans, Clerk of the Court for the U.S. Court of Appeals for the Eighth Circuit at 10 (attached as Ex. 6 to Carney Supp. Declaration). The PSC makes precisely the same arguments here. *C.f.,* PSC Opp. Br. at 15 ("Inasmuch as the FCC has not decided the critical issues affecting the public interest in Vonage's service, this Court should simply continue the existing preliminary injunction").

The Eighth Circuit, however, squarely rejected this position. Whether the FCC *may* choose to cede some authority over these issues back to the states in the future has no bearing on whether the states have authority to regulate Vonage's service *today*. The *Vonage Declaratory Ruling* establishes clearly that the states are precluded from imposing 911 regulation on Vonage. And because the validity of the FCC's order can only be challenged on direct appeal, *see* PSC

Opp. Br. at 9 and n.5; *Vonage*, 394 F.3rd at 569, speculation about what the FCC may choose to do in the future has no bearing on Vonage's entitlement to permanent injunctive relief today.

Thus, Vonage agrees with the PSC that "[t]he court should not attempt to translate as yet unknown FCC requirements into a permanent injunction." PSC Opp. Br. at 8. In affirming the permanent injunction, the Eighth Circuit adopted that view, as well. As that court observed, "[i]n the event that MPUC or another aggrieved party prevails in a Hobbs Act petition for review, MPUC remains free to challenge the injunction at that time." *Vonage*, 394 F.3rd at 569. The same applies equally to the permanent injunction of the *PSC Order* at issue here. This proceeding, however, should not remain open pending that possibility.

The PSC's attempt to subject Vonage to its "network reliability" regulation is no more supportable than its attempt to impose 911 requirements. First, as with 911, the "network reliability" obligations are clearly conditions of entry, precluded by the *Declaratory Ruling*. *See* New York CPCN Application, PSC Opinion No. 96-13 obligations, ¶ (b)(viii) (Carney Decl. Exh. 4) (requirement that applicants comply with service quality and "infrastructure monitoring requirements"). The PSC brief offers no evidence or argument to the contrary.

Second, the PSC's claim – raised here for the first time – that "one aspect" of [network] reliability is financial," and that oversight of Vonage is necessary to assure that Vonage will adequately "compensate network providers for the continued availability of their facilities," PSC Opp. Br. at 12, is precisely the kind of economic regulation the FCC preempted in the *Vonage Declaratory Ruling*. As the FCC explained,

> Internet-based services such as DigitalVoice are capable of being accessed only via broadband facilities, *i.e.*, advanced telecommunications capabilities under the 1996 Act, thus driving consumer demand for broadband connections, and consequently encouraging more broadband investment and deployment consistent with the goals of section 706.…

> Allowing Minnesota's order to stand would invite similar imposition of 50 or more additional sets of different economic regulations on DigitalVoice, which could severely inhibit the development of this and similar VoIP services.

*Declaratory Ruling* ¶¶ 36-37 (internal footnotes omitted).

And just as with the 911 issues discussed above, the fact that the FCC has deferred final resolution of intercarrier compensation issues to another day does not provide an "open door" through which state regulators may march. *See id.* ¶ 44.[5] Indeed, as the FCC explained, one reason it "decided the jurisdictional question for Vonage's [service] here," was to assure that states not attempt to fill the void until "*we … determine final rules for the variety of issues discussed in the IP-Enabled Services Proceeding*," including "universal service, intercarrier compensation, and consumer protection." *Id.* (emphasis added). Thus, the FCC made clear that by preempting the field on these issues, the states' future role, if any, will be decided in subsequent FCC proceedings. Thus, a permanent injunction of the *PSC Order* is perfectly in accord with the regulatory posture established by the FCC.

**B.     <u>The PSC's Offer to Consider Waivers Does Not Save Its Order</u>**

Finally, the PSC renews its claim that its willingness to entertain waiver requests saves its otherwise invalid order. As the Court has already recognized, this argument fails for several distinct reasons. First, the very (erroneous) assertion of the state's jurisdiction, and the associated requirement that Vonage respond thereto, constitutes irreparable injury from which Vonage is entitled to relief. This is the essential holding of Judge Frankfurter's decision in *Public Utilities Comm'n of Ohio v. United Fuel Gas Co.*, 317 U.S. 456 (1943), which the Court

---

[5] Likewise, the preservation of state authority over "consumer protection" issues does not pave the way for pervasive state regulation of Vonage's service. To the extent that consumers have concerns about Vonage's marketing, billing or other practices, they are free to raise them in the ordinary course. State public utility regulation of Vonage's service, however, is squarely preempted.

recognized remains good law today. And echoing *United Fuel Gas*, subsequent courts have found that the existence of a "safety valve" that permits a variance or waiver from a generally applicable regulatory scheme does not excuse an otherwise overbroad exercise of regulatory power. *See Association of Oil Pipe Lines v. F.E.R.C.*, 281 F.3d 239, 244 (D.C. Cir. 2002); *Time Warner v. FCC*, 56 F.3d 151 (D.C. Cir. 1995); *AllTel Corp. v. FCC*, 838 F.2d 551, 561 (D.C. Cir. 1988) (an agency "cannot save an irrational rule by tacking on a waiver procedure").

Moreover, a waiver is not the *fait accompli* the PSC's lawyers suggest in their briefs. Indeed, they took exactly the opposite view at the hearing before this Court. *See* Tr. at 13:17-18 ("It might be the commission will decide to grant Vonage waivers. We don't know yet because we haven't seen a filing …"). Indeed, the PSC's own description of the authority it seeks over Vonage suggests that waivers may be unlikely:

> the fundamental concern we have now is a jurisdictional one: Can we make Vonage file, can we ask it for information, can we compel it to tell us what its plans are, are we in a position to decide if in fact New York requirements are being satisfied or not?

*Id.* at 13:22-25. In finding that Vonage was likely to prevail on the merits of its preemption claim, the Court found that the answer to each of Mr. Feinberg's rhetorical questions was likely no, a finding that was confirmed when the FCC issued its *Vonage Declaratory Ruling*. Accordingly, the *PSC Order* must be permanently enjoined, the possibility of waivers notwithstanding.

## III.
## CONCLUSION

It is plain that the FCC's *Vonage Declaratory Ruling* preempts the *PSC Order* in its entirety, including the PSC's attempt to regulate Vonage's 911 offering and subject Vonage to the state's "network reliability" requirements. That, alone, is sufficient grounds for the Court to grant Vonage's motion to convert the preliminary injunction into a permanent injunction. And given that Vonage does not oppose incorporating its commitment to continue providing its current 911 service into the terms of the permanent injunction, the PSC can have no real objection to Vonage's Motion. It should, therefore, be granted.

Respectfully submitted,

SWIDLER BERLIN LLP

By: /s Christopher J. Carney (electronically filed)
Ky E. Kirby
William B. Wilhelm
Michael C. Sloan
Christopher J. Carney (CC 0388)

3000 K Street
Suite 300
Washington D.C. 20007
(202) 424-7500

*Attorneys for Vonage Holdings Corporation*

Dated: February 25, 2004
       New York, New York