UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

| | | |
|---|---|---|
| VONAGE HOLDINGS CORPORATION, | : | |
| | : | 04 Civ. 4306 (DFE) (ECF CASE) |
| Plaintiff, | : | |
| | : | |
| -against- | : | |
| | : | |
| THE NEW YORK STATE PUBLIC SERVICE | : | **SUPPLEMENTAL** |
| COMMISSION, and WILLIAM M. FLYNN, | : | **DECLARATION OF** |
| LEONARD A. WEISS, THOMAS J. DUNLEAVY, | : | **CHRISTOPHER J. CARNEY** |
| and NEAL N. GALVIN in their official capacities | : | |
| as the Commissioners of the New York State | : | |
| Public Service Commission and not as individuals, | : | |
| | : | |
| Defendants. | : | |

-------------------------------------------------------------X

CHRISTOPHER J. CARNEY, under penalty of perjury, hereby declares:

1.    I am a member of the Bar of this Court and an associate with the law firm of Swidler Berlin, LLP, attorneys for Plaintiff Vonage Holdings Corp. ("Vonage"). I respectfully submit this supplemental declaration in support of Plaintiff's Motion for Permanent Injunctive Relief.

2.    Attached hereto as Exhibit 5 is the Order of the Minnesota Public Utilities Commission titled, Finding Jurisdiction and Requiring Compliance, *Complaint of the Minnesota Dept. of Commerce against Vonage Holding Corp. Regarding Lack of Authority to Operate in Minnesota*, Docket No. P-6214/C-03-108 (Minn. Pub. Utils. Comm'n Sep. 11, 2003).

3.    Attached hereto as Exhibit 6 is the Dec. 1, 2004 Letter from Michael Hatch, Attorney General for the State of Minnesota to Michael E. Gans, Clerk of the Court for the U.S. Court of Appeals for the Eighth Circuit, submitted as a supplemental brief in the Eighth Circuit proceeding.

4.  Attached hereto as Exhibit 7 are excerpts from the corrected transcript of the hearing conducted by the Court in this matter on June 30, 2004.


I declare under penalty of perjury that the foregoing is true and correct.

Executed February 25, 2004

Washington D.C.

Christopher J. Carney (CC0388)

BEFORE THE MINNESOTA PUBLIC UTILITIES COMMISSION

| | |
|---|---|
| LeRoy Koppendrayer | Chair |
| Marshall Johnson | Commissioner |
| Phyllis A. Reha | Commissioner |
| Gregory Scott | Commissioner |

In the Matter of the Complaint of the
Minnesota Department of Commerce Against
Vonage Holding Corp Regarding Lack of
Authority to Operate in Minnesota

ISSUE DATE:  September 11, 2003

DOCKET NO.  P-6214/C-03-108

ORDER FINDING JURISDICTION AND
REQUIRING COMPLIANCE

## PROCEDURAL HISTORY

On July 15, 2003, the Department of Commerce (DOC) filed a complaint against Vonage
Holdings Corporation (Vonage) alleging, among other things, that Vonage has offered and
continues to furnish telephone services in Minnesota, including local exchange service and long
distance service, without first obtaining a certificate under Minn. Stat. §§ 237.16 and 237.74, for
those services.  The complaint further alleges that the manner in which Vonage provides local
service violates Minnesota law in that it fails to provide adequate 911 service.  The complaint
includes a request for temporary relief.

On July 23, 2003, Vonage filed its response to the DOC's request for temporary relief.

On July 30, 2003, Vonage filed its Answer and Motion to Dismiss. MCI filed a Petition to
Intervene and comments.

On August 1, 2003, the Commission issued its ORDER DENYING TEMPORARY RELIEF.

On August 6, Motorola Inc. (Motorola) filed comments supporting Vonage's Motion to Dismiss.

On August 8, 2003 the DOC filed its reply.

On August 11, 2003, the Minnesota Independent Coalition (MIC) filed a Petition to Intervene and
initial comments.

AT&T , Level 3 Communications, Inc. (Level 3) and Sprint Communications Company L.P. and
Sprint Minnesota, Inc. (jointly Sprint) appeared as participants in this matter.

On August 13, 2003, the matter came before the Commission.

## FINDINGS AND CONCLUSIONS

I.    **Background**

A.    **The DOC's Complaint**

The DOC's complaint alleged that:

- Vonage was providing telecommunications service in areas served by local exchange carriers with 50,000 or more subscribers in Minnesota, without having first obtained a certificate of authority to do so under Minnesota Statutes and Rules;[1]
- Vonage had not submitted a plan detailing how it would provide 911 service to its customers consistent with applicable law;[2]
- Vonage had not remitted any 911 fees to the Department of Administration;[3]
- Vonage had failed to file any Commission-approved rate, toll, charge or price list for any service, as required. [4]

The Complaint asked the Commission to impose the following remedies:

- Order Vonage to fully comply with all Minnesota Statutes and Rules relating to the offering of telephone service in Minnesota;
- Order Vonage to remit 911 fees to the Minnesota Department of Administration for the period when it served Minnesota customers but did not pay such fees;
- find that Vonage knowingly and intentionally violated Minnesota Rules and Statutes;
- assess penalties the Commission deems appropriate under Minn. Stat. § 237.461 or .462; and
- grant other just and reasonable relief.

---

[1] Minn.Stats. § 237.16, subd. 1(b) and § 237.74, subd. 12 and Minn. Rules part 7812.0200, subp. 1.

[2] Minn. Rules part 7812.0550, subp. 1.

[3] Minn. Stat. § 237.49.

[4] Minn. Stat. § 237.07.

2

**B.**    **Applicable Law**

Minn. Stat. § 237.01, subd.7 defines "telephone company" as follows:

> "Telephone company," means and applies to any person, firm, association or any corporation, private or municipal, owning or operating any telephone line or telephone exchange for hire, wholly or partly within this state, or furnishing any telephone service to the public.

Minn. Stat. § 237.16, subd. 1 (b) gives the Commission the following authority:

> No person shall provide telephone service in Minnesota without first obtaining a determination that the person possesses the technical, managerial, and financial resources to provide the proposed telephone services and a certificate of authority from the commission under terms and conditions the commission finds to be consistent with fair and reasonable competition, universal service, the provision of affordable telephone service at a quality consistent with commission rules, and the commission's rules.

