UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
VONAGE HOLDINGS CORPORATION,
                                                Plaintiff,

                                    -against-

THE NEW YORK STATE PUBLIC SERVICE
COMMISSION, and WILLIAM M. FLYNN,
LEONARD A. WEISS, THOMAS J. DUNLEAVY,
and NEAL N. GALVIN in their official capacities
as the Commissioners of the New York State
Public Service Commission and not as individuals,

                                                Defendants.
------------------------------------------------------------X

04 Civ. 4306 (DFE)
This is an ECF case

OPINION AND ORDER

DOUGLAS F. EATON, United States Magistrate Judge.

      Vonage Holdings Corporation ("Vonage") describes itself as the "Broadband Phone Company," but alleges that it does not actually provide telephone service. It uses a new technology called Voice over Internet Protocol ("VoIP"). Vonage, a New Jersey corporation, started business in 2002. As of May 27, 2004, Vonage had over 100,000 customers, and 24,864 of them had a billing address in New York State and used a telephone number with a New York area code. They use Vonage to make interstate and intrastate telephone calls.

      In an 18-page order issued on May 21, 2004, the New York State Public Service Commission ("PSC") determined that Vonage is a "telephone corporation" as defined by New York Public Service Law §2(17). The PSC rejected Vonage's argument that federal law entirely preempts state regulation of its service. The PSC order concluded:

> . . . Although the [PSC] has the authority to regulate telephone services, we also have an interest in ensuring that such regulation does not needlessly interfere with the rapid, widespread deployment of new technologies. Any regulation imposes costs that may diminish the promise of new technologies. At the same time, our core public interest concerns, including most prominently public safety (e.g., 911 emergency services) and network reliability must be addressed. . . .
>
> As Vonage is a relatively small competitive provider of local exchange and interexchange services, it should be subject to, at most, the same limited regulatory regime to which comparable circuit switched competitive carriers are currently subject in New York. However, . . . we will move cautiously, so as not to hinder its development. Consequently, the company may seek permanent or temporary waivers of any of those requirements it deems to be inappropriate in its circumstances or with which it is not readily able to comply.
>
> . . . . Further, during the pendency of the evaluation of Vonage's potential waiver requests, we will not enforce our rules and regulations with regard to Vonage's compliance. . . .

<u>The [PSC] orders:</u>

> 1. Vonage must comply with the Public Service Law obligations of telephone corporations and within 45 days of this Order, Vonage Holding Corporation shall file an application for a Certificate of Public Convenience and Necessity and file a tariff.
>
> 2. To the extent Vonage chooses to seek waiver of specific rules and regulations, as discussed in this Order, it shall file such requests within 45 days of this Order.
>
> 3. This proceeding is continued.

*Order Establishing Balanced Regulatory Framework for Vonage Holdings Corporation*, Complaint of Frontier Telephone of Rochester, Inc., Case No. 03-C-1285 (N.Y. PSC May 21, 2004).

In 2003, faced with a similar order from the Minnesota Public Utilities Commission, Vonage obtained a preliminary and permanent injunction from U. S. District Judge Michael J. Davis. *Vonage Holdings Corp. v. Minnesota Public Utilities Com'n*, 290 F.Supp.2d 993 (D. Minn. Oct. 16, 2003), *post-judgment motions denied*, 2004 WL 114983 (D. Minn. Jan. 14, 2004), *affirmed, 394 F.3d 568* (8th Cir. Dec. 22, 2004). I refer the reader to Judge Davis's opinion for a detailed description of Vonage's service, and how its technology differs from plain old telephone service ("POTS") and from wireless cellular telephone service. Vonage's service is being used to make and receive local telephone calls. About 97% of the calls serviced by Vonage carry the voices between a Vonage customer and a person using the Public Switched Telephone Network ("PSTN"). During each such call, Vonage interfaces with both the Internet and the PSTN.

On June 7, 2004, Vonage filed its complaint in our Court against the PSC and its four commissioners (collectively, the "PSC"). Vonage requested me to enter a preliminary injunction and a permanent injunction against enforcement of the PSC Order. I received excellent briefs from the parties and from the U. S. Attorney's Office (for two amici curiae, the United States of America and the Federal Communications Commission (the "FCC"). I held oral argument on June 30, 2004.