The statute does not specifically define telephone service.

In Minnesota Microwave, Inc. v. Public Service Commission, 291 Minn. 241, 190 N.W.2d 661 (1971), the Minnesota Supreme Court considered for the first time whether a private company providing unidirectional, closed-circuit, microwave facilities was subject to the jurisdiction of the Commission as a "telephone company" or a supplier of "telephone service." The court stated:

> [W]hether appellant is supplying "telephone service" is a question of law to be determined on the basis of the operative facts determined by the commission.

**II.**    **Position of the Parties**

**A.**    **Vonage**

Vonage agreed that it has not applied for certification, not submitted a 911 plan to the Commission, not remitted any 911 fees to the Department of Administration and not filed any tariffs in Minnesota. However, Vonage argued that it was not offering telephone service in Minnesota, and therefore was not subject to certification requirements or the other requirements cited.

It argued that its service was not a "telephone service" within the statutory meaning of that term. Rather, Vonage argued that it was an "information services" provider and, as such, was not subject to the jurisdiction of the Commission. Because it did not provide telephone services, it argued, it was not in violation of any Minnesota Statutes or Rules.

It argued that while the function that Vonage provides is similar to that provided by traditional telephone companies, the manner in which Vonage provides its service is significantly different. It stated that it does not provide its customers with facilities for communication; rather, the customers must obtain access services independently from an Internet Service Provider (ISP). It argued that its provision of Voice Over Internet Protocol (VOIP) service does not originate and terminate calls in a format that is compatible with the traditional, circuit-switched telephone network.

Further, Vonage's service requires the installation of a Multimedia Terminal Adaptor (MTA) on the customer's premises. When a Vonage customer originates a call the MTA allows Vonage customers to convert analog voice signals into digital Internet Protocol (IP) data packets that travel over the Internet in an asynchronous mode. The MTA is also used by Vonage subscribers to convert digital IP packets that travel over the Internet into analog voice signals when receiving calls.

Vonage requested that the Commission dismiss the complaint. It argued that the issue of the classification of VOIP services is an issue of first impression in Minnesota and would be better addressed in a workshop open to all interested parties, rather than in this complaint. It requested that the Commission hold such a workshop, arguing that it would allow the Commission to gather facts concerning the services provided in Minnesota and obtain a better understanding of the technology used to provide VOIP services. It would also permit the development of a full record on the policy implications of VOIP. Vonage indicated that a number of other states have opened VOIP workshops and urged this Commission to do the same.

Vonage also argued that the Commission's jurisdiction under Minnesota statutes may be subject to preemption to the extent that state law requirements are inconsistent with federal law or rules. It argued that the Federal Communications Commission (FCC) is considering VOIP issues in several open dockets and that this Commission should not impose restrictions on VOIP traffic until the FCC takes action on these matters.

**B.     DOC**

The DOC argued that Vonage was offering a telecommunications service in Minnesota. The Commission has an obligation to regulate public interest and safety issues relating to such services in Minnesota. There has been no federal preemption at this time. Although the FCC may be looking at similar issues, it is possible that the FCC may never reach this specific issue.

The DOC argued that the FCC outlined several factors to examine in determining whether Internet Protocol telephony is a telecommunications service: 1) the provider itself holds itself out as providing voice telephony service; 2) the service allows use of Customer Premises Equipment (CPE) similar to the CPE necessary to place an ordinary touch-tone call over the public switched network; 3) the service allows the customer to call telephone numbers assigned in accordance with

the North American Numbering Plan (NANP); 4) the service transmits customer information without net change in form or content.[5]

The DOC argued that Vonage holds itself out as offering telephone service. It indicated that Vonage represents to its customers on its website that it is offering "phone service" and also states that its service "is like the home phone service that you have today–only better!" and "replaces your current phone company." [6]  Vonage also represents that its service can be used with any touch-tone phone, which, the DOC argued, is considered standard CPE for telephone service. Further, the DOC argued that the service offered by Vonage allows its end users to call telephone numbers assigned in accordance with NANP. Also, the DOC indicated that the FCC has stated that phone-to-phone IP telephony transmits customer information without a net change in form or content.[7]  The DOC argued that Vonage's service meets the criteria set forth by the FCC, above, and supports a determination that the service is a telecommunications service and not an information service.

Further, the DOC, in response to Vonage's argument that its IP telephony service was information service under the federal statute,[8] argued that Vonage markets its Digital Voice service on its website as a telecommunications service and nowhere mentions its service as an informational service.  Further, the DOC noted that the FCC, in its Report to Congress[9], discounted the argument that voice communications using IP telephony, of the type used by Vonage, fell under the definition of information services.

The DOC opposed Vonage's request for a VOIP workshop.  The DOC argued that if the Commission were not to assert jurisdiction, the issue of jurisdiction could go to a lead Commissioner or as part of a contested case procedure for a recommendation.  It argued that while workshops may work well to explore how some issues should best proceed, it would be awkward for determining jurisdictional issues.

---

[5] See *In the Matter of Federal-State Joint Board on Universal Service, Report to Congress,* 13FCC Rcd 11501 (1998).

[6] See www.vonage.com/learn_tour.php.

[7] See footnote 5, above, at fn 188.

[8] 47 U.S.C. § 153(20).

[9] See footnote 5, above.

The DOC further challenged Vonage's statement that VOIP is an issue of first impression for this Commission.  The DOC indicated that the Commission has granted certificates of authority to other VOIP providers.[10]  The difference here is that Vonage is refusing to comply with certification and other requirements.

### C.    RUD-OAG

At hearing, the Residential and Small Business Utilities Division of the Office of the Attorney General (RUD-OAG) agreed with the DOC's position.

It argued that the service provided by Vonage was telephone service and Commission regulation was consistent with the Commission's duty to ensure adequate and reliable phone service.  It indicated that the legislature has not carved out an exception for this service.

Further, it argued that the possibility of preemption at a later date should not stop the Commission from fulfilling its regulatory obligations at this time.

### D.    MCI

MCI argued that in order for the Commission to move forward on the complaint brought by the DOC, the Commission must make a threshold finding that it has jurisdiction over the complaint. In order for the Commission to determine whether the service provided by Vonage constitutes a "telecommunication service" under 47 U.S.C. § 153(43) or an "information service" under 47 U.S.C. § 153 (20) will require a detailed and thorough factual record.  This Commission must address this threshold jurisdictional issue before it takes any other action on the complaint.