On July 16, 2004, I issued a Preliminary Injunction Order. I made six findings, including the following:

> 1. Vonage has shown that it is likely to succeed on the merits of its claim that the PSC Order is preempted by federal law. (Citations omitted).
>
> 2. Vonage has demonstrated that the PSC Order will interfere with interstate commerce. Vonage has demonstrated that it will suffer irreparable harm absent injunctive relief. (Citation omitted).
>
> \*   \*   \*
>
> 5. The FCC currently is considering all of the issues relevant to the merits of this case, in connection with its *IP Rulemaking Notice* [released Mar. 10, 2004] and in connection with a Petition by Vonage to the FCC for a Declaratory Ruling seeking the preemption of Minnesota's attempt to regulate Vonage. The FCC's guidance on the issues, via its rulings on those matters, may aid in final resolution

577105v1

of this matter.

My order's seven decretal paragraphs included the following:

>   [1st]   WHEREFORE, it is hereby ORDERED, that Vonage's Motion for Preliminary Injunction against the PSC's exercise of jurisdiction over enforcement of its Order is GRANTED; and it is further
>
>   [2nd]   ORDERED, that pursuant to Vonage's stipulation and during the pendency of this Preliminary Injunction Order, Vonage will continue to provide the same emergency 911 calling services currently available to Vonage customers in New York; and it is further
>
>            *     *     *
>
>   [4th]   ORDERED, that during the pendency of the injunction, Vonage will make reasonable good faith efforts to participate on a voluntary basis in PSC industry-wide workshops pertaining to service reliability of VoIP providers, and shall provide the PSC with a contact name and number at Vonage for purposes of voluntarily sharing information with the PSC in the event of a material telecommunications network outage occurring within the state of New York; and it is further
>
>   [5th]   ORDERED, that during the pendency of the injunction, Vonage will make reasonable good faith efforts to participate on a voluntary basis in PSC industry-wide workshops pertaining to VoIP 911 calling in general.  These workshops may address VoIP 911 issues such as:
>
>        a. A VoIP provider's attempts to address technical issues pertaining to IP 911 calling, including, but not limited to, provision of Automatic Number Identifcation and Automatic Location Information;
>
>        b . sharing by the industry of information with respect to efforts by the National Emergency Number Administration to resolve issues pertaining to IP 911 calling;
>
>        c. industry-wide technical conferences to discuss national plans to develop and implement appropriate technical and operational solutions for the delivery of IP 911 calls to the appropriate public safety answering point;
>
>        d. discussion of what progress can be made in establishing certain core principles and a public policy blueprint for the advancement of IP-based service offerings for 911, including the development of interim solutions and possible agreement on long-term principles for provision of 911 by the IP industry; and it is further
>
>            *     *     *

   On November 12, 2004, Vonage's petition to the FCC was granted in part and the FCC preempted the order of the Minnesota Public Utilities Commission.  The FCC's 48-paragraph

Memorandum Opinion and Order included the following:

> 42. . . . Although we preempt Minnesota from imposing its 911 requirements on Vonage as a condition of entry, this does not mean that Vonage should cease the efforts it has undertaken to date and we understand is continuing to take both to develop a workable public safety solution for its Digital Voice service and to offer its customers equivalent access to emergency services.
>
> 43. . . . In this proceeding, Vonage has indicated that it is devoting substantial resources toward the development of standards and technology necessary to facilitate some type of 911 service, working cooperatively with Minnesota agencies and other state commissions, . . . . We fully expect Vonage to continue its 911 development efforts . . . .
>
> 44. We emphasize that while we have decided the jurisdictional question for Vonage's Digital Voice here, we have yet to determine final rules for the variety of issues discussed in the *IP-Enabled Services [Rulemaking] Proceeding*. While we intend to address the 911 issue as soon as possible, perhaps even separately, we anticipate addressing other critical issues such as universal service, intercarrier compensation, section 251 rights and obligations, numbering, disability access, and consumer protection in that proceeding.
>
> 45. Furthermore, we acknowledge that a U.S. District Court in New York has recently ordered Vonage "to continue to provide the same emergency 911 calling services currently available to Vonage customers" within that state and to "make reasonable good faith efforts to participate on a voluntary basis" in workshops pertaining to the development of VoIP 911 calling capabilities. [The FCC was quoting from my 2nd and 5th decretal paragraphs in my July 16, 2004 order.] Because Digital Voice is a national service for which Vonage cannot single out New York "intrastate" calls (any more than it can Minnesota "intrastate" calls), as a practical matter, the [New York] District Court's order reaches Digital Voice wherever it is used. Thus, we need not be concerned that as a result of our action today, Vonage will cease its efforts to continue developing and offering a public safety capability in Minnesota. The [New York] District Court order ensures that these efforts must continue while we work cooperatively with our state colleagues and industry to determine how best to address 911/E911-type capabilities for IP-enabled services in a comprehensive manner in the context of our *IP-Enabled Service [Rulemaking] Proceeding*.