MCI recommended that the Commission dismiss the complaint, open an investigation to determine whether the service is a telecommunications service or an information service under the above statutes and refer the specific question of whether the Commission has authority to regulate the service offered by Vonage for contested case proceedings.

MCI argued that any decision made by the Commission regarding the regulation of a VOIP service will affect Universal Service Fund issues, intercarrier compensation issues and carrier obligations under § 251 of the Federal Telecommunications Act of 1996 (the Act).[11]  It will affect other parties than those that are the subject of this complaint.

---

[10] See *In the Matter of a Request by SurfTel, Inc. for Approval for a Certificate of Authority to Provide Facilities Based Interexchange Services*, Docket No. P-5782/NA-99-588, Commission Order Approving Application, June 29, 1999.

[11] Pub.L.No. 104-104, 110 Stat. 56 (codified as amended in scattered sections of title 47, United Stated Code).

### E.    Motorola

Motorola supports Vonage's motion to dismiss the complaint.  It argued that the Commission should dismiss the complaint and refrain from adopting any rules with respect to VOIP services until the FCC has had an opportunity to determine what federal or state regulations, if any, may be imposed on such services.

Motorola indicated that it is particularly interested in this proceeding because Vonage is one of many companies for which it is developing VOIP products.  It has an interest in seeing a coherent, national regulatory framework develop.  Further, Motorola believes that regulators should refrain from extending existing regulations to novel advanced systems and technologies unless there is evidence that marketplace constraints are inadequate to promote competition and consumer welfare.

### F.    MIC

MIC supported the position of the DOC. MIC argued that the proper focus for the Commission is on the service offered to customers, not the technology used to provide that service.  It argued that Vonage's service was a direct replacement for local phone service and, as such, was within the meaning of Minnesota Statutes and Rules.

Although Vonage may provide some non-telephone services, such as some information services, MCI argued that this does not exempt Vonage from complying with Minnesota Statutes and Rules with respect to the services that are telephone services.  Further, Minnesota law does not provide any exemption from its treatment of telephone service based on the technology used.  There is no exemption in Minnesota law for VOIP services.

Finally, MIC argued that there is no federal authority establishing preemption under these facts.

### G.    AT&T

AT&T indicated its concern that the relief sought by the DOC has broad policy implications for the telecommunications industry.  AT&T questioned the appropriateness of the Commission contemplating these broad policy issues based on an isolated fact pattern involving the services offered by one company.

### H.    Level 3

Level 3 urged the Commission to consider unintended consequences of any decision that, in the context of a single service provider and single service application, broadly addresses VOIP technologies and service providers that offer VOIP products.  Any order addressing VOIP services should narrowly evaluate the specific attributes of a particular service to determine how it fits within the regulatory framework.

## I.    Sprint

Sprint stated that several of the disputed issues could affect Sprint's interests, especially with regard to intercarrier compensation issues that may arise with VOIP calls.

## III.    Commission Action

The threshold question facing the Commission is whether the Commission has jurisdiction to address the DOC's complaint.  This is a legal issue under Minnesota law, not a factual dispute.  As noted by the court in the <u>Minnesota Microwave</u> decision, this question is resolved by applying the facts in this case to the relevant Minnesota law.  It is not necessary for the Commission to determine whether VOIP service is a telecommunications service or an informational service under federal law, and the Commission will not do so.

Further, the Commission finds that the facts of this case are well set forth in the record and there are no material facts in dispute that require the matter be sent for contested case proceedings.

To address this matter, the Commission examined the service that Vonage provides.  The Commission finds that Vonage offers unlimited local and long distance calling as well as Caller ID, Call Waiting and Voicemail.  Vonage itself holds itself out as providing all-inclusive home phone service and advertises that it replaces a customer's current phone company.

With the Vonage service the customer uses an ordinary touch-tone phone to make calls and carry on conversations.  The customer must have an ISP and a computer modem.  Although the phone is plugged into an MTA router which, in turn, is plugged into the modem, the consumer is being provided with service that is functionally the same as any other telephone service.  Further, the Vonage service intersects with the public switched telephone network.

The Commission finds that what Vonage is offering is two-way communication that is functionally no different than any other telephone service.  This is telephone service within the meaning of Minn. Stat. § § 237.01, subd.7, and 237.16, subd. 1(b) and is clearly subject to regulation by the Commission.

Further, although there have been arguments that other states and the FCC are addressing the status of the VOIP technology, the Commission finds that, at this time, there is no evidence that supports the claim that this issue has been decided.  Nor is there any federal law that preempts state law with respect to telephone services provided using VOIP technology.  Further, the Minnesota Legislature has not exempted services provided by VOIP technology from regulation.

For the above reasons, the Commission finds it has jurisdiction over Vonage as a company providing telephone service in Minnesota, and the Commission will require that Vonage comply with Minnesota Statutes and Rules, including certification requirements and the provisioning of 911 service.

The Commission will so order.

## **ORDER**

1.      Vonage shall fully comply with all Minnesota Statutes and Rules relating to the offering of telephone service in Minnesota within 30 days of this Order.

2.      Vonage shall remit 911 fees to the Minnesota Department of Administration for the period when it served Minnesota customers but did not pay such fees.

3.      This Order shall become effective immediately.

BY ORDER OF THE COMMISSION


Burl W. Haar
Executive Secretary

(S E A L)

This document can be made available in alternative formats (i.e., large print or audio tape) by calling (651) 297-4596 (voice), (651) 297-1200 (TTY), or 1-800-627-3529 (TTY relay service).

December 1, 2004

Mr. Michael E. Gans, Clerk of Court
U. S. Court of Appeals for the Eighth Circuit
Thomas F. Eagleton Court House
111 South Tenth St., Room 24.329
St. Louis, MO  63102

 **Re:** ***Vonage Holdings Corporation v. The Minnesota Public***
    ***Utilities Commission, et al.***
    **U.S. Court of Appeals File No. 04-1434**

Dear Mr. Gans:

 Please accept this original letter and three copies submitted herewith as the Supplemental Memorandum from the Appellants Minnesota Public Utilities Commission and its Commissioners named in their official capacities (collectively "MPUC").  The parties were directed to submit a Supplemental Memorandum per this Court's Order dated November 17, 2004.  Pursuant to a conversation with your office's deputies, I was informed that this Supplemental Memorandum may be submitted in letter form, instead of a brief, so long as the font size and type remained consistent with that of our previously filed briefs.

 During the pendency of this appeal, the FCC released its November 12, 2004, Memorandum Opinion and Order *In the Matter of Vonage Holdings Corporation Petition for Declaratory Ruling Concerning an Order of the Minnesota Public Utilities Commission*, WC Docket No. 03-211 ("*FCC Order*").  The *FCC Order* provides in part:

For the reasons set forth above, we preempt the *Minnesota Vonage Order*. As a result, the Minnesota Commission may not require Vonage to comply with its certification, tariffing or other related requirements as conditions to offering DigitalVoice in that state. Moreover, for services having the same capabilities as DigitalVoice, the regulations of other states must likewise yield to important federal objectives. To the extent other entities, such as cable companies, provide VoIP services, we would preempt state regulation to an extent comparable to what we have done in this Order.

Accordingly, IT IS ORDERED, pursuant to sections 1, 2, 3, 4(i) and 303(r) of the Communications Act of 1934, as amended, 47 U.S.C. §§ 151-53, 154(i), 303(r), and section 1.2 of the Commission's rules, 47 C.F.R. § 1.2, that Vonage's Petition for Declaratory Ruling IS GRANTED *in part* and the *Minnesota Vonage Order* IS PREEMPTED.

*FCC Order* at ¶46-47 (emphasis added).

## I.    THE HOBBS ACT.

The *FCC Order* impacts this appeal because it purports to preempt the very Minnesota order under review in this case. As the FCC stated in its letter to the court on November 9, 2004, the exclusive means of obtaining judicial review to assess the validity of an FCC order is pursuant to the Hobbs Act. *See generally* 28 U.S.C. §§ 2342(1), 2349(a); 47 U.S.C. § 402(a).

There is no dispute that the *FCC Order* is reviewable under 47 U.S.C. § 402(a). Moreover, there is no reasonable dispute that the FCC Order is a final order for purposes of the procedural path established by the Hobbs Act. However, this Court (albeit not presently a "Hobbs" court) maintains jurisdiction and authority over the District Court injunction presently at issue on appeal.

This Court recently reiterated the distinction between a direct challenge to the *validity* of an FCC order, and merely a request to *interpret* an order. *See Rural Iowa Independent Telephone Association v. Iowa Utilities Board, et al*, 362 F.3d 1027, 1030 (8th Cir 2004). As the FCC noted at page 2 of its letter to the court of

November 9, 2004: ". . . unless the declaratory order is overturned by a Court of Appeals acting pursuant to the Hobbs Act, the order has the force of law and precludes the MPUC from exercising regulatory authority over Vonage *to the extent provided in the order*."  (Emphasis added.)  Therefore, while this Court may presently be precluded from addressing any issue concerning the validity of the *FCC Order*, the Court may, in all respects, determine which issues have not been addressed by the FCC, as well as apply the *FCC Order* as it relates to the district court order below.

## II.  THE FCC LEAVES OPEN MANY ISSUES THAT ARE NOT ADDRESSED BY THE *FCC ORDER*.

The FCC makes clear in its order that it did not resolve all issues presented to it by Vonage's Petition for Declaratory Relief, some of which were also issues raised in this appeal.  The *FCC Order* provides in part:

> We express no opinion here on the applicability to Vonage of Minnesota's general laws governing entities conducting business within the state, such as laws concerning taxation; fraud; general commercial dealings; and marketing, advertising, and other business practices.  We expect, however, that as we move forward in establishing policy and rules for DigitalVoice and other IP-enabled services, states will continue to play their vital role in protecting consumers from fraud, enforcing fair business practices, for example, in advertising and billing, and generally responding to consumer inquiries and complaints.

> We plan to address these questions in our *IP-Enabled Services Proceeding* in a manner that fulfills Congress's directions "to promote the continued development of the Internet" and to "encourage the deployment" of advanced telecommunications capabilities.

*FCC Order* at ¶¶1-2.  *See also FCC Order* at ¶14, fn. 47.

> We emphasize that while we have decided the jurisdictional question for Vonage's DigitalVoice here, we have yet to determine final rules for the variety of issues discussed in the *IP-Enabled Services Proceeding*. While we intend to address the 911 issue as soon as possible, perhaps even separately, we anticipate addressing other critical issues such as universal service, intercarrier compensation, section 251 rights and obligations, numbering, disability access, and consumer protection in that proceeding.

*FCC Order* at ¶44 (footnotes omitted). Finally, FCC Commissioners themselves made clear that this *FCC Order* does not resolve many of the most important issues raised by this appeal. As this Court pointed out at oral argument, Commissioner Adelstein expressed his concern that the order falls short in its failure to account in a meaningful way for essential policy issues, including universal service, public safety, law enforcement, consumer privacy, disabilities access, and intercarrier compensation, and the effect of the preemption issued in the order. *See* Concurring Statement of Jonathan S. Adelstein, *FCC Order*, p. 40-41.

The *FCC Order* purports to preempt the MPUC Order because of its determination that Vonage's service is an interstate service. The FCC expressly stated that it was not determining what was a central issue in this appeal, whether Vonage's service is classified as an "information service" or a "telecommunications service" under the Telecommunications Act. *FCC Order* ¶14. Thus, beyond the "interstate" conclusion and its attendant assertion of preemption of the MPUC Order, the *FCC Order* does little more.

## III.  THIS COURT SHOULD DO NOTHING UNTIL THE TIME TO INITIATE A HOBBS ACT CHALLENGE TO THE *FCC ORDER* EXPIRES.

The MPUC retains the right to challenge the validity of the *FCC Order* pursuant to the applicable Hobbs Act procedures.  It may do so by filing a petition against the FCC in this Eighth Circuit.  *See* 28 U.S.C. § 2343.  If the MPUC decides to mount such a challenge, it would at that time request that the Hobbs Act appeal and the presently pending appeal be consolidated, thereby allowing this Court to consider simultaneously both the validity of the *FCC Order* purporting to preempt the MPUC Order, and then the substantive legal issues raised with respect to the district court's grant of the permanent injunction.  The MPUC has 60 days after the *FCC Order* was entered within which to file a petition to review its validity.  *See* 28 U.S.C. § 2344.  This Court should afford the MPUC the ability to make that determination, and if such a challenge is initiated, consider the appeals in tandem.

This Court should consider the procedural alternatives advocated hereinafter only in the event that the MPUC does not initiate a Hobbs Act appeal of the *FCC Order* to this Circuit.

## IV.  THE PERMANENT INJUNCTION ISSUED BY THE DISTRICT COURT MUST BE VACATED, AND VONAGE'S REQUEST FOR ONGOING INJUNCTIVE RELIEF BE DENIED.

At the outset of oral argument, it was suggested by the Court that the district court order should be vacated in its entirety and the parties left to comply with the newly issued *FCC Order*.  The MPUC agrees.  The threat of irreparable harm is the cornerstone as to why courts employ the strong arm of equity to impose injunctive relief.  *See Dataphase Sys., Inc. v. CL Sys., Inc.,* 640 F.2d 109, 114 (8th

Cir. 1981) (establishing factors for determining whether injunctive relief is appropriate).

An injunction is an extraordinary and drastic remedy not to be imposed lightly. *See Michigan Bell Telephone Co. d/b/a Ameritech Michigan, Inc. v. MFS Intelenet of Michigan, Inc.*, 16 F.Supp.2d 828, 831 (W.D. Mich. 1998), citing *Mazurek v. Armstrong*, 520 U.S. 968 (1997). The party requesting injunctive relief bears the "complete burden of proving" that an injunction should be granted. *See Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

The burden remains with Vonage Holdings Corporation ("Vonage") to establish the continued need for permanent injunctive relief in light of the *FCC Order* granting Vonage's request to preempt the very MPUC Order also subject to the district court's injunction. In issuing injunctive relief, the district court concluded that the basis for irreparable harm was that Vonage would allegedly be forced to stop serving customers in Minnesota and stop soliciting new business if it had to comply with the MPUC Order, thereby preventing it from staying the leader of its business niche and damaging its reputation and goodwill. (SA 323).[1] The MPUC is now precluded by the *FCC Order* from enforcing its order as a condition to Vonage offering Digital Voice in Minnesota. To the extent there ever was a threat to Vonage's ability to offer its service in Minnesota given the MPUC Order, there simply is no longer *any* such danger to Vonage.[2] Therefore there is no longer a basis for a continuing injunction.

There is no evidence whatsoever that the MPUC will flout the FCC and seek to enforce its state order in spite of the *FCC Order*. Between the time of oral argument and this supplemental filing, the MPUC has on its own motion modified

---

[1] "SA" refers to Appellants' Separate Appendix on file with the court.

[2] The MPUC does not concede that Vonage ever established irreparable harm.

its prior stay order to now include a recognition of and respect for the *FCC Order* regardless of whether any court-imposed injunctions exist.

> Regardless of whether any court-issued injunction is in place, the Commission's ORDER FINDING JURISDICTION AND REQUIRING COMPLIANCE of September 11, 2003 is hereby stayed until such time, and to the extent, that the FCC Order is subsequently modified by Congress, the FCC, or by a Court of appropriate jurisdiction pursuant to 47 U.S.C. § 2342 (commonly referred to as the Hobbs Act).

MPUC Order Staying Order of September 11, 2003 (attached hereto as Exhibit 1). This action by the MPUC makes clear that elimination of the permanent injunction will not place Vonage in any jeopardy. Any claim of Vonage asserting a need for the protection of permanent prospective equitable relief has been eliminated.

As indicated by the FCC at oral argument, any party injured by a failure to obey an FCC order may apply to a district court for enforcement of that order pursuant to 47 U.S.C. § 401(b). Such enforcement may be by "writ of injunction or other proper process" upon a finding that the order was (1) regularly made; (2) duly served; (3) disobeyed; and that (4) a party was thereby injured. *Id.* In fact, this Court has concluded that the burden for enforcing an FCC order under 401(b) may be *less* than one seeking normal injunctive relief, and that Section 401(b) may be the only relief now available to Vonage. *See Southwestern Bell Telephone Co. v. Arkansas Public Service Commission,* 738 F.2d 901, 908 (8th Cir. 1984) judgment vacated on other grounds, *Arkansas Public Service Commission v. Southwestern Bell Telephone Co,* 476 U.S. 1167 (1986) (holding that only the statutory criteria need be satisfied and that the traditional equitable standard is not applicable where there is a clear violation of a self-executing order of an administrative agency, and holding that Congress has specifically created in Section 401(b) "an exclusive mechanism for enforcing FCC orders").

Because of the *FCC Order* and the newly modified MPUC stay of its order, there is no danger that action will be taken by the MPUC to attempt to impermissibly enforce its order against Vonage. The district court injunction is now superfluous. This Court should, as it suggested at oral argument, vacate the permanent injunction.

## V.    THE NEW MPUC STAY ORDER RENDERS VONAGE'S CLAIM FOR CONTINUED INJUNCTIVE RELIEF MOOT.

It is well-settled that a claim for relief might become moot if subsequent events make it clear that the allegedly wrongful behavior could not reasonably be expected to recur again in the future.

> It is generally held that the voluntary cessation of allegedly illegal conduct does not make a case moot if there is a 'reasonable expectation' that the wrong will be repeated. However, when the actions questioned are those of the government, [a] probability of recurrence must be coupled with a certainty that the impact will fall on the same objecting litigants.

*State Highway Commission of Missouri v. Volpe*, 479 F.2d 1099, 1106 (8th Cir. 1973) (citations omitted). Given the action of the MPUC in staying its order in light of the *FCC Order*, there is no reasonable expectation or probability that enforcement of the MPUC Order against Vonage will occur as long as the *FCC Order* remains in full effect. As such, Vonage's claim for continued prospective relief is moot.

While Vonage's claim of ongoing harm is now moot, this Court should not simply dismiss the appeal. To do so may result in a later claim that such action is, in effect, an affirmation of the district court's legal conclusions or that the district court order has some form of res judicata effect. *See, e.g., Wight v. Montana-Dakota*, 299 F.2d. 470 (9th Cir. 1962). The "usual procedure" when a claim

becomes moot on appeal is "to vacate the judgment below and remand with directions to dismiss the case. The reason for this is precisely to avoid giving preclusive effect to a judgment never [actually] reviewed by an appellate court." *New York* Retirement *System v. Dole Food*, 969 F.2d 1430, 1435 (2nd Cir. 1992). Vacating the permanent injunction below and dismissing the complaint prevents a party from claiming that the district court decision below somehow has any res judicata effect.

**VI.  IF THIS COURT DOES NOT VACATE IN ITS ENTIRETY THE PERMANENT INJUNCTION AND DISMISS VONAGE'S COMPLAINT, THE COURT SHOULD VACATE THE PERMANENT INJUNCTION AND IN ITS PLACE DIRECT THE IMPOSITION OF A LIMITED PRELIMINARY INJUNCTION PENDING THE FCC'S CONCLUSION OF ITS IP-ENABLED SERVICES DOCKET.**

The FCC advocated in its *amicus* brief that this Court may vacate the current permanent injunction and remand the matter to the district court while awaiting the conclusion of the FCC's more comprehensive rule-making docket. *See In the Matter of IP-Enabled Services*, WC Docket No. 04-36, Notice of Proposed Rulemaking, FCC 04-28 (released March 10, 2004). (FCC Brief, p. 28.) This procedure has been utilized by this Court in the past. *See*, *e.g., Iowa Beef Processors, Inc. v. Illinois Central Gulf RR Co.*, 685 F.2d 255 (8th Cir. 1982). The FCC noted that if this Court were to do so, it may be appropriate to replace the district court's permanent injunction with a temporary injunction pending the FCC's conclusions in that docket. (FCC Brief, p. 28-29.)

For the reasons mentioned above, there is no need for any continuing federal court injunction. However, if this Court does not vacate the permanent injunction and dismiss Vonage's claims, the permanent injunction must be vacated and a limited preliminary injunction placed in its stead.

A limited preliminary injunction would be appropriate instead of the present permanent injunction for several reasons. First, the *FCC Order* indicates that after it concludes its IP-Enabled Services docket, the FCC may determine that state utility commissions will play a role in regulating various aspects of Vonage's services. *See FCC Order* ¶14, fn. 46 (indicating that its IP-Enabled Services docket ". . . will resolve important regulatory matters with respect to IP-enabled services generally, including services such as DigitalVoice, concerning issues such as the Universal Service Fund, intercarrier compensation, 911/E911, consumer protection, disability access requirements, *and the extent to which states have a role in such matters*." (Emphasis added.)). To the extent that the FCC concludes that states play any role in regulating Vonage's service, the existing permanent injunction is overbroad.

Second, Congress had draft legislation introduced earlier this year concerning the subject of Voice Over Internet Protocol. Congress may also choose to statutorily define the role of state utility commissions concerning Vonage-like services, thereby rendering the existing permanent injunction overbroad.

Third, the district court's order is based upon the flawed conclusion that Vonage's service is an information service and not a telecommunications service. The *FCC Order* expressly does not contain an opinion on this subject. *FCC Order*, ¶14. Thus, the *FCC Order's* interstate classification and attendant purported preemption is the only basis from which to presently conclude that the MPUC Order is preempted. Leaving the permanent injunction in place likewise leaves the erroneous conclusions of the district court in place, rather than utilizing the only express pronouncement from the FCC on Vonage-like services as the basis for instituting a more appropriately tailored preliminary injunction pending the conclusion of the FCC's IP-Enabled Services docket.

Should this Court vacate the permanent injunction and direct the imposition of a limited preliminary injunction, the MPUC suggests the following language:

> Pursuant to the *FCC Order*, the Minnesota Public Utilities Commission may not require Vonage to comply with its certification, tariffing or other related requirements as conditions to Vonage offering DigitalVoice in Minnesota.
>
> This preliminary injunction will remain in effect until such time that the FCC completes its IP-Enabled Services docket, or until the *FCC Order* is subsequently modified by the FCC, Congress, or by a Court of appropriate jurisdiction.

The language concerning the basis for the preliminary injunction, with only minor modifications, comes directly from paragraph 46 of the *FCC Order*. Such a preliminary injunction protects against any subjective fears Vonage may have, and nonetheless recognizes that the extent and scope of any federal preemption, and thus the nature of the MPUC's regulatory authority with respect to Vonage's services, has not yet been ultimately determined.

## VII. EVEN IF THE COURT CHOOSES TO CONTINUE A PERMANENT INJUNCTION, THE EXISTING PERMANENT INJUNCTION IS UNNECESSARILY OVERBROAD AND MUST AT A MINIMUM BE MODIFIED.

It is well-settled that injunctions must be narrowly drafted to remedy the specific harm shown. *See Califano v. Yamasaki,* 442 U.S. 682, 702 (1979) (equitable relief should be no more burdensome to the defendant than necessary to provide relief to plaintiffs); *Coca Cola v. Purdy*, 382 F. 3d 774, 790 (8th Cir. 2004) (holding that "Provisions of an injunction may be set aside if broader than necessary to remedy the underlying [harm]."). Injunctive relief should be narrowly tailored to fit specific legal violations, and should not impose unnecessary burdens

on lawful activity. *See John Doe #1 v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004).

The district court's permanent injunction provides: "…until Congress speaks more clearly on this issue, Minnesota may not regulate an information services provider such as Vonage as if it were a telecommunications provider." (SA 322). This is far too broad given the recent *FCC Order* that only precludes the MPUC from requiring Vonage "to comply with its certification, tariffing or other related requirements as conditions to offering DigitalVoice" in Minnesota. *FCC Order*, ¶46. Moreover, the district court's language suggests that only Congress can make the determination as to the nature and extent to which the MPUC may play a regulatory role with respect to Vonage's services. Clearly the FCC disagrees with this assertion; it has undertaken a comprehensive rulemaking process to itself make various regulatory determinations about VoIP services, including the role to be played by both state and federal regulators.

Because the district court's permanent injunction is impermissibly overbroad, if this Court is inclined to keep in place a permanent injunction, it must at a minimum modify the basis for the injunction to be limited to the preemption asserted by the *FCC Order*. The MPUC suggests the following language:

> Pursuant to the *FCC Order*, the Minnesota Public Utilities Commission may not require Vonage to comply with its certification, tariffing or other related requirements as conditions to Vonage offering DigitalVoice in Minnesota.

This is the same language suggested for a preliminary injunction, absent the indication that the injunction is preliminary pending the outcome of the FCC's conclusions in the IP-Enabled Services docket.

## VIII. VONAGE'S ARGUMENT THAT THIS COURT SHOULD MERELY AFFIRM THE DISTRICT COURT'S ORDER ISSUING A PERMANENT INJUNCTION SHOULD BE REJECTED.

Vonage took the position at oral argument that this Court should merely affirm the district court's permanent injunction and dismiss the appeal. Vonage argues that if there is a further pronouncement by the FCC or Congress, that the MPUC at that time is free to go back to the district court and seek a modification of the permanent injunction. There are several reasons why Vonage's arguments should be rejected.

First, United States Supreme Court recognizes that a court always has the authority to alter the prospective effect of an injunction to reflect a change in circumstances, whether of law or fact, that has occurred since the injunction was entered. *See Miller v. French*, 530 U.S. 327, 347 (2000). The issuance of the *FCC Order* establishes a change in law in this case, as prior to its issuance there had been no FCC determination that preempted the MPUC Order. This Court should therefore exercise its authority to provide the appropriate relief to the MPUC to narrowly tailor the injunction to at least fit the confines of what the FCC states is presently preempted: that the MPUC may not require Vonage to comply with its certification, tariffing or other related requirements as conditions to Vonage offering Digital Voice in Minnesota. Similarly, if there is any regulatory activity left to the MPUC outside the confines of this preemptive order, the MPUC should not be impermissibly enjoined beyond the scope of the FCC's preemptive reach in the *FCC Order*. To simply affirm the permanent injunction does not take into account that the FCC has expressly not preempted various subjects, such as fraud, general commercial dealings, marketing, advertising, and other business practices, and the MPUC should not be enjoined from engaging in such subjects (to the

extent the MPUC has or may in the future have state statutory authority to address such subjects).

Second, requiring a state governmental entity such as the MPUC to expend resources to return to federal court each time it seeks to issue any order or rule that may in fact be permitted in the future under a changing state of the law, would require an unnecessary ongoing involvement of the federal court with respect to the affairs of a state subdivision, and would waste the scarce resources of the federal courts as well as the governmental and private parties.  The appropriate course of action is to not effectively require federal court pre-approval of future MPUC action, which infringes upon Eleventh Amendment and related State Sovereignty concerns, but to instead require private parties to seek injunctive relief (if they deem it necessary) based upon the status of the law as it may exist at that time in the future.

Third, by arguing that the district court order be affirmed, Vonage demands a determination by this Court that is prohibited by the Hobbs Act.  Contrary to the recent claims of Vonage, the district court order and the *FCC Order* are in conflict. The district court specifically concluded as a matter of law: "Vonage's services do not constitute a telecommunications service.  It only uses telecommunications, and does not provide them. The Court can find no statutory intent to regulate VoIP, and *until Congress speaks more clearly* on this issue, *Minnesota may not regulate an information services provider such as Vonage* as if it were a telecommunications provider."  (SA 322) (emphasis added).

If it chose to simply affirm the district court, this Court would in effect be determining that the FCC was wrong when it held that it (the FCC) has the authority to determine a regulatory role for the MPUC at a later stage after the conclusion of its IP-Enabled Services inquiry is completed.  The Ninth Circuit addressed a similar situation in *Wilson v. A.H. Belo,* 87 F3d.393 (9th Cir. 1996):

> If the district court disagreed with the *Declaratory Ruling,* the effect of the proceeding would have been to enjoin, set aside, or suspend the *Declaratory Ruling*--all actions which are within the exclusive domain of the court of appeals under §2342.  Even if the district court agreed with the *Declaratory Ruling,* that result would have required a determination of the validity of the *Declaratory Ruling,* which also would violate §2342.

*Wilson* at 400.  However, if this Court vacates the district court order, it would not be in conflict with the Hobbs Act as the Court will not have then either agreed with the *FCC Order* nor disagreed with it, but rather left the parties to comply with the *FCC Order* and, if a party wishes, to challenge it pursuant to Hobbs Act procedures.

Finally, if this Court affirms the district court without vacating or otherwise modifying the permanent injunction, the findings and conclusions of the district court may be given some improper validity, as parties may argue that an affirmation countenances the district court's conclusion that Vonage's service is an information service and not a telecommunications service under the Telecommunications Act.  This would be improper when the FCC itself has not yet issued any opinions with respect to that issue, and for the reasons discussed in the MPUC's originally filed briefs, such a conclusion is legally infirm.[3]

---

[3] Should this Court for some reason choose to substantively address the "information service" versus "telecommunication service" distinction in this appeal, the MPUC respectfully requests an additional opportunity to present oral argument and to respond to any questions the Court may have on that issue.

Should the *FCC Order* be modified by Congress, the FCC, or a court of competent jurisdiction, the MPUC should not be precluded from asserting its challenge to the district court's erroneous legal conclusions that it reached in its injunction order that is the subject of this appeal.[4]

Respectfully submitted,

MIKE HATCH
Attorney General
State of Minnesota

_____

STEVEN H. ALPERT
Assistant Attorney General
Atty. Reg. No. 1351
BRIAN H. SANDE
Assistant Attorney General
Atty. Reg. No. 284014

445 Minnesota Street, Suite 1100
St. Paul, Minnesota  55101-2128
(651) 296-6839 (Voice)
(651) 296-1410 (TTY)

ATTORNEYS FOR APPELLANTS

Enclosures:  Exhibit 1 (MPUC Order Staying Order of September 11, 2003);
             Certificate of Service

cc:     See attached list.

---

[4] I hereby certify that this submission complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), as this document was prepared in a proportionally spaced typeface using Microsoft Word 2002 in a 14 pt Times New Roman font.

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
     VONAGE HOLDINGS CORPORATION,
 3                 Plaintiff,
              v.                          04 Civ. 4306 (DFE)
 4   THE NEW YORK STATE PUBLIC
     SERVICE COMMISSION, et al.,          Hearing
 5                 Defendants.
     ------------------------------x
 6                                        June 30, 2004
                                          10:00 a.m.
 7   Before:

 8          HON. DOUGLAS F. EATON
                                          Magistrate Judge
 9

10          APPEARANCES

11   SWIDLER BERLIN SHEREFF FRIEDMAN, LLP
     Attorneys for Plaintiff
12        3000 K Street, N.W. Suite 300
          Washington, D.C.  20007-5116
13        (202) 424-7500
     BY:  KY E. KIRBY, ESQ.
14        YUN G. LEE, ESQ.
          MICHAEL C. SLOAN, ESQ.
15        WILLIAM B. WILHELM, JR., ESQ.

16   JONATHAN D. FEINBERG, ESQ.
     JOHN GRAHAM, ESQ.
17   NANDAN M. JOSHI, ESQ.
     Attorneys for Defendants
18        State of New York Public Service Commission
          Three Empire State Plaza
19        Albany, New York  12223-1350

20   SARAH E. LIGHT, ESQ.
     Attorney for Amicus FCC
21        U.S. Attorney's Office, SDNY
          86 Chambers Street
22        New York, New York  10007
          (212) 637-2774
23
     CARL A. JOHNSON
24        State of New York Public Service Commission

25   JOHN REGO
          Vonage Holdings Corporation
                 SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300
```

1    imagine.  Whenever anyone makes a 911 call, it is practically

2    always a local call, and they want to get the fire department

3    or the police department that is closest to where they are.  In

4    that sense it is very local.

5            But I am trying to figure out what the real issues are

6    about 911, particularly for the next year.  As far as I have

7    heard, the real issues on 911 are sort of national issues.  The

8    real issue is that this technology is growing, there are over

9    24,000 people in New York State now who are using it to make a

10   huge number of local calls.  We know about that and we know

11   that it has a type of 911 service but it is not as good as the

12   wireless companies' and the old-fashioned companies'.  It seems

13   to me that is mostly a national problem of getting Vonage and

14   the other IP telephony companies to invest money in research

15   and development and to try to come up with a substitute.

16           As I understand it, the FCC sort of took the lead with

17   wireless and at certain points of time said things essentially

18   like, we think it would be counterproductive to tell the

19   wireless companies to spend $50 million next year on R&D, it

20   looks to us as if it would make more sense for them to spend

21   about $3 million next year and get a better plan developed, and

22   then in future years they will spend money.  I just get the

23   feeling that the real burning issues about 911 and IP telephony

24   are really national.

25           MR. FEINBERG:  It is a burning issue for us, your

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1    Honor.  Vonage's growth in New York, 24,000 customers, makes it

2    in fact I think the 22nd largest telephone company in New York.

3           The process we envision is that Vonage would file, we

4    presume, a waiver from the commission's requirements for 911 as

5    part of a certificate.  We would be able to appraise their

6    arguments as to why they should be exempt from the commission's

7    911 requirements, and we would hear from them as to what their

8    plans are in terms of eventually perhaps complying with those

9    requirements, or it might be they would never be able to

10   comply.

11          But the commission should be in the position to make

12   those determinations.  These are matters of public safety.

13   They concern Vonage's ability to provide local service in New

14   York.  The commission should be able to exercise jurisdiction

15   and make those determinations as to whether or not the service

16   Vonage is providing is in fact adequate.

17          It might be the commission will decide to grant Vonage

18   waivers.  We don't know yet, because we haven't seen a filing

19   for Vonage asking for waivers.  It might be that we will be

20   happy to hear about Vonage's plans to address the concern about

21   911 service long term.  But the fundamental concern we have now

22   is a jurisdictional one:  Can we make Vonage file, can we ask

23   it for information, can we compel it to tell us what its plans

24   are, are we in a position to decide if in fact New York

25   requirements are being satisfied or not?

1    based on a good percentage estimate of the number of intrastate

2    calls.  I would think it would be possible that the state could

3    collect those fees retroactively back to the date of the

4    complaint by Frontier Telephone.

5            At the moment, the Frontier proceeding is still open.

6    I do not propose to terminate it.  I think the appropriate

7    thing for a preliminary injunction is to enjoin the assertion

8    of jurisdiction.  But I could be wrong.  The proceeding brought

9    by Frontier Telephone remains open.  Frontier Telephone says it

10   is all unfair and we are paying more than our fair share and

11   Vonage should be forced to pay some money.  That could all be

12   done retroactively.

13           It is highly, highly unlikely that the reverse would

14   happen.  If I allowed state regulation to go ahead and fees

15   were collected from Vonage, I don't hear that there is any

16   escrow mechanism or anything that would give them any chance of

17   recovering if it turns out that their position is eventually

18   vindicated.

19           I was sympathetic to some of the PSC's arguments that

20   they acted cautiously and that they are willing to consider all

21   sorts of waivers.  But I read that 1943 Supreme Court decision

22   by Justice Frankfurter, and it seems to still be good law.

23   Basically, in that case the only thing that had happened was

24   that the Ohio commission had asserted jurisdiction.

25   Nevertheless, the Supreme Court found that there was

46drvonn

1    irreparable harm.

2            So I think the plaintiffs have met the irreparable

3    harm standard, and I think they have met the likelihood of

4    success on the merits.  I am not at all prepared to say that

5    they are eventually going to win on the merits and win a

6    permanent injunction, but I just don't see the immediate need

7    for that.  I am certainly going to give more time for people to

8    respond to what I have said here today.

9            My thinking is that there should be a preliminary

10   injunction and that I should give the parties the first crack

11   at drafting it.  I think it is important to have the injunction

12   order be as narrow as possible and make it clear that, without

13   prejudice to its legal arguments, Vonage is prepared to do the

14   following things that it stated at the start this morning, and

15   that should all be incorporated in the order.  Then Mr.

16   Feinberg could submit a counterproposed order.  I don't know if

17   this can all be done by July 2, but maybe we can get a little

18   more time by agreement.

19           Then I think the good measuring rod is approximately

20   180 days.  I have seen a Fifth Circuit case about primary

21   jurisdiction that said we are really reluctant to just refer

22   things to federal administrative agencies, so we are going to

23   refer it for 180 days only.  That takes us basically to

24   December 31.

25           I would suggest that the case remain open for eventual