On December 20, 2004, Vonage moved to convert my preliminary injunction into a permanent injunction. Briefing was concluded on February 25, 2005. Vonage's proposed order would essentially retain my 1st and 2nd decretal paragraphs from my July 16, 2004 order. But it would eliminate my 4th and 6th decretal paragraphs. It would also eliminate my 5th decretal paragraph ("participate on a voluntary basis in PSC industry-wide workshops pertaining to VoIP 911 calling"). It does add a new clause: "Vonage also will continue reasonable efforts to conduct an E911 trial in New York and will coordinate with the NYSPC in that endeavor." But it would eliminate Vonage's obligation to "make reasonable good faith efforts to participate on a voluntary basis in PSC industry-wide workshops" - - both workshops "pertaining to VoIP 911 calling" and workshops "pertaining to service reliability of VoIP providers."

As noted above, the FCC specifically quoted two passages from my order, including the one about workshops pertaining to VoIP 911 calling. The FCC said that "[my] order ensures that these efforts must continue while we [the FCC] work cooperatively with our state colleagues and industry." Accordingly, I see no good reason to change my 5th decretal paragraph.

The FCC has commenced a comprehensive rulemaking proceeding, which will address the 911 issue, but also "other critical issues such as universal service, intercarrier compensation, section 251 rights and obligations, numbering, disability access, and consumer protection." In the meantime, I think it is appropriate to preserve the status quo. Vonage will suffer no irreparable harm from my 4th and 6th decretal paragraphs. The 4th one merely says:

> [4th] ORDERED, that during the pendency of the injunction, Vonage will make reasonable good faith efforts to participate on a voluntary basis in PSC industry-wide workshops pertaining to service reliability of VoIP providers, and shall provide the PSC with a contact name and number at Vonage for purposes of voluntarily sharing information with the PSC in the event of a material telecommunications network outage occurring within the state of New York;

The 6th one merely says:

> [6th] ORDERED that this injunction does not preclude the PSC from receiving complaints, if any, from Vonage customers about Vonage's service or billing, recording such complaints in the Department of Public Service complaint handling system, referring such complaints to Vonage and offering to provide non-binding mediation of disputes if Vonage cannot resolve the complaint, or recording unresolved complaints in the PSC's database. Vonage may agree, if it chooses, to supply the PSC with a contact person for purposes of handling complaints, and to advise the PSC of the status or resolution of any such complaints, but if Vonage does not choose to provide the PSC with a contact person for purposes of handling complaints, then the PSC will record all complaints as unresolved in its database. Vonage will not, by virtue of its voluntary cooperation with the PSC during the pendency of the preliminary injunction, be subject to, or considered to have conceded the application to it of, any New York laws, regulations or rules applicable to telephone corporations. Vonage does not in any way accept PSC jurisdiction over complaints and is free to accept or reject PSC offers of mediation and/or to require its customers to proceed to binding arbitration in accordance with their service agreements;

As long as my Preliminary Injunction Order remains in effect, Vonage will suffer no irreparable harm. Accordingly, I deny Vonage's motion to convert my preliminary injunction into a permanent injunction. I anticipate that my Preliminary Injunction Order will remain in effect until the FCC completes its comprehensive rulemaking proceeding. However, pursuant to my 7th decretal paragraph, either party for good cause shown may petition the Court for an Order modifying the terms of the Preliminary Injunction Order.

_____
DOUGLAS F. EATON
United States Magistrate Judge

Dated: New York, New York
       December 14, 2005

Copies of this Opinion and Order were sent on this date by electronic case filing to:

Ky E. Kirby, Esq.
William B. Wilhelm, Esq.
Michael C. Sloan, Esq.
Christopher J. Carney, Esq.
Swidler Berlin Shereff Friedman, LLP
3000 K Street, NW, Suite 300
Washington, DC 20007

Yun G. Lee, Esq.
Swidler Berlin Shereff Friedman, LLP
The Chrysler Building
405 Lexington Avenue, 11th Floor
New York, NY 10174

Jonathan D. Feinberg, Esq.
Office of General Counsel
New York State Department of Public Service
3 Empire State Plaza
Albany, NY 12223

Sarah E. Light, Esq.
Assistant U. S. Attorney
86 Chambers Street, 3rd Floor
New York, NY 10007

577105v